| | |
|---|---|
| 1 | Ryan J. Williams (SBN 228925)<br>rjwilliams@shb.com |
| 2 | SHOOK, HARDY & BACON LLP<br>5 Park Plaza, Suite 1600 |
| 3 | Irvine, CA 92614<br>Telephone: 949 475-1500 |
| 4 | Facsimile: 949 475-0016 |

Ryan J. Williams (SBN 228925)
rjwilliams@shb.com
SHOOK, HARDY & BACON LLP
5 Park Plaza, Suite 1600
Irvine, CA 92614
Telephone: 949 475-1500
Facsimile: 949 475-0016

B. Trent Webb
Missouri Bar No. 40778 (pro hac vice)
bwebb@shb.com
SHOOK, HARDY & BACON LLP
2555 Grand Boulevard
Kansas City, MO 64108
Telephone: 816 474-6550
Facsimile: 816 421-5547

Jared Bobrow (SBN 133712)
jbobrow@orrick.com
Diana M. Rutowski (SBN 233878)
drutowski@orrick.com
Jason K. Yu (SBN 274215)
jasonyu@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025-1015
Telephone: 650 614-7400
Facsimile: 650 614-7401

Attorneys for Defendant,
CERNER CORPORATION

Robert H. Reckers
Texas Bar No. 24039520
(pro hac vice) rreckers@shb.com
Fiona A. Bell
Texas Bar No. 24052288
(pro hac vice) fbell@shb.com
Sharon A. Israel
Texas Bar No. 00789394
(pro hac vice) sisrael@shb.com
Kyle E. Friesen
Texas Bar No. 24061954
(pro hac vice) kfriesen@shb.com
SHOOK, HARDY & BACON LLP
600 Travis Street, Suite 3400
Houston, TX 77002-2926
Telephone: 713 227-8008
Facsimile: 713 227-9508

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLINICOMP INTERNATIONAL, INC.,<br><br>Plaintiff,<br><br>v.<br><br>CERNER CORPORATION,<br><br>Defendant. | Case No. 3:17-CV-02479-GPC-DEB<br><br>**DEFENDANT CERNER CORPORATION'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR ATTORNEYS' FEES UNDER 35 U.S.C. § 285**<br><br>Date:  February 3, 2023<br>Time:  1:30 p.m. (PT)<br>Dept:  2D (Second Floor)<br>Judge:  Hon. Gonzalo P. Curiel |

# TABLE OF CONTENTS

Page No.

I.   INTRODUCTION ..................................................................................... 1

II.  BACKGROUND ...................................................................................... 4

   A. CliniComp Filed Suit, Cerner Filed An IPR, And CliniComp Made Significant Disclaimers For Its Claims To Survive ......................................... 4

   B. Before Claim Construction, CliniComp Knew Cerner's Non-Infringement Positions. ..................................................................................................... 4

      1. *"Storing… in a [first/second] portion of the database"* ...................... 5

      2. *"Only accessible… in the… facility"* .............................................. 5

   C. Before Claim Construction, CliniComp Knew How Cerner's Systems Worked. ........................................................................................................ 6

   D. CliniComp Lost On Claim Construction, Yet It Continued To Litigate Aggressively Until It Lost On Summary Judgment. ..................................... 7

III. CERNER IS ENTITLED TO FEES UNDER 35 U.S.C. § 285. ...................... 10

   A. Legal Standard ......................................................................................... 10

   B. CliniComp's Infringement Theories Were Exceptionally Meritless........... 10

      1. Once the Court Ruled That the Claims Do Not Cover "Indexing," CliniComp Had No Reasonable Prospect of Winning. ......................... 11

      2. The Fact That ClinicComp Also Pursued a Frivolous Case on "in the… facility" Limitation Makes the Case Even More Exceptional............... 14

   C. Cerner Seeks Its Reasonable Attorneys' Fees ........................................... 17

IV. CONCLUSION ........................................................................................ 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Icon Health & Fitness, Inc. v. Octane Fitness, LLC*,
  112 F. Supp. 3d 888 (D. Minn. 2015), *aff'd*, 706 F. App'x 666 (Fed.
  Cir. 2017) ................................................................................................. 12

*IPS Grp., Inc. v. Duncan Sols., Inc.*,
  No. 15-CV-1526-CAB (MDD), 2018 WL 2215418 (S.D. Cal. May
  14, 2018) ............................................................................................. *passim*

*Kilopass Tech., Inc. v. Sidense Corp.*,
  82 F. Supp. 3d 1154 (N.D. Cal. 2015) ..................................................... 17

*Lakim Indus., Inc. v. Linzer Prods. Corp.*,
  No. 2:12-cv-04976 ODW, 2013 WL 1767799 (C.D. Cal. Apr. 24,
  2013), *aff'd*, 552 F. App'x 989 (Fed. Cir. 2014) .................................... 16

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
  572 U.S. 545 (2014) ............................................................................ *passim*

*Pop Top Corp. v. Rakuten Kobo Inc.*,
  No. 20-CV-04482-DMR, 2022 WL 267407 (N.D. Cal. Jan. 28,
  2022) ................................................................................................. 13, 14

*Spitz Techs. Corp. v. Nobel Biocare USA LLC*,
  No. SACV1700660JVSJCGX, 2018 WL 6164300 (C.D. Cal. June
  7, 2018), *aff'd*, 773 F. App'x 625 (Fed. Cir. 2019) ............................... 16

*Straight Path IP Grp., Inc. v. Cisco Sys., Inc.*,
  411 F. Supp. 3d 1026 (N.D. Cal. 2019) ................................................... 12

**Statutes**

35 U.S.C. § 285 .............................................................................. 1, 2, 3, 10

**Other Authorities**

Procedure for the Award of Attorney's Fees, 10 Fed. Prac. & Proc. Civ.
  § 2680 § 2680 (4th ed.) .............................................................................. 17

Fed. R. Civ. P. 54(d)(2)(B)(iii) ................................................................. 17

Local Rule 3.6..........................................................................................................8

## I.     **INTRODUCTION**

As the prevailing party, Defendant Cerner Corporation ("Cerner") respectfully requests that the Court order Plaintiff CliniComp International, Inc. ("CliniComp") to pay a portion of Cerner's reasonable attorneys' fees under 35 U.S.C. § 285.  Cerner is only seeking fees for the period following the Court's July 28, 2022 claim construction order.  As of that date at the latest, CliniComp knew or should have known that its infringement theories were unsupported and unreasonable.  CliniComp's refusal to dismiss its case in the face of undisputed evidence and the Court's clear rulings on the scope of the claims was "exceptional" under § 285 and warrants an award of attorneys' fees.

CliniComp's sole asserted patent (Dkt. 1-2, the "'647 Patent") was subject to an *inter partes* review ("IPR") proceeding prior to claim construction in this case. During the IPR, CliniComp made "clear and unmistakable disclaimers" to the Patent Trial and Appeal Board ("PTAB") in order to distinguish its claimed invention from several key prior art references.  It was only because of those disclaimers that CliniComp was able to preserve any claims to assert in this action.

Once the IPR proceeding was over, however, CliniComp ignored the representations it made to the PTAB and took aggressively broad positions regarding the scope of the asserted claims before this Court.  In February 2022, the parties submitted their proposed claim constructions and "impact statements" to the Court.  Cerner proposed claim constructions that were commensurate with the express disclaimers that CliniComp had made to the PTAB and explained precisely why those constructions were dispositive of CliniComp's infringement claims. Dkt. 63 & 63-1.  CliniComp, in contrast, proposed broad constructions that were inconsistent with the disclaimers it had made to the PTAB and served infringement contentions that read on the very functionality that it had distinguished during the IPR proceedings.  *Id.*

*MPA ISO MOTION FOR ATTORNEYS' FEES*
*CASE NO. 3:17-CV-02479-GPC-DEB*

1    By the time of the July 28, 2022 claim construction order, CliniComp knew
2    or must have known that the claim construction order was dispositive in this case.
3    As of that date CliniComp had already obtained discovery into Cerner's technical
4    documents, spent multiple days reviewing and printing Cerner's source code, and
5    taken technical depositions regarding the accused systems.  And, as discussed in
6    more detail herein, there was never any material dispute about the functionality of
7    the accused systems based on this evidence.  Accordingly, when the Court issued
8    its claim construction order on July 28, 2022—which held CliniComp to its IPR
9    disclaimers and largely rejected CliniComp's proposed constructions of the
10   limitations discussed herein—CliniComp knew that its infringement position had
11   been eviscerated for multiple independent reasons.

12        CliniComp nonetheless continued its litigation campaign.  CliniComp
13   aggressively pursued burdensome and costly discovery for the next three months,
14   which included serving eleven of Cerner's customers with subpoenas and
15   demanding additional discovery from Cerner unrelated to the accused systems.
16   CliniComp also completely ignored Cerner's September 28, 2022 *Octane Fitness*
17   letter, which explained that CliniComp did not have an objective basis to continue
18   the case and offered to waive its claim for attorneys' fees under 35 U.S.C. § 285 if
19   CliniComp promptly dismissed the case.  CliniComp never even responded.
20   Finally, on November 15, 2022, after months of unnecessary discovery and motion
21   practice, the Court granted summary judgment of non-infringement on two separate
22   grounds, finding that CliniComp could not prove that Cerner practiced two
23   independent claim limitations.  Dkt. 120.

24        First, the claims require storing data in a "first/second portion of the
25   database."  The Court's construction of this limitation made clear that the limitation
26   did not cover systems that store data using an indexing system (like the prior art
27   indexing systems that CliniComp disclaimed during IPR proceedings).  But
28   CliniComp knew before claim construction that Cerner used an indexing system,

1    and so it sought on summary judgment to change positions and rely on different

2    functionality that still failed to satisfy every element of the Court's construction.

3    As the Court aptly noted in its summary judgment order, "CliniComp has entirely

4    failed to explain how this requirement in the Court's claim construction is satisfied

5    by the accused services" and "at the hearing, CliniComp's counsel even described

6    its own briefing as 'inarticulate'" on this point.  Dkt. 120 at 30 n.12.

7           Second, the claims require restricting access to end-user devices "in the…

8    facility."  In its "impact statement," Cerner explained that a system which permitted

9    devices that are not "in the… facility" to access the database did not infringe the

10   claim.  The Court's claim construction order rejected CliniComp's assertion that

11   this limitation could be satisfied by *user*-based restrictions and made clear that this

12   limitation required a database that could only be accessed by the end-user devices

13   in the claimed facilities.  Unable to dispute on summary judgment how the accused

14   services operate (devices outside the facility can access the database), CliniComp

15   sought instead to argue for a new claim construction of the term "in."  The Court

16   rejected this argument because CliniComp bore the burden of raising it at claim

17   construction and found that "the specification – consistent with the plain and

18   ordinary meaning of the claim language – supports Cerner's position that the user

19   device must be physically located within a healthcare enterprise facility."  Dkt. 120

20   at 20.  CliniComp's attempt to argue otherwise was objectively unreasonable.

21          The Supreme Court has confirmed that an "exceptional" case under § 285 is

22   simply one which, based on the preponderance of the evidence, "stands out from

23   others with respect to the substantive strength of a party's litigating position . . . or

24   the unreasonable manner in which the case was litigated."  *Octane Fitness, LLC v.*

25   *ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014).  This case stands out.

26

27

28

## II.   BACKGROUND

### A.   CliniComp Filed Suit, Cerner Filed An IPR, And CliniComp Made Significant Disclaimers For Its Claims To Survive.

CliniComp filed this case on December 11, 2017 alleging that Cerner infringed various claims of the '647 Patent.  Dkt. 1 (Complaint).  Cerner subsequently filed a petition for IPR, which the PTAB instituted on March 5, 2019.  Dkt. No. 30-1.  On March 7, 2019, the Court stayed this case pending those proceedings.  Dkt. 31.  During the IPR, the PTAB found claims 50-55 of the '647 Patent to be invalid in view of the prior art.  Dkt. 32, Ex. A at 93-94.  The remaining challenged claims (1-25) survived the IPR based on significant disclaimers that CliniComp made about the scope of certain claim terms.  *See*, *e.g.*, Dkt. 91 at 12, 16, 19-20.  On April 20, 2021, the Federal Circuit affirmed the PTAB's determination.  Dkt. No. 38-2 at 10.  On June 24, 2021, after the IPR was complete, the Court lifted the stay in this case and set a new case schedule.  Dkt. 44.  CliniComp served its initial infringement contentions thereafter on October 20, 2021, and the Parties launched into discovery and began conferring about claim construction.

### B.   Before Claim Construction, CliniComp Knew Cerner's Non-Infringement Positions.

On February 10, 2022, the parties exchanged drafts of their joint claim construction statement, which was subsequently filed with the Court on February 14, 2022.  Ex. 1[1]; Dkt. 63.  In that statement, the parties proposed competing constructions and provided "impact statements" indicating how each construction would affect the case.  *Id.*; Dkt. 63-1.  Cerner's "impact statement" explained why its proposed constructions would be dispositive of infringement, including in two key and independent respects relevant to this motion.

---

[1] Exhibits cited herein are attached to the Declaration of Diana M. Rutowski in Support of Defendant Cerner Corporation's Motion for Attorneys' Fees Under 35 U.S.C. § 285 ("Rutowski Decl."), filed concurrently herewith.

1.      *"Storing… in a [first/second] portion of the database"*

In connection with this limitation, Cerner stated that the accused services do not practice this claim term because "the accused databases differentiates [*sic*] data associated with different clients in the same manner as taught by the Johnson prior art, i.e., through 'indexing by an identifier'… Clin[i]Comp disclaimed such techniques for differentiating data in a database to [*sic*] during the IPR and in the appeal that followed it."  Dkt 63-1 at A3; *see e.g.*, Dkt. 71-2 at 120 (IPR decision holding that "we agree with Patent Owner and its supporting testimony of Dr. Bergeron that merely identifying data or associating subsets of data with common values (i.e., indexing by provider ID) does not constitute partitioning").  Nonetheless, CliniComp served amended infringement contentions the same day that the joint claim construction statement was filed and asserted infringement theories contrary to the disclaimers that CliniComp made to the PTAB to avoid cancellation of its claims.

2.      *"Only accessible… in the… facility"*

Cerner stated that the accused services do not practice the device-based accessibility restrictions of claim 1 because: "(1) the claim language does not permit access by 'devices that are not 'in the [first/second] enterprise facility;'' and (2) the accused services allow healthcare data to be accessed 'on different devices and … by personnel beyond a single enterprise.'"  Dkt. 120 at 16-17 (citing Dkt 63-1 at A14-A15).  Cerner made clear that, under the plain and ordinary meaning of "in the… facility," the accused services could not infringe because they could be accessed from anywhere.  Despite these statements, CliniComp did not ask the Court to construe "in the . . . facility" to cover devices that are outside the facility and served infringement contentions inconsistent with the device-based restrictions of the claims and the plain and ordinary meaning of "in the… facility."

**C.**   **Before Claim Construction, CliniComp Knew How Cerner's Systems Worked.**

Before the claim construction hearing, and with the benefit of Cerner's proposed constructions and "impact statements," CliniComp took discovery into how Cerner's systems operated.  Cerner started producing technical documents in December 2021 and substantially completed production of them in June 2022.  Dkt. 98-3 ("Yu Decl.") ¶ 2.  Cerner also made source code for the accused systems available for inspection, and CliniComp's expert reviewed that source code multiple times in March 2022.  Ex. 2 (Source Code Review Log).  CliniComp requested various source code printouts, and Cerner produced them.  Yu Decl. ¶ 3. By July 8, 2022, CliniComp had deposed Cerner's technical witnesses on the operation of all accused systems.  Dkts. 98-5, 98-6, and 98-7 (depositions of Daniel Murphy, Eric Geis, and Murtaza Gadit).[2]

Based on this discovery, CliniComp narrowed the accused systems in its final infringement contentions to three Cerner services – CommunityWorks, PowerWorks, and Lights On Network (collectively "the accused services") – that store healthcare information from multiple clients in a single database.  *See, e.g.*, 98-4 (Final IC's).  By at least July 2022, CliniComp had obtained documents and deposition testimony confirming that these accused services (1) do not store a customer's data in a separate "portion" of the database but rather index the data using a "Logical Domain ID" identifier (Dkt. 98-2 at 7-11 (Fact Nos. 5-6)) and (2) do not limit access to devices "in the… facility" of the customer (*Id*. at 1-6 (Fact Nos. 1-4)).

---

[2] CliniComp deposed one additional witness, Brent Griffin, on September 14, 2022, but that testimony was, in relevant part, duplicative of prior produced documents and the testimony of Murtaza Gadit regarding Lights On Network.  *Id*. Ex. 6.

**D.    CliniComp Lost On Claim Construction, Yet It Continued To Litigate Aggressively Until It Lost On Summary Judgment.**

On July 28, 2022, the Court issued its claim construction order.  Dkt. 91.  In that order, the Court found that CliniComp had made clear and unmistakable disclaimers of claim scope in order to preserve the validity of claims 1-25.  *See, e.g., id.* at 16 ("The Court agrees with Cerner that these statements are sufficient to constitute a clear and unmistakable disclaimer ....").  The Court held CliniComp to its disclaimers and rejected a number of the constructions that CliniComp needed to prove infringement.

With respect to the step of "storing the processed first healthcare data in a first portion of the database associated with the first healthcare enterprise facility and storing the processed second healthcare data in a second portion of the database associated with the second healthcare enterprise facility," the Court held that the term "[first/second] portion of the database" required the following:

> A specific arrangement of data structures of the database that separates the data associated with the [first/second] healthcare enterprise facility from data associated with any other healthcare enterprise facility,
>
> wherein the claimed [first/second] "portion" is not created by merely identifying data or associating subsets of data with common values (i.e., by indexing by an identifier),
>
> and the [first/second] portion of the database is created before the claimed "storing" of "data" occurs,
>
> and restricts access to data therein to protect data associated with the [first/second] healthcare enterprise facility from access by any other healthcare enterprise facility.

Dkt. 91 at 10-18.  With respect to the "limiting access" limitation, the Court construed the claim language to mean:

> wherein the portioning of the database enables restricting access such that healthcare data stored in the first portion of the database cannot be accessed by any device other than the [one or more] first end user device(s) and healthcare data stored in the second portion of the database cannot be

accessed by any device other than the [one or more] second end user device(s).

*Id.* at 32.  In issuing this construction, the Court rejected CliniComp's argument that the limitation could be satisfied by limiting access to enterprise users (regardless of the location of their devices) and made clear that the claim language required that only the devices "in the [first/second] enterprise facility" could access the databases:

> CliniComp argues that the claim language supports its proposed construction because the claim language focuses on healthcare enterprise facilities and their interactions, through users and their devices, with the healthcare management system. (Doc. No. 70 at 18).  The Court acknowledges that independent claim 1 is directed to "an enterprise healthcare management system for a first healthcare enterprise facility and a second healthcare enterprise facility." '647 Patent at col. 14 ll. 8-10. *Nevertheless, claim 1 further recites "a first end user device in the first enterprise facility" and "a second end user device in the second enterprise facility." Id. at col. 14 ll. 13-18. And claim 1 further states that **it is these user devices that have sole access to the respective portions of the databases**. Id. at col. 14 ll. 42-45. If the patentee wanted the access to be limited to the healthcare enterprises' users rather than its devices, then the patentee could have used express language stating so. The patentee did not.*

*Id.* at 27-28 (emphasis added).

Undeterred, CliniComp served final infringement contentions pursuant to Patent Local Rule 3.6 on August 29, 2022.  Dkt. 98-4.  Those contentions did not apply or account for the Court's July 28, 2022 claim construction rulings, but rather continued to assert the same groundless infringement theories CliniComp asserted at the outset of the case.  Thereafter, CliniComp aggressively sought additional discovery, even after the deadline for substantial completion of document discovery had passed in June.  For example, it served twelve subpoenas on Cerner's customers, each with more than twenty cumbersome document requests; it took an additional deposition and noticed three more; it conducted days of further in-person review of Cerner's source code with its expert; it propounded two more sets of interrogatories, more than thirty additional requests for production, and requests for admission; it met and conferred over discovery it had served months earlier; and it

demanded additional documents and information.  Rutowski Decl. ¶¶ 5-13, Exs. 2, 4-6.

On September 19, 2022, Cerner filed a motion for summary judgment of non-infringement (Dkt. 98-1).  The motion explained how CliniComp's final infringement contentions admitted that the accused products work in a non-infringing way and rely on claim constructions that the Court expressly rejected in its claim construction order.  *Id*.  Cerner followed that motion with an *Octane Fitness* letter to CliniComp on September 28, 2022 that further detailed why CliniComp had no reasonable basis to pursue this case.  Ex. 3.  CliniComp never responded.

CliniComp's opposition did not genuinely dispute any of the material facts that Cerner relied on in its motion.  *See* Dkt. 105 (while CliniComp said each fact was "disputed," it did not offer any substantive reason why and only provided "additional facts").  In fact, there were no material disputes over how the accused systems worked.  *Id.*  Critically, CliniComp did not dispute that Cerner *stored* data in the database using an indexing system but, instead, argued that Cerner somehow satisfied the storing limitation when selectively *retrieving* that indexed data.  Dkt. 106 at 11-13 (arguing that "retrieved" data in the form of a "data blob" satisfies this limitation).  CliniComp also did not dispute that the accused databases were accessible from any device at any location and, instead, argued that the claims did not require limiting access to devices located in the first/second enterprise facility.  *Id.* at 6-7.

On November 15, 2022, the Court granted summary judgement of non-infringement on two separate grounds – the two claim limitations discussed in this motion.  Dkt. 120.  Regarding the "storing" limitation, the Court found that no reasonable juror could conclude that the accused services satisfy the "storing the processed [first/second] healthcare data in a [first/second] portion of the database associated with the [first/second] healthcare enterprise facility" limitation.  *Id*. at

38.  Regarding the "in the… facility" limitation, the Court found that CliniComp could not prove that Cerner met the "only accessible to the [first/second] end user device… in the [first/second] enterprise facility" claim limitation under the Court's construction.  *Id*. at 27.  The Court entered judgment in favor of Cerner the next day.  Dkt. 121.

## III.   CERNER IS ENTITLED TO FEES UNDER 35 U.S.C. § 285.

### A.   Legal Standard

The court in exceptional cases may award reasonable attorney fees to the prevailing party.  35 U.S.C. § 285.  An "exceptional" case is "simply one that *stands out from others with respect to the substantive strength* of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated."  *Octane Fitness*, 572 U.S. at 554 (emphasis added).  "[A] case presenting either subjective bad faith or *exceptionally meritless* claims may sufficiently set itself apart from mine-run cases to be 'exceptional.'"  *Id.* at 546 (emphasis added).  The *Octane* Court also directed district courts to determine exceptionality "in the case-by-case exercise of their discretion, considering the totality of the circumstances," including "frivolousness" and "objective unreasonableness (both in the factual and legal components of the case)."  *Id*. at 545, 554, n.6.  Because "Section 285 demands a simple discretionary inquiry" and "imposes no specific evidentiary burden, much less such a high one," litigants need only satisfy "*a preponderance of the evidence standard*."  *Id.* at 557 (emphasis added).

### B.   CliniComp's Infringement Theories Were Exceptionally Meritless

CliniComp's infringement theories contradicted the disclaimers and representations it made to the PTAB and defied the specification and plain meaning of the claim terms.  Yet CliniComp pursued those theories in disregard of the discovery it obtained about the accused services and after losing key terms in claim construction.  This Court's careful and well-reasoned decision granting summary

judgment in Cerner's favor on two separate bases confirmed that the "substantive strength" of CliniComp's litigation position "stands out" as detailed below. *Octane*, 572 U.S. at 554. The Court need not find that CliniComp's actions after claim construction were exceptionally weak with respect to both of the claim limitations on which summary judgment was granted. Either will support an award of fees under *Octane Fitness*.

> 1. Once the Court Ruled That the Claims Do Not Cover "Indexing," CliniComp Had No Reasonable Prospect of Winning.

Claim 1 requires the step of "storing the processed [first/second] healthcare data in a [first/second] portion of the database associated with the [first/second] healthcare enterprise facility." '647 Patent at Claim 1. Cerner sought a claim construction that incorporated disclaimers that CliniComp made during the IPR proceeding and presented its non-infringement argument in its "impact statement." *See* Dkt 63-1 at A3. Cerner then won its proposed claim construction on multiple fronts. The Court construed the term to require that the claimed "portions" of the database meet specific requirements based on disclaimers that CliniComp made to the PTAB, and that "portions" were not created by merely "indexing by an identifier." Dkt. 91 at 10-18 (referring repeatedly to CliniComp's "clear and unmistakable disclaimers" in granting Cerner's limitations).

But Cerner's accused services do just what CliniComp argued before the PTAB was not sufficient to avoid the prior art – they index client data with a "Logical Domain ID" identifier. Dkt. 98-2 at 7-11 (Fact Nos. 5-6). It was thus clear at claim construction that Cerner did not infringe because Cerner uses an indexing scheme (like the prior art CliniComp disclaimed), not a "portioning" scheme as defined by the Court. CliniComp admitted as much in its final infringement contentions. Dkt. 98-4 at 11 and 22 ("several clients use the same domain (Ex: Domain A), but have it partitioned off for each client into what are called Logical Domains."); *id.* at 12 and 22 ("Cerner created partitions for each

client of [Community Works/Power Works] . . by programing (sic) database query restrictions that use each client's logical domain ID"); *id.* at 31 ("Cerner created partitions . . .  by programing (sic) database query restrictions to 'enforce' the separation of one client's data from other clients' data.  These database query restrictions use each client's Client Domain Relation ID . . ."). Indeed, on summary judgment, the Court found that CliniComp failed to present evidence demonstrating a genuine dispute of fact otherwise.  Dkt. 120 at 38.

CliniComp's claim construction and infringement theory with respect to this term was exceptional for a number of reasons.

First, CliniComp pursued a claim construction that directly contradicted the positions it took in the IPR.  A finding of exceptionality and an award of fees is appropriate where the patentee's claim construction and/or infringement arguments contradict arguments made to defend against invalidity.  *See Icon Health & Fitness, Inc. v. Octane Fitness, LLC,* 112 F. Supp. 3d 888, 893 (D. Minn. 2015), *aff'd*, 706 F. App'x 666 (Fed. Cir. 2017) (a case is exceptional where patentee's claim construction arguments contradicted arguments made in prosecution history as to why the invention was distinguishable from prior art); *Straight Path IP Grp., Inc. v. Cisco Sys., Inc.*, 411 F. Supp. 3d 1026, 1033, 1035 (N.D. Cal. 2019) (granting fees where plaintiff's summary judgment arguments on noninfringement conflicted with the arguments it made in IPR to defend against claims of invalidity).

Worse, even after CliniComp lost claim construction of this term, it continued to pursue an infringement theory in its Final Infringement Contentions that contradicted not only its IPR positions but also the Court's claim construction as detailed above.  CliniComp had a duty to reevaluate the strength of its positions, particularly after losing claim construction.  *IPS Grp., Inc. v. Duncan Sols., Inc.*, No. 15-CV-1526-CAB (MDD), 2018 WL 2215418, at *2 (S.D. Cal. May 14, 2018) ("[A] party cannot assert baseless infringement claims and must continually assess the soundness of pending infringement claims, especially after an adverse claim

construction.") (*quoting Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306, 1328 (Fed. Cir. 2013).  Yet despite the claim construction order and Cerner's *Octane Fitness* letter that followed, CliniComp pressed on.  By the time the case reached summary judgment, the Court found that the process CliniComp's expert described as infringing "is precisely what CliniComp described to the PTAB as constituting indexing under a given unique provider ID and as being insufficient to satisfy the "storing" limitation in claim 1."  Dkt. 120 at 36.  CliniComp argued one thing to the PTAB to save its claims and the exact opposite to this Court in an attempt to save its infringement theory.

        Second, CliniComp never identified anything in Cerner's systems that met all the elements of the Court's construction – it just tried to muddy the record by belatedly changing its infringement theory and advancing a new "data blob"-based argument.  The Court described CliniComp's infringement theory as "inconsistent" and "inarticulate" in the summary judgment order.  Dkt. 120 at 30, n. 12.  This is exceptional.  *IPS Grp.*, 2018 WL 2215418, at *2 (finding exceptional circumstances where the asserted products clearly did not meet the claim limitations and the patentee's infringement contentions failed to identify the claim limitation for the accused product); *Pop Top Corp. v. Rakuten Kobo Inc.*, No. 20-CV-04482-DMR, 2022 WL 267407, *4-5 (N.D. Cal. Jan. 28, 2022) (granting fees because the patentee failed to offer evidence supporting its infringement claims and its infringement positions differed between its contentions, its opposition to the motion for summary judgment, and at oral argument).  Specifically, in the summary judgement order, the Court noted that "CliniComp's briefing is vague and inconsistent as to how precisely the data blob scheme satisfies the Court's claim construction" and "[a]t the hearing, CliniComp's counsel even described its own briefing as 'inarticulate.'"  Dkt. 120 at 30, n.12.  The Court concluded that CliniComp "simply repeats this part of the Court's claim construction without identifying anything from the accused services" and "has entirely failed to explain

how this requirement in the Court's claim construction is satisfied by the accused services." *Id*.  In fact, as discussed below, CliniComp itself later admitted in an *ex parte* application and at the hearing that the "data blobs" do *not* satisfy every element of the Court's construction.

Finally, in an effort to save its infringement position on summary judgment, CliniComp sought leave to file a sur-reply with "a brand new never-before-disclosed theory of infringement." Dkt. 120 at 40.  The Court struck the proposed sur-reply as "improper" accordingly.  *Id*. at 40-41.  In its request for a sur-reply, CliniComp represented to the Court that it never argued that the "data blobs" satisfied the Court's limitation and accused Cerner of mischaracterizing CliniComp's argument and abandoned that argument entirely.[3]  Dkt. 112.  This was in direct contradiction of its argument in opposition that "the data blob regime satisfies each requirement" of the Court's construction of "portions."  Dkt. 106 at 12.  This last-ditch and untimely effort by CliniComp to abandon its sole theory of infringement in its opposition and advance an infringement theory that it never disclosed further supports a fee award.  *IPS Grp.*, 2018 WL 2215418, at *2 (finding exceptional circumstances where patentee's "opposition to the summary judgment advanced an argument it had not presented in its infringement contentions or could reasonably be supported by the patent").

### 2. The Fact That ClinicComp Also Pursued a Frivolous Case on "in the… facility" Limitation Makes the Case Even More Exceptional.

Claim 1 provides that "healthcare data in the first portion of the database is only accessible to the first end user device and healthcare data in the second portion of the database is only accessible to the second end user device" and that the end

---

[3] As the Court recognized in its summary judgment order, CliniComp's opposition clearly relied on the "data blobs" to satisfy elements of the Court's construction of "portions."  Dkt. 106 (CliniComp MSJ Opp.) at 4 ("This data blob <u>is an arrangement of data structures of the database</u>") (emphasis added); *id.* at 13 ("The data blob . . . <u>is not created 'merely' by indexing an identifier</u>") (emphasis added); *id.* at 13 ("[the] data blobs <u>prevent data from one healthcare enterprise facility from being accessed by other healthcare enterprise facilities</u>") (emphasis added).

user devices that can access the database must be "in the [first/second] enterprise facility." '647 Patent at Claim 1 (14:14 and 14:17-18).  Cerner sought a construction that would limit access to healthcare data to end-user devices in the claimed healthcare facilities and disclosed its non-infringement argument based on this limitation in its impact statement.  Dkt 63-1 at A14-15.  The Court largely adopted Cerner's proposed construction, construing this limitation to require device-based restrictions, not user-based restrictions as proposed by CliniComp, and making clear that access to respective portions of the database was limited to "a first end user device in the first enterprise facility" and "a second end user device in the second enterprise facility":

> [C]laim 1 further recites "a first end user device in the first enterprise facility" and "a second end user device in the second enterprise facility." And claim 1 further states that ***it is these user devices that have sole access to the respective portions of the databases***. If the patentee wanted the access to be limited to the healthcare enterprises' users rather than its devices, then the patentee could have used express language stating so. The patentee did not.

Dkt. No. 91 at 27-32 (citations omitted).  Thus, claim 1 requires that healthcare information associated with the first/second enterprise facility can only be accessed by a first/second end user device "*in the [first/second] enterprise facility.*"  *Id.* (emphasis added); *see also* Dkt. 120 at 15 (the Court agreed with Cerner in the claim construction order).

It was clear as of the claim construction order that Cerner did not infringe because there was never any dispute that its systems could be accessed by any device at any location.  *See* Dkt. 98-2 at 1-6 (Fact Nos. 1-4).  CliniComp's final infringement contentions admitted as much.  *See* Dkt. 98-4 at 14 and 24-25 (admitting that the accused systems restricted access such that a client's information "cannot be accessed by any device other than those devices associated, ***through their users***, with the logical domain ID of the healthcare enterprise facility to which the database portion belongs.") (emphasis added); *id.* at 29 ("The LON was a cloud-based service accessed over the Internet by users using user devices.").

Yet CliniComp persisted.  In opposing summary judgment, it argued that summary judgment of noninfringement was not appropriate because Cerner based its argument on the plain meaning of "in" and neither party had asked the Court to construe "in the [first/second] enterprise facility."  Dkt. 120 at 15.  But the consequences of this failure fell on CliniComp, not Cerner.  As the Court noted in its summary judgment order, CliniComp's infringement theory relied on a meaning of "in the [first/second] enterprise facility" that was not supported by its plain and ordinary meaning and, thus, "CliniComp, not Cerner, bore the burden of raising this issue" during the claim construction phase.  Dkt. 120 at 17.  But CliniComp never raised this claim construction position because it was not a colorable argument – CliniComp would have had to argue that "in" either means something other than "in" or should be written out of the claim completely.  In contrast, as the Court affirmed on summary judgment, Cerner's non-infringement position was consistent with the plain and ordinary meaning of the terms "in" and "facility" as well as the intrinsic evidence.  *Id*. at 17-20.

A patentee's pursuit of a construction that is both inconsistent with a term's plain and ordinary meaning and contrary to the intrinsic evidence warrants a finding of exceptionality.  *Lakim Indus., Inc. v. Linzer Prods. Corp.*, No. 2:12-cv-04976 ODW (JEMx), 2013 WL 1767799, at *5, 7 (C.D. Cal. Apr. 24, 2013), *aff'd*, 552 F. App'x 989 (Fed. Cir. 2014) (note: pre-*Octane*) (finding case exceptional where patentee's proposed construction was objectively baseless because it was more complex than the plain and ordinary meaning and "contrary to all the intrinsic evidence"); *Spitz Techs. Corp. v. Nobel Biocare USA LLC*, No. SACV1700660JVSJCGX, 2018 WL 6164300, at *6 (C.D. Cal. June 7, 2018), *aff'd*, 773 F. App'x 625 (Fed. Cir. 2019) (granting fees because plaintiff chose to maintain its infringement positions, which were contrary to plain and ordinary meaning and to the court's construction).  Here, CliniComp failed to seek a claim construction it needed for its infringement theory to work, and then continued to

advance that theory after claim construction even though it was inconsistent with the claim's plain and ordinary meaning and unsupported by the intrinsic evidence. The Court found that "the specification does not support and indeed contradicts CliniComp's contention that… the user and the user device may be remote from the healthcare enterprise" and that CliniComp's claim construction position "deviates from that plain and ordinary meaning." Dkt. 120 at 20, n. 5.  In light of the undisputed facts, the Court concluded that "no reasonable jury could conclude that the accused services literally satisfy the 'only accessible to the [first/second] end user device' 'in the [first/second] enterprise facility' claim limitation." *Id.* at 22.

Under "the totality of the circumstances," CliniComp's litigation positions certainly "stand out" as "unreasonable" and make this case "exceptional."  *See Octane*, 572 U.S. at 545, 554.  The fact that CliniComp was doubly frivolous leaves no doubt the *Octane Fitness* standard is met here.

## C.   Cerner Seeks Its Reasonable Attorneys' Fees

Cerner respectfully requests that CliniComp pay its attorneys' fees dating back to the claim construction order on July 28, 2022 in the amount of approximately $925,000.[4]  Cerner also seeks its fees for bringing this motion. *Kilopass Tech., Inc. v. Sidense Corp.*, 82 F. Supp. 3d 1154, 1172-73 (N.D. Cal. 2015) (granting fees for defendant's original motion for attorneys' fees and its renewed motion for fees after appeal).

## IV.   CONCLUSION

For the foregoing reasons, Cerner respectfully requests that the Court grant Cerner's motion, find this case to be "exceptional," and award Cerner its reasonable

---

[4] Consistent with Federal Rule of Civil Procedure 54(d)(2)(B)(iii), Cerner provides this fair estimate of the amount sought.  Upon issuance of an order or schedule by the Court, Cerner will provide the underlying evidentiary material bearing on the appropriate fee award.  *See* Notes of Advisory Committee on Rules – 1993 Amendment, Paragraph (2), Fed. R. Civ. P. 54; *see also* § 2680 Procedure for the Award of Attorney's Fees, 10 Fed. Prac. & Proc. Civ. § 2680 (4th ed.).

MPA ISO MOTION FOR ATTORNEYS' FEES
CASE NO. 3:17-CV-02479-GPC-DEB

1   attorneys' fees incurred after the Court issued its claim construction order.

2

3   Dated:  November 30, 2022     ORRICK, HERRINGTON & SUTCLIFFE LLP

4

5                      By:            */s/ Jared Bobrow*

6                              Jared Bobrow

                            Attorneys for Defendant

7                            Cerner Corporation

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>CERTIFICATE OF SERVICE</u>

2        The undersigned hereby certifies that a true and correct copy of the above

3  and foregoing document has been served on November 30, 2022 to all counsel of

4  record who are deemed to have consented to electronic service via the Court's

5  CM/ECF system per Civil Local Rule 5.4.  Any other counsel of record will be

6  served by electronic mail, facsimile and/or overnight delivery.

7

8  Dated: November 30, 2022

                                                      */s/ Jared Bobrow*

9                                                   Jared Bobrow

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28