

**UNITED STATES COURT OF APPEALS**
**FOR THE FEDERAL CIRCUIT**
717 MADISON PLACE, N.W.
WASHINGTON, D.C. 20439

PETER R. MARKSTEINER
CLERK OF COURT

CLERK'S OFFICE
202-275-8000

December 27, 2022

## NOTICE OF DOCKETING

**Federal Circuit Docket No.:** 2023-1295

**Federal Circuit Short Caption:** CliniComp International, Inc. v. Cerner Corporation

**Date of Docketing:** December 27, 2022

**Originating Tribunal:** United States District Court for the Southern District of California

**Originating Case No.:** 3:17-cv-02479-GPC-DEB

**Appellant:** CliniComp International, Inc.

A notice of appeal has been filed and assigned the above Federal Circuit case number. The court's official caption is included as an attachment to this notice. Unless otherwise noted in the court's rules, the assigned docket number and official caption or short caption must be included on all documents filed with this Court. It is the responsibility of all parties to review the Rules for critical due dates. The assigned deputy clerk is noted below and all case questions should be directed to the Case Management section at (202) 275-8055.

The following filings are due within 14 days of this notice:

- Entry of Appearance or Notice of Unrepresented Person. (Fed. Cir. R. 47.3.)
- Certificate of Interest. (Fed. Cir. R. 47.4; not required for unrepresented and federal government parties unless disclosing information under Fed. Cir. R. 47.4(a)(6))
- Docketing Statement. Note: The Docketing Statement is due in 30 days if the United States or its officer or agency is a party in the appeal. (Fed. Cir. R. 33.1 and the Mediation Guidelines; no docketing statement is required in cases with an unrepresented party)
- Statement Concerning Discrimination in MSPB or arbitrator cases. (Fed. Cir. R. 15(c); completed by petitioner only)

- Fee payment or appropriate fee waiver request, if the docketing fee was not prepaid (see Fee Payment below).

**FILING DOCUMENTS:** Each counsel representing a party must be a member of the court's bar and registered for the court's electronic filing system. Parties represented by counsel must make all filings through the court's electronic filing system.

Unrepresented parties may choose to submit case filings to the court either in paper or through the court's electronic filing system; electronic filing will only be permitted for unrepresented parties after successful registration for the court's electronic filing system and submission of a completed Notice of Unrepresented Person Appearance. Fed. Cir. R. 25(a). The court's Electronic Filing Procedures may be accessed at www.cafc.uscourts.gov/contact/clerks-office/filing-resources.

**CONTACT INFORMATION:** Electronic filers, or unrepresented parties registered to receive electronic service, must update their contact information in their PACER service center profile whenever their contact information changes. Counsel must file an amended Entry of Appearance and unrepresented parties must file an amended Notice of Unrepresented Person Appearance whenever contact information changes. Fed. Cir. R. 25(a)(5).

**FEE PAYMENT:** Unless the filing fee was prepaid, fee payment must be submitted within fourteen days after this notice. Fed. Cir. R. 52(d). For outstanding docketing fees due to this court, electronic filers must pay the fee using the event Pay Docketing Fee through the court's electronic filing system. Fed. Cir. R. 52(e). Docketing fees due to other courts, such as U.S. District Courts, the U.S. Court of Appeals for Veterans Claims, and non-vaccine cases at the U.S. Court of Federal Claims, must be submitted to those courts in accordance with their procedures. A filer wishing to proceed without fee payment must submit a motion for leave to proceed in forma pauperis, or other fee waiver request, within fourteen days.

**OFFICIAL CAPTION:** The court's official caption is attached and reflects the lower tribunal's caption pursuant to Fed. R. App. P. 12(a), 15(a), and 21(a). Please review the caption carefully and promptly advise this court in writing of any improper or inaccurate designations.

/s/ Peter R. Marksteiner
Peter R. Marksteiner
Clerk of Court

By: M. Ames, Deputy Clerk

**Attachments:**

- Official caption
- Paper Copies of General Information and Forms (to unrepresented parties only):
    - General Information and Overview of a Case in the Federal Circuit
    - Notice of Unrepresented Person Appearance
    - Informal Brief
    - Informal Reply Brief (to be completed only after receiving the opposing party's response brief)
    - Motion and Affidavit for Leave to Proceed in Forma Pauperis (only to filers owing the docketing fee)
    - Supplemental in Forma Pauperis Form for Prisoners (only to filers in a correctional institution)
    - Statement Concerning Discrimination (only to petitioners in MSPB or arbitrator case)

**cc:** United States District Court for the Southern District of California

**Official Caption**


**CLINICOMP INTERNATIONAL, INC.,**
*Plaintiff-Appellant*


**v.**


**CERNER CORPORATION,**
*Defendant-Appellee*



**Short Caption**

CliniComp International, Inc. v. Cerner Corporation

MANATT, PHELPS & PHILLIPS, LLP
Amar L. Thakur (Bar No. 194025)
athakur@manatt.com
Shawn E. McDonald (Bar No. 237580)
smcdonald@manatt.com
695 Town Center Drive, 14th Floor
Costa Mesa, CA 92626
Phone: (714) 371-2500
Fax: (714) 371-2550

Bruce Zisser (Bar No. 180607)
bzisser@manatt.com
2049 Century Park East, Suite 1700
Los Angeles, CA 90067
Phone: (310) 312-4000
Fax: (310) 312-4224

Attorneys for Plaintiff
CLINICOMP INTERNATIONAL, INC.

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLINICOMP INTERNATIONAL, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>CERNER CORPORATION,<br><br>Defendant. | CASE NO. 17-CV-02479-GPC-DEB<br><br>**NOTICE OF APPEAL** |

Plaintiff CliniComp International, Inc. ("CliniComp"), pursuant to Federal Rule of Appellate Procedure 3(a), respectfully appeals to the United States Court of Appeals for the Federal Circuit from the Judgment entered on November 16, 2022 (Doc. No. 121), all rulings and orders merged therein, and any and all other appealable prior or underlying orders, opinions, rulings, findings, or conclusions, including without limitation the Claim Construction Order (Doc. No. 91), and the Order: (1) Granting Defendant's Motion for Summary Judgment of Non-

Infringement; and, (2) Denying Plaintiff's Motion for Leave to File a Sur-Reply (Dkt. No. 120). *See* 28 U.S.C. § 1295(a)(1); *see also* 28 U.S.C. § 1292(c)(1) and (2).

Concurrent with this notice, CliniComp has remitted payment of the filing fee ($5.00) and the docketing fee ($500.00) as required by 28 U.S.C. § 1917, Federal Rule of Appellate Procedure 3(e), and the fee schedules of the Southern District of California and the Federal Circuit.

Respectfully Submitted,

DATED: December 14, 2022          MANATT, PHELPS & PHILLIPS, LLP

                                  */s/ Bruce R. Zisser*
                                  Bruce R. Zisser

                                  *Attorneys for Plaintiff CliniComp*
                                  *International, Inc.*

1

## **<u>CERTIFICATE OF SERVICE</u>**

2

3

4

5

6

        The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on December 14, 2022 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4.  Any other counsel of record will be served by electronic mail, facsimile and/or overnight delivery.

7

8

9

10

                                        */s/  Bruce R. Zisser*
                                        Bruce R. Zisser

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

I hereby attest and certify on _____ that the foregoing document is a full, true and correct copy of the original on file in my office and in my legal custody.

Clerk, U.S. District Court
Southern District of California

By: s/ S. Yeager
    Deputy

AppealFC,CLOSED,,,ENE,PATENT,PROTO,SEALDC

**U.S. District Court**
**Southern District of California (San Diego)**
**CIVIL DOCKET FOR CASE #: 3:17-cv-02479-GPC-DEB**

CliniComp International, Inc. v. Cerner Corporation        Date Filed: 12/11/2017
Assigned to: Judge Gonzalo P. Curiel                       Date Terminated: 11/16/2022
Referred to: Magistrate Judge Daniel E. Butcher            Jury Demand: Plaintiff
Cause: 28:1338pt Patent Infringement                       Nature of Suit: 830 Patent
                                                           Jurisdiction: Federal Question

Early Neutral Evaluation Conference:                       Settlement Conference:
Case Management Conference:                                Settlement Disposition Conference:
Status Hearing:                                            Pretrial Conference:
Status Conference:                                         Final Pretrial Conference:
Mandatory Settlement Conference:                           Trial Date:

**Plaintiff**

**CliniComp International, Inc.**          represented by   **Amardeep Lal Thakur**
                                                           Manatt, Phelps & Phillips, LLP
                                                           695 Town Center Drive
                                                           Fourteenth Floor
                                                           Costa Mesa, CA 92626
                                                           714-371-2511
                                                           Email: athakur@manatt.com
                                                           *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Bruce R Zisser**
                                                           Manatt, Phelps & Phillips
                                                           2049 Century Park East
                                                           Los Angeles, CA 90067
                                                           310-312-4126
                                                           Fax: 310-312-4224
                                                           Email: bzisser@Manatt.com
                                                           *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Shawn E. McDonald**
                                                           Manatt, Phelps & Phillips
                                                           695 Town Center Drive
                                                           14th Floor
                                                           Costa Mesa, CA 92626
                                                           714-371-9804
                                                           Email: smcdonald@manatt.com
                                                           *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Miles Davenport Freeman**
                                                           Quinn Emanuel Urquhart & Sullivan
                                                           865 South Figueroa Street
                                                           10th Floor
                                                           Los Angeles, CA 90017
                                                           213-443-3000
                                                           Fax: 213-443-3100
                                                           Email: milesfreeman@quinnemanuel.com
                                                           *TERMINATED: 07/30/2020*
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Timothy W. Lohse**
                                                           Manatt, Phelps & Phillips LLP
                                                           Technology & IP Litigation
                                                           203 Redwood Shores Parkway
                                                           Suite 405

Redwood City, CA 94065
650-812-1307
Fax: 650-213-4625
Email: tlohse@manatt.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Cerner Corporation**                          represented by   **Basil Trent Webb**
                                                                  Shook, Hardy & Bacon L. L. P.
                                                                  2555 Grand Boulevard
                                                                  Kansas City, MO 64108
                                                                  816-474-6550
                                                                  Fax: 816-421-5547
                                                                  Email: bwebb@shb.com
                                                                  *LEAD ATTORNEY*
                                                                  *PRO HAC VICE*
                                                                  *ATTORNEY TO BE NOTICED*

                                                                  **Brian Patrick Ziska**
                                                                  Shook Hardy & Bacon LLP
                                                                  5 Park Plaza
                                                                  Suite 1600
                                                                  Irvine, CA 92614
                                                                  (949) 475-1500
                                                                  Fax: (949) 475-0016
                                                                  Email: bziska@shb.com *(Inactive)*
                                                                  *TERMINATED: 08/20/2021*
                                                                  *LEAD ATTORNEY*
                                                                  *ATTORNEY TO BE NOTICED*

                                                                  **Fiona A. Bell**
                                                                  Shook, Hardy & Bacon L.L.P.
                                                                  600 Travis
                                                                  Suite 3400
                                                                  Houston, TX 77002-2926
                                                                  713-227-8008 x64024
                                                                  Fax: 713-227-9508
                                                                  Email: fbell@shb.com
                                                                  *LEAD ATTORNEY*
                                                                  *PRO HAC VICE*
                                                                  *ATTORNEY TO BE NOTICED*

                                                                  **Jared Bobrow**
                                                                  Orrick, Herrington & Sutcliffe LLP
                                                                  1000 Marsh Road
                                                                  Menlo Park, CA 94025-1015
                                                                  650-614-7400
                                                                  Fax: 650-614-7401
                                                                  Email: jbobrow@orrick.com
                                                                  *LEAD ATTORNEY*
                                                                  *ATTORNEY TO BE NOTICED*

                                                                  **Jason K. Yu**
                                                                  Orrick, Herrington & Sutcliffe LLP
                                                                  1000 Marsh Road
                                                                  Menlo Park, CA 94025
                                                                  (650) 614-7363
                                                                  Fax: (650) 614-7401
                                                                  Email: jasonyu@orrick.com
                                                                  *LEAD ATTORNEY*
                                                                  *ATTORNEY TO BE NOTICED*

                                                                  **Kyle E. Friesen**
                                                                  Shook, Hardy & Bacon, LLP
                                                                  600 Travis Street

Suite 3400
Houston, TX 77002-2730
713-546-5671
Fax: 713-227-9508
Email: kfriesen@shb.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Robert H. Reckers**
Shook, Hardy & Bacon L.L.P.
600 Travis
Suite 3400
Houston, TX 77002-2926
713-227-8008 x64026
Fax: 713-227-9508
Email: rreckers@shb.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ryan Joseph Williams**
Shook, Hardy & Bacon
5 Park Plaza
Suite 1600
Irvine, CA 92614
949-475-1500
Email: rjwilliams@shb.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sharon A. Israel**
Shook Hardy & Bacon L.L.P.
600 Travis Street
Suite 3400
Houston, TX 77002
713-546-5689
Email: sisrael@shb.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Benjamin Henry Austin**
Orrick, Herrington & Sutcliffe LLP
2050 Main Street
Suite 1100
Irvine, CA 92614
949-567-6700
Fax: 949-567-6710
Email: baustin@orrick.com
*ATTORNEY TO BE NOTICED*

**Diana Marie Rutowski**
Orrick Herrington & Sutcliffe
1000 Marsh Road
Menlo Park, CA 94025
650-614-7400
Fax: 650-614-7401
Email: drutowski@orrick.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 12/14/2022 | 126 | NOTICE OF APPEAL to the Federal Circuit as to 120 Order on Motion for Summary Judgment,, Order on Motion for Leave to File Document, 91 Order, 121 Clerk's Judgment by CliniComp International, Inc.. ( Filing fee $ 505 receipt number ACASDC-17425154.) (Zisser, Bruce)(Notice of Appeal will be electronically transmitted to U.S. Court of Appeals for the Federal Circuit.) (smy1). (Entered: 12/14/2022) |

| | | |
|---|---|---|
| 12/01/2022 | 125 | ORDER setting briefing schedule. Signed by Judge Gonzalo P. Curiel on 12/1/2022.(jpp) (Entered: 12/01/2022) |
| 11/30/2022 | 124 | MOTION for Attorney Fees by Cerner Corporation. (Attachments: # 1 Memo of Points and Authorities in Support of its Motion for Attorneys' Fees under 35 U.S.C. § 285, # 2 Declaration of Diana M. Rutowski in Support of Defendant Cerner Corporation's Motion for Attorneys' Fees under 35 U.S.C. § 285, # 3 Exhibit 1, # 4 Exhibit 2, # 5 Exhibit 3, # 6 Exhibit 4, # 7 Exhibit 5, # 8 Exhibit 6)(Bobrow, Jared) (jpp). (Entered: 11/30/2022) |
| 11/30/2022 | 123 | NOTICE of Hearing - 122 Bill of Costs, filed by Cerner Corporation : Hearing set for 12/20/2022 at 10:30AM. Any opposition or responsive pleading due 12/13/2022. All parties are to appear telephonically for this Bill of Costs hearing and are directed to join on a conference call, then contact J. Simmons 619-321-0251 at the time of the hearing. (no document attached) (jms) (Entered: 11/30/2022) |
| 11/30/2022 | 122 | BILL OF COSTS submitted by Defendant Cerner Corporation in the amount of $ 9,549.63. Hearing set for 12/20/2022 at 10:30AM. (Attachments: # 1 Bill of Costs, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E)(Rutowski, Diana) (jpp). (Entered: 11/30/2022) |
| 11/16/2022 | 121 | CLERK'S JUDGMENT. IT IS SO ORDERED AND ADJUDGED: the Court grants Cerner's motion for summary judgment of non-infringement. Judgment in favor ofDefendant Cerner and against Plaintiff CliniComp. The case is hereby closed.(jmo) (Entered: 11/16/2022) |
| 11/15/2022 | 120 | Order: (1) Granting Defendant's Motion for Summary Judgment of Non-Infringement (Dkt 99 ); and (2) Deny Plaintiff's Motion for Leave to File a Sur-Reply (Dkt. No. 112 ) Sur-reply (Dkt. No. 112-1) and the response to the sur-reply (Dkt. No. 116-1) are stricken. Signed by Judge Gonzalo P. Curiel on 11/15/22. (jmo) (Entered: 11/16/2022) |
| 11/08/2022 | 119 | Minute Entry for proceedings held before Judge Gonzalo P. Curiel: Motion Hearing held on 11/9/2022 re 99 Motion for Summary Judgment filed by Cerner Corporation and 112 Ex Parte Motion for Leave to File Sur-Reply ISO CliniComp's Opposition to Cerner's Motion for Summary Judgment. Oral arguments heard. Motions taken under submission. The Court will issue a written order.(Court Reporter/ECR Chari Bowery). (Plaintiff Attorney Amardeep Lal Thakur, Bruce R Zisser, Shawn E. McDonald). (Defendant Attorney Jared Bobrow, Jason Yu, Peter O'Rourke). (no document attached) (ajs) Modified filed date on 11/9/2022 (ajs). (Entered: 11/09/2022) |
| 11/04/2022 | 118 | Order Modifying the CAse Management Schedule (Dkt. No. 115 ). Proposed Pretrial Order due by 7/28/2023. Final Pretrial Conference set for 8/4/2023 at 01:30 PM in Courtroom 2D before Judge Gonzalo P. Curiel. Signed by Magistrate Judge Daniel E. Butcher on 11/4/22. (jmo) (Entered: 11/04/2022) |
| 11/01/2022 | 117 | Order Granting Defendant's Ex Parte Application to Allow Remote Appearance for the November 8, 2022 Summary Judgment Hearing (Dkt. No. 111 ). Signed by Judge Gonzalo P. Curiel on 11/1/22. (jmo) (Entered: 11/01/2022) |
| 11/01/2022 | 116 | RESPONSE in Opposition re 112 Ex Parte MOTION for Leave to File *Sur-Reply ISO CliniComp's Opposition to Cerner's Motion for Summary Judgment* filed by Cerner Corporation. (Attachments: # 1 DOCUMENT STRICKEN PER 120 )(Bobrow, Jared) (jmo). Modified on 11/18/2022 (jmo). (Entered: 11/01/2022) |
| 10/31/2022 | 115 | Joint MOTION to Continue *and Modify Case Management Schedule* by CliniComp International, Inc.. (Zisser, Bruce) (jmo). (Entered: 10/31/2022) |
| 10/31/2022 | 114 | NOTICE of Appearance by Timothy W. Lohse on behalf of CliniComp International, Inc. (Lohse, Timothy)Attorney Timothy W. Lohse added to party CliniComp International, Inc.(pty:pla) (jmo). (Entered: 10/31/2022) |
| 10/28/2022 | 113 | NOTICE *OF INTENT TO OPPOSE EX PARTE MOTION* by Cerner Corporation re 112 Ex Parte MOTION for Leave to File *Sur-Reply ISO CliniComp's Opposition to Cerner's Motion for Summary Judgment* (Bobrow, Jared) (jmo). (Entered: 10/28/2022) |
| 10/28/2022 | 112 | Ex Parte MOTION for Leave to File *Sur-Reply ISO CliniComp's Opposition to Cerner's Motion for Summary Judgment* by CliniComp International, Inc.. (Attachments: # 1 DOCUMENT STRICKEN PER 120 )(Zisser, Bruce) (jmo). Modified on 11/18/2022 to strike document (jmo). (Entered: 10/28/2022) |
| 10/26/2022 | 111 | Ex Parte MOTION for Leave to Appear Remotely *for The November 8, 2022 Summary Judgment Hearing* by Cerner Corporation. (Bobrow, Jared) (jmo). (Entered: 10/26/2022) |
| 10/25/2022 | 110 | Minute ORDER re Motion for Summary Judgment (ECF No. 99 ). Motion Hearing set for 11/4/2022 VACATED AND RESET TO 11/8/2022 02:30 PM in Courtroom 2D before Judge Gonzalo P. Curiel.(no document attached) (ajs) (Entered: 10/25/2022) |
| 10/21/2022 | 109 | REPLY to Response to Motion re 99 MOTION for Summary Judgment filed by Cerner Corporation. (Attachments: # 1 Declaration of Jason Yu, # 2 Exhibit 11, # 3 Exhibit 12, # 4 Exhibit 13)(Bobrow, Jared)(jmo). (Entered: 10/21/2022) |
| 10/18/2022 | 107 | Order Granting Plaintiff Clinicomp's Motion to Seal Certain Documents Offered in Support of its Opposition to Cerner's Motion for Summary Judgment of Noninfringement re: 104 . Signed by Judge Gonzalo P. Curiel on 10/18/22. (jmo) (Entered: 10/18/2022) |
| 10/14/2022 | 106 | RESPONSE in Opposition re 99 MOTION for Summary Judgment filed by CliniComp International, Inc.. (Attachments: # 1 Response to Statement of Facts - Redacted, # 2 Declaration of Bruce R. Zisser, # 3 Exhibit A, # 4 Exhibit B, # 5 Exhibit C, # 6 Exhibit D, # 7 Exhibit E, # 8 Exhibit F, # 9 Exhibit G, # 10 Exhibit H, # 11 Exhibit I, # 12 Exhibit J, # 13 Exhibit K, # 14 Exhibit L, # 15 Exhibit M, # 16 Exhibit N, # 17 Exhibit O, # 18 Exhibit P, # 19 Exhibit Q, # 20 Exhibit R)(Zisser, Bruce)(jmo). (Entered: 10/14/2022) |

| Date | No. | Description |
|---|---|---|
| 10/14/2022 | 105 | SEALED LODGED Proposed Document re: 104 MOTION to File Documents Under Seal. Document to be filed by Clerk if Motion to Seal is granted. (With attachments)(Zisser, Bruce) M (jmo). (Entered: 10/14/2022) |
| 10/14/2022 | 104 | MOTION to File Documents Under Seal (With attachments)(Zisser, Bruce) (jmo). (Entered: 10/14/2022) |
| 09/20/2022 | 102 | Order Granting Defendant Cerner Corporation's Motion to Seal Certain Documents Offered in Support of its Motion for Summary Judgment of Noninfringement 97 . Signed by Judge Gonzalo P. Curiel on 9/20/22. (jmo) (Entered: 09/20/2022) |
| 09/20/2022 | 101 | Order Setting Briefing Schedule re 99 . Opposition due by 10/14/2022. Reply due by 10/21/2022. A hearing is set on 11/4/22 at 1:30 p.m. in Courtroom 2D. Signed by Judge Gonzalo P. Curiel on 9/20/22.(jmo) (Entered: 09/20/2022) |
| 09/20/2022 | 100 | Minute Entry for proceedings held before Magistrate Judge Daniel E. Butcher: Having consulted with Counsel, the Court vacates the 9/20/2022 Mandatory Settlement Conference. The parties are ordered to jointly contact the Court within 10 days of the Court's ruling on the pending Motion for Summary Judgment to reset the Mandatory Settlement Conference. (no document attached) (yyk) (Entered: 09/20/2022) |
| 09/19/2022 | 99 | MOTION for Summary Judgment by Cerner Corporation. (Attachments: # 1 Memo of Points and Authorities, # 2 Statement of Facts, # 3 Declaration of Jason K. Yu ISO Motion for Summary Judgment, # 4 Exhibit 1 to Jason K. Yu Decl. ISO Motion for Summary Judgment, # 5 Exhibit 2 to Jason K. Yu Decl. ISO Motion for Summary Judgment, # 6 Exhibit 3 to Jason K. Yu Decl. ISO Motion for Summary Judgment, # 7 Exhibit 4 to Jason K. Yu Decl. ISO Motion for Summary Judgment, # 8 Exhibit 5 to Jason K. Yu Decl. ISO Motion for Summary Judgment, # 9 Exhibit 6 to Jason K. Yu Decl. ISO Motion for Summary Judgment, # 10 Exhibit 7 to Jason K. Yu Decl. ISO Motion for Summary Judgment, # 11 Exhibit 8 to Jason K. Yu Decl. ISO Motion for Summary Judgment, # 12 Exhibit 9 to Jason K. Yu Decl. ISO Motion for Summary Judgment, # 13 Exhibit 10 to Jason K. Yu Decl. ISO Motion for Summary Judgment, # 14 Proof of Service)(Bobrow, Jared) (jmo). (Entered: 09/19/2022) |
| 09/19/2022 | 98 | SEALED LODGED Proposed Document re: 97 MOTION to File Documents Under Seal. Document to be filed by Clerk if Motion to Seal is granted. (With attachments)(Bobrow, Jared) (jmo). (Entered: 09/19/2022) |
| 09/19/2022 | 97 | MOTION to File Documents Under Seal (With attachments)(Bobrow, Jared) (jmo). (Entered: 09/19/2022) |
| 09/02/2022 | 96 | Order Providing Updated Procedures for Mandatory Settlement Conference. Signed by Magistrate Judge Daniel E. Butcher on 9/2/22.(jmo) (Entered: 09/02/2022) |
| 08/08/2022 | 95 | Order Granting Plaintiff's Unopposed Motion to Modify the Case Management Schedule (Dkt. No. 94 ) and Amended Case Management Order. Final Pretrial Conference set for 6/9/2023 at 01:30 PM in Courtroom 2D before Judge Gonzalo P. Curiel. Proposed Pretrial Order due by 6/2/2023.Signed by Magistrate Judge Daniel E. Butcher on 8/8/22. (jmo) (Entered: 08/08/2022) |
| 08/02/2022 | 94 | MOTION to Continue and Modify Case Management Schedule - Unopposed, by CliniComp International, Inc.. (Zisser, Bruce) (fth). (Entered: 08/02/2022) |
| 08/02/2022 | 93 | Minute Entry for proceedings held before Magistrate Judge Daniel E. Butcher: Due to a conflict involving the Court's calendar, the 9/15/2022 Mandatory Settlement Conference is vacated and reset for 9/20/2022 at 2:00 PM. The deadline to lodge confidential briefs and participant information is 9/13/2022. (no document attached) (Dech, E.) (Entered: 08/02/2022) |
| 07/29/2022 | 92 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT (Claims Constructions Hearing) held on 7/22/2022 before Judge Gonzalo P. Curiel. Court Reporter/Transcriber: Chari L. Bowery. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or the Court Reporter/Transcriber. If redaction is necessary, parties have seven calendar days from the file date of the Transcript to E-File the Notice of Intent to Request Redaction. The following deadlines would also apply if requesting redaction: Redaction Request Statement due to Court Reporter/Transcriber 8/19/2022. Redacted Transcript Deadline set for 8/29/2022. Release of Transcript Restriction set for 10/27/2022. (akr) (Entered: 07/29/2022) |
| 07/28/2022 | 91 | Claim Construction Order. Signed by Judge Gonzalo P. Curiel on 7/28/2022.(jrm) (Entered: 07/28/2022) |
| 07/22/2022 | 90 | Minute Entry for proceedings held before Judge Gonzalo P. Curiel: Claims Construction Hearing held on 7/22/2022. Written order to follow.(Court Reporter/ECR Chari Bowery). (Plaintiff Attorney Amar Thakur / Shawn McDonald / Bruce Zisser). (Defendant Attorney Jared Bobrow / Ben Austin / Peter O'Rourke). (no document attached) (lrf) (Entered: 07/22/2022) |
| 07/21/2022 | 89 | NOTICE of Appearance by Benjamin Henry Austin on behalf of Cerner Corporation (Austin, Benjamin)Attorney Benjamin Henry Austin added to party Cerner Corporation(pty:dft) (ddf). (Entered: 07/21/2022) |
| 07/12/2022 | 88 | ORDER Granting 83 Defendant's Ex Parte Application to Allow Remote Appearance for The July 22, 2022 Claim Construction Hearing - Motion for Leave to Appear Telephone. Signed by Judge Gonzalo P. Curiel on 7/12/2022. (ave) (Entered: 07/12/2022) |
| 07/12/2022 | 87 | NOTICE of Appearance by Jason K. Yu on behalf of Cerner Corporation (Yu, Jason)Attorney Jason K. Yu added to party Cerner Corporation(pty:dft) (jmo). (Entered: 07/12/2022) |

| | | |
|---|---|---|
| 07/12/2022 | 86 | NOTICE of Appearance by Diana Marie Rutowski on behalf of Cerner Corporation (Rutowski, Diana)Attorney Diana Marie Rutowski added to party Cerner Corporation(pty:dft) (jmo). (Entered: 07/12/2022) |
| 07/12/2022 | 85 | NOTICE of Appearance by Jared Bobrow on behalf of Cerner Corporation (Bobrow, Jared) (jmo). (Entered: 07/12/2022) |
| 07/11/2022 | 84 | NOTICE *of Association of Counsel* by Cerner Corporation (Bobrow, Jared)Attorney Jared Bobrow added to party Cerner Corporation(pty:dft) (jmo). (Entered: 07/11/2022) |
| 07/08/2022 | 83 | Ex Parte MOTION for Leave to Appear via Remote Appearance by Cerner Corporation. (Williams, Ryan) (jmo). (Entered: 07/08/2022) |
| 06/22/2022 | 82 | Corporate Disclosure Statement by Cerner Corporation identifying Corporate Parent Oracle Corporation for Cerner Corporation.. (Bell, Fiona) (axc). (Entered: 06/22/2022) |
| 06/22/2022 | 81 | NOTICE OF WITHDRAWAL OF DOCUMENT by Cerner Corporation re 80 Corporate Disclosure Statement filed by Cerner Corporation . (Bell, Fiona) (axc). (Entered: 06/22/2022) |
| 06/22/2022 | 80 | ***DOCUMENT WITHDRAWN PER ECF 81 *** Corporate Disclosure Statement by Cerner Corporation identifying Corporate Parent Oracle Corporation for Cerner Corporation.. (Reckers, Robert) QC mailer sent on 6/23/2022 re entry was filed using the CM/ECF account of an attorney other than the individual who signed the document(s) (axc). (Entered: 06/22/2022) |
| 05/20/2022 | 79 | NOTICE *Parties' Joint Notice of Amended Joint Claim Construction Chart and Worksheet* by Cerner Corporation (Attachments: # 1 Exhibit A - Amended Joint Claim Construction Chart (clean), # 2 Exhibit B - Amended Claim Construction Worksheet (clean), # 3 Exhibit C - Amended Joint Claim Construction Chart (w/redlines), # 4 Exhibit D - Amended Claim Construction Worksheet (w/redlines))(Bell, Fiona) (jmo). (Entered: 05/20/2022) |
| 05/20/2022 | 78 | NOTICE OF WITHDRAWAL OF DOCUMENT by Cerner Corporation re 77 Notice (Other), filed by Cerner Corporation *Parties' Joint Notice of Amended Joint Claim Construction Chart and Worksheet (with Exhibits)*. (Bell, Fiona) (jmo). (Entered: 05/20/2022) |
| 05/19/2022 | 77 | **DOCUMENT WITHDRAWN BY FILER PER 78 **NOTICE *Parties' Joint Notice of Amended Joint Claim Construction Chart and Worksheet* by Cerner Corporation (Attachments: # 1 Exhibit Exhibit A - Amended Joint Claim Construction Chart (clean), # 2 Exhibit Exhibit B - Amended Claim Construction Worksheet (clean), # 3 Exhibit Exhibit C - Amended Joint Claim Construction Chart (w/redlines), # 4 Exhibit Exhibit D - Amended Claim Construction Worksheet (w/redlines))(Bell, Fiona) (jmo). Modified on 5/23/2022 to withdraw (jmo). (Entered: 05/19/2022) |
| 05/16/2022 | 76 | Minute ORDER. On the Court's own motion, Claims Construction Hearing set for 5/27/2022 VACATED AND RESET TO 7/22/2022 01:30 PM in Courtroom 2D before Judge Gonzalo P. Curiel.(no document attached) (ajs) (Entered: 05/16/2022) |
| 05/11/2022 | 75 | Order Granting Joint Motion for Order Governing Discovery of Electronic Mail (Dkt. No. 74 ) and Entering Order Governing Discovery of Electronic Mail. Signed by Magistrate Judge Daniel E. Butcher on 5/11/22. (jmo) (Entered: 05/11/2022) |
| 05/10/2022 | 74 | Joint MOTION for Production of Electronically Stored Information (ESI) *Joint Motion for Order Governing Discovery of Electronic Mail* by CliniComp International, Inc.. (Attachments: # 1 Exhibit [Proposed] Order Governing Discovery of Electronic Mail)(Zisser, Bruce) **QC Mailer 5/11/2022 re: not submitting proposed orders on docket. Order restricted. Reminder to submit order to Chambers.** (jmo). (Entered: 05/10/2022) |
| 04/11/2022 | 73 | CLAIM CONSTRUCTION BRIEF by Cerner Corporation. (Attachments: # 1 Declaration of Kyle Friesen, # 2 Exhibit L & M)(Reckers, Robert) (jmo). **QC Mailer 4/15/2022 to send courtesy copy to Chambers** (jmo). (Entered: 04/11/2022) |
| 04/11/2022 | 72 | RESPONSE TO CLAIM CONSTRUCTION BRIEF by CliniComp International, Inc.. (Zisser, Bruce) (jmo). (Entered: 04/11/2022) |
| 03/28/2022 | 71 | CLAIM CONSTRUCTION BRIEF by Cerner Corporation. (Attachments: # 1 Declaration Friesen Declaration, # 2 Exhibit Exhibits A-K)(Israel, Sharon) (jmo). **QC Mailer 4/15/2022 to send courtesy copy to Chambers** (jmo). (Entered: 03/28/2022) |
| 03/28/2022 | 70 | CLAIM CONSTRUCTION BRIEF by CliniComp International, Inc.. (Attachments: # 1 Declaration of Bruce R. Zisser ISO Opening Claim Construction Brief, # 2 Exhibit A to Zisser Declaration, # 3 Exhibit B to Zisser Declaration, # 4 Exhibit C to Zisser Declaration, # 5 Exhibit D to Zisser Declaration)(Zisser, Bruce) (jmo). **QC Mailer 4/15/2022 to send courtesy copy to Chambers**(jmo). (Entered: 03/28/2022) |
| 03/15/2022 | 69 | ORDER Approving the Pro Hac Vice Application of Kyle E. Friesen, re 68 Request to Appear Pro Hac Vice. Signed by Judge Gonzalo P. Curiel on 3/15/2022.(rmc) (Entered: 03/15/2022) |
| 03/14/2022 | 68 | Request to Appear Pro Hac Vice ( Filing fee received: $ 213 receipt number ACASDC-16645382.) (Application to be reviewed by Clerk.) (Friesen, Kyle) (rmc). (Entered: 03/14/2022) |

| 03/08/2022 | 67 | ORDER: Good cause appearing, the Court GRANTS the parties' Joint Motion to Modify the Case Management Schedule. Dkt. No. 66. The Court vacates the March 23, 2022 Settlement Conference and continues the Claim Construction and Tutorial Hearing to May 27, 2022 at 1:30 PM. All other guidelines, requirements, and deadlines including the Claim Construction briefing schedule, remain as previously set. See Dkt. Nos. 55, 59. Signed by Magistrate Judge Daniel E. Butcher on 3/8/2022. (no document attached) (Dech, E.) (Entered: 03/08/2022) |
| 03/08/2022 | 66 | Joint MOTION re 62 Terminate Hearings,, Set Hearings, 55 Scheduling Order, *Joint Motion to Modify the Case Management Schedule* by CliniComp International, Inc.. (Zisser, Bruce) (jmo). (Entered: 03/08/2022) |
| 03/08/2022 | 65 | ORDER Approving the Pro Hac Vice Application of Sharon A. Israel, re 64 Request to Appear Pro Hac Vice. Signed by Judge Gonzalo P. Curiel on 3/8/2022.(rmc) (Entered: 03/08/2022) |
| 03/04/2022 | 64 | Request to Appear Pro Hac Vice (Filing fee received: $213.00 receipt number ACASDC-16621175.)(Application to be reviewed by Clerk.)(Israel, Sharon)(jrd) (Entered: 03/04/2022) |
| 02/14/2022 | 63 | JOINT HEARING STATEMENT by CliniComp International, Inc.. (Attachments: # 1 Exhibit Exhibit A: Joint Claim Construction Chart, # 2 Exhibit Exhibit B: Joint Claim Construction Worksheet)(Zisser, Bruce) (dlg). **QC mailer 4/15/2022 to send courtesy copy to Chambers** (jmo). (Entered: 02/14/2022) |
| 11/29/2021 | 62 | Minute Entry for proceedings held before Magistrate Judge Daniel E. Butcher: Due to a conflict involving the Court's calendar, the Settlement Conference on 3/15/2022 is vacated and reset for 3/23/2022 at 1:30 PM.The deadline to submit confidential briefs and provide the Court with contact information for all participants is 3/16/2022. (no document attached) (Dech, E.) (Entered: 11/29/2021) |
| 10/22/2021 | 61 | ORDER Granting Joint 60 Motion for Protective Order. Signed by Magistrate Judge Daniel E. Butcher on 10/22/21. (dlg) (Entered: 10/22/2021) |
| 10/20/2021 | 60 | Joint MOTION for Protective Order *Joint Motion for Protective Order* by CliniComp International, Inc.. (Zisser, Bruce) (dlg). (Entered: 10/20/2021) |
| 10/18/2021 | 59 | Minute Entry for proceedings held before Magistrate Judge Daniel E. Butcher: The Court resets the deadline to serve expert disclosures from 9/16/2022 to 10/17/2022. All other guidelines, deadlines, and requirements remain as previously set. See Dkt. No. 55. (no document attached) (Dech, E.) (Entered: 10/18/2021) |
| 10/08/2021 | 58 | ORDER Approving the Pro Hac Vice Application of Basil Trent Webb, re 57 Request to Appear Pro Hac Vice. Signed by Judge Gonzalo P. Curiel on 10/7/2021.(rmc) (Entered: 10/08/2021) |
| 10/07/2021 | 57 | Request to Appear Pro Hac Vice ( Filing fee received: $ 213 receipt number ACASDC-16204807.) (Application to be reviewed by Clerk.) (Webb, Basil) (rmc). (Entered: 10/07/2021) |
| 10/07/2021 | 56 | Minute Entry: The Claim Construction Hearing on 5/11/2022 is vacated and reset for 5/13/2022 at 1:30 PM before Judge Gonzalo P. Curiel. (no document attached) (Dech, E.) (Entered: 10/07/2021) |
| 10/07/2021 | 55 | Case Management Order: Settlement Conference set for 3/15/2022 09:00 AM before Magistrate Judge Daniel E. Butcher. Claims Construction Hearing set for 5/11/2022 01:30 PM before Judge Gonzalo P. Curiel. Mandatory Settlement Conference set for 9/15/2022 01:30 PM before Magistrate Judge Daniel E. Butcher. Proposed Pretrial Order due by 3/3/2023. Final Pretrial Conference set for 3/10/2023 01:30 PM before Judge Gonzalo P. Curiel. Signed by Magistrate Judge Daniel E. Butcher on 10/7/21.(dlg) (Entered: 10/07/2021) |
| 10/06/2021 | 54 | Minute Entry for proceedings held before Magistrate Judge Daniel E. Butcher: The Early Neutral Evaluation Conference and Case Management Conference were held on 10/6/2021. (Plaintiff Attorneys Bruce Zisser and Amar L. Thakur). (Defendant Attorneys Robert H. Reckers, Ryan J. Williams, Fiona A. Bell, and Trent Webb). (no document attached) (Dech, E.) (Entered: 10/06/2021) |
| 09/29/2021 | 53 | REPORT of Rule 26(f) Planning Meeting. (Attachments: # 1 Exhibit A - Proposed Schedule)(Zisser, Bruce) (dlg). (Entered: 09/29/2021) |
| 07/23/2021 | 52 | Amended ANSWER to 1 Complaint, with Jury Demand by Cerner Corporation. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J)(Williams, Ryan) (zda). (Entered: 07/23/2021) |
| 07/23/2021 | 51 | NOTICE of Withdrawal of Cerner's First Amended Answer by Cerner Corporation re 50 Answer to Complaint, (Williams, Ryan) (zda). (Entered: 07/23/2021) |
| 07/22/2021 | 50 | ***DOCUMENT WITHDRAWN PER ECF 51 *** Amended ANSWER to 1 Complaint, with Jury Demand by Cerner Corporation. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J)(Williams, Ryan) QC email, incorrect filer, attorney should w/draw and refile (dlg). (Entered: 07/22/2021) |
| 07/22/2021 | 49 | Minute Entry for proceedings held before Magistrate Judge Daniel E. Butcher: Due to a conflict involving the Court's calendar, the Early Neutral Evaluation Conference and Case Management Conference on 8/25/2021 are vacated and reset for 10/6/2021 at 1:30 PM.The deadline to submit confidential briefs, file the Joint Discovery Plan, and provide the Court with contact information for all participants is 9/29/2021. (no document attached) (Dech, E.) (Entered: 07/22/2021) |

| 07/21/2021 | 48 | ORDER Granting Joint 47 Motion to Allow Cerner to File an Amended Answer Adding an Inequitable Conduct Affirmative Defense. Signed by Judge Gonzalo P. Curiel on 7/21/21. (All non-registered users served via U.S. Mail Service)(dlg) (Entered: 07/21/2021) |
| --- | --- | --- |
| 07/15/2021 | 47 | Joint MOTION to Amend/Correct 19 Answer to Complaint *to Allow Cerner to Add Inequitable Conduct Affirmative Defense* by Cerner Corporation. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Williams, Ryan) Modified on 7/15/2021 to send qc email for proposed order (dlg). (Entered: 07/15/2021) |
| 07/06/2021 | 46 | Minute Entry for proceedings held before Magistrate Judge Daniel E. Butcher: At the parties' request and with good cause appearing, the Early Neutral Evaluation Conference and Case Management Conference on 8/18/2021 are vacated and reset for 8/25/2021 at 1:30 PM.The deadline to submit confidential briefs, file the Joint Discovery Plan, and provide the Court with contact information for all participants is 8/18/2021. (no document attached) (Dech, E.) (Entered: 07/06/2021) |
| 06/24/2021 | 45 | NOTICE AND ORDER for Early Neutral Evaluation Conference and Case Management Conference. An Early Neutral Evaluation Conference will be held on August 18, 2021 at 1:30 p.m. Signed by Magistrate Judge Daniel E. Butcher on 6/24/2021.(All non-registered users served via U.S. Mail Service)(zda) (Entered: 06/24/2021) |
| 06/24/2021 | 44 | ORDER Granting 43 Motion Lifting Stay. Signed by Judge Gonzalo P. Curiel on 6/24/21. (dlg) (Entered: 06/24/2021) |
| 06/23/2021 | 43 | Joint MOTION to Lift Stay by CliniComp International, Inc.. (Zisser, Bruce) Modified on 6/24/2021 to send QC email re proposed order (dlg). (Entered: 06/23/2021) |
| 06/18/2021 | 42 | Minute Entry for proceedings held before Magistrate Judge Daniel E. Butcher: A Status Conference was held on 6/18/2021. (Plaintiff Attorneys Bruce Zisser, Amardeep Lal Thakur, and Shawn E. McDonald). (Defendant Attorneys Robert H. Reckers, Ryan J. Williams, and Fiona A. Bell). (no document attached) (Dech, E.) (Entered: 06/18/2021) |
| 06/11/2021 | 41 | NOTICE of Appearance *of Ryan J. Williams and Withdrawal of Brian P. Ziska* by Ryan Joseph Williams on behalf of Cerner Corporation (Williams, Ryan)Attorney Ryan Joseph Williams added to party Cerner Corporation(pty:dft) (dlg). (Entered: 06/11/2021) |
| 06/09/2021 | 40 | NOTICE of Appearance by Shawn E. McDonald on behalf of CliniComp International, Inc. (McDonald, Shawn)Attorney Shawn E. McDonald added to party CliniComp International, Inc.(pty:pla) (dlg). (Entered: 06/09/2021) |
| 06/03/2021 | 39 | Minute Entry for proceedings before Magistrate Judge Daniel E. Butcher: A telephonic Status Conference will be held on 6/18/2021 at 11:30 AM. Plaintiff's counsel must initiate the Conference by calling chambers with all counsel on the line. On or before 6/14/2021, the parties must lodge, by email to efile_butcher@casd.uscourts.gov, a Joint Status Report informing the Court of the status of the case, inclusive of the remaining claims and issues in the case, the discovery that has been conducted, and the parties' most recent settlement discussions. (no document attached) (Dech, E.) (Entered: 06/03/2021) |
| 06/01/2021 | 38 | NOTICE *(Joint) of Appeal Decision Affirming IPR and Request to Lift Stay* by CliniComp International, Inc. (Attachments: # 1 Exhibit A - Federal Circuit Mandate, # 2 Exhibit B - Federal Circuit Decision)(Zisser, Bruce) (dlg). (Entered: 06/01/2021) |
| 07/30/2020 | 37 | NOTICE *OF WITHDRAWAL OF VIOLA TREBICKA AND MILES D. FREEMAN AS COUNSEL OF RECORD* by CliniComp International, Inc. (Freeman, Miles) (dlg). (Entered: 07/30/2020) |
| 07/30/2020 | 36 | NOTICE OF WITHDRAWAL OF DOCUMENT by CliniComp International, Inc. re 35 MOTION to Withdraw as Attorney *(Viola Trebicka & Miles D. Freeman)* filed by CliniComp International, Inc. . (Freeman, Miles) (Entered: 07/30/2020) |
| 07/29/2020 | 35 | *** WITHDRAWN PER ECF 36 *** MOTION to Withdraw as Attorney *(Viola Trebicka & Miles D. Freeman)* by CliniComp International, Inc.. (Attachments: # 1 Declaration of Miles D. Freeman)(Freeman, Miles) Modified on 7/30/2020 to send QC email for attorney to withdraw and file as a Notice (dlg). Modified on 7/31/2020 (dlg). (Entered: 07/29/2020) |
| 05/27/2020 | 34 | ORDER OF TRANSFER. Magistrate Judge Barbara Lynn Major is no longer assigned. Case reassigned to Magistrate Judge Daniel E. Butcher for all further MJ proceedings. The new case number is 17CV2479-GPC-DEB. Signed by Magistrate Judge Barbara Lynn Major on 5/27/20.(dlg) (Entered: 05/27/2020) |
| 04/06/2020 | 33 | ORDER Re: Stay. Signed by Judge Gonzalo P. Curiel on 4/6/20.(dlg) (Entered: 04/06/2020) |
| 03/30/2020 | 32 | NOTICE *Parties' Joint Notice of Final Written Decision in IPR* by CliniComp International, Inc. (Zisser, Bruce) (Entered: 03/30/2020) |
| 03/07/2019 | 31 | ORDER STAYING LITIGATION PENDING THE COMPLETION OF INTER PARTES REVIEW. The parties shall inform the Court of the PTABs ruling within three (3) days. Signed by Judge Gonzalo P. Curiel on 3/7/2019.(sjm) (Entered: 03/07/2019) |
| 03/07/2019 | 30 | NOTICE *Of Institution Of Inter Partes Review* by Cerner Corporation (Attachments: # 1 Exhibit A, # 2 Proof of Service)(Reckers, Robert) (dlg). (Entered: 03/07/2019) |
| 10/30/2018 | 29 | ORDER Granting in Part Defendant's 24 Motion to Stay Pending Inter Partes Review. The hearing set for November 9, 2018 shall be vacated. Signed by Judge Gonzalo P. Curiel on 10/30/18. (dlg) (Entered: 10/30/2018) |

| | | |
|---|---|---|
| 10/19/2018 | 28 | REPLY to Response to Motion re 24 MOTION to Stay *Pending Inter Partes Review* filed by Cerner Corporation. (Reckers, Robert) (rmc). (Entered: 10/19/2018) |
| 10/05/2018 | 27 | RESPONSE in Opposition re 24 MOTION to Stay *Pending Inter Partes Review* filed by CliniComp International, Inc.. (Thakur, Amardeep) (dlg). (Entered: 10/05/2018) |
| 09/10/2018 | 26 | ORDER Vacating September 12, 2018 Early Neutral Evaluation Conference and Case Management Conference. Signed by Magistrate Judge Barbara Lynn Major on 9/10/18.(dlg) (Entered: 09/10/2018) |
| 09/10/2018 | 25 | ORDER Setting Briefing Schedule re 24 MOTION to Stay *Pending Inter Partes Review* : Any opposition shall be filed on or before October 5, 2018. Any reply shall be filed on or before October 19, 2018. A hearing is set on November 9, 2018 at 1:30 p.m. in Courtroom 2D. Signed by Judge Gonzalo P. Curiel on 9/10/18.(dlg) (Entered: 09/10/2018) |
| 09/07/2018 | 24 | MOTION to Stay *Pending Inter Partes Review* by Cerner Corporation. (Attachments: # 1 Memo of Points and Authorities, # 2 Appendix To Memorandum, # 3 Declaration, # 4 Exhibit To Declaration, # 5 Proof of Service) (Reckers, Robert) (dlg). (Entered: 09/07/2018) |
| 08/01/2018 | 23 | JOINT DISCOVERY PLAN by CliniComp International, Inc. (Zisser, Bruce) (rmc). (Entered: 08/01/2018) |
| 07/18/2018 | 22 | ORDER granting 21 unopposed ex parte application of Plaintiff CliniComp International, Inc. to continue Early Neutral Evaluation Conference. Early Neutral Evaluation continued to 9/12/2018 09:30 AM before Magistrate Judge Barbara Lynn Major. Signed by Judge Gonzalo P. Curiel on 7/18/2018. (jpp) (Entered: 07/18/2018) |
| 07/17/2018 | 21 | Ex Parte MOTION to Continue *Early Neutral Evaluation Conference* by CliniComp International, Inc.. (Zisser, Bruce) (jpp). (Entered: 07/17/2018) |
| 06/27/2018 | 20 | NOTICE AND ORDER for Early Neutral Evaluation Conference in a Patent Case. An Early Neutral Evaluation of your case will be held on August 8, 2018 at 9:30 A.M. in the chambers of the Honorable Barbara L. Major. Signed by Magistrate Judge Barbara Lynn Major on 6/27/18.(dlg) (Entered: 06/27/2018) |
| 06/25/2018 | 19 | ANSWER to 1 Complaint, with Jury Demand by Cerner Corporation.(Reckers, Robert) (dlg). (Entered: 06/25/2018) |
| 05/16/2018 | 18 | ORDER Granting Defendant's 8 Motion to Dismiss With Leave to Amend. Plaintiff shall file a first amended complaint on or before June 4, 2018. If Plaintiff does not file a first amended complaint, Defendant shall file an answer to the complaint on or before June 25, 2018. Signed by Judge Gonzalo P. Curiel on 5/16/18. (dlg) (jao). (Entered: 05/16/2018) |
| 04/04/2018 | 17 | Minute ORDER, re 8 MOTION to Dismiss - Submitted. Motion Hearing set for 4/6/18 - Vacated.(no document attached) (ksr) (Entered: 04/04/2018) |
| 03/09/2018 | 16 | REPLY to Response to Motion re 8 MOTION to Dismiss *Plaintiff's Claims for Willful and Indirect Infringement, Injunctive Relief, Enhanced Damages, and Exceptionality* filed by Cerner Corporation. (Reckers, Robert) (dlg). (Entered: 03/09/2018) |
| 02/23/2018 | 15 | RESPONSE in Opposition re 8 MOTION to Dismiss filed by CliniComp International, Inc.. (Thakur, Amardeep) (dlg). Modified on 3/16/2018 to send qc email for attorney to submit courtesy copies to Chambers. (dlg). (Entered: 02/23/2018) |
| 01/09/2018 | 14 | ORDER Approving the Pro Hac Vice Application of Fiona A. Bell, re 12 Request to Appear Pro Hac Vice. Signed by Judge Gonzalo P. Curiel on 1/8/2018.(kcm) (Entered: 01/09/2018) |
| 01/09/2018 | 13 | ORDER Approving the Pro Hac Vice Application of Robert H. Reckers, re 11 Request to Appear Pro Hac Vice. Signed by Judge Gonzalo P. Curiel on 1/8/2018.(kcm) (Entered: 01/09/2018) |
| 01/05/2018 | 12 | Request to Appear Pro Hac Vice ( Filing fee received: $ 206 receipt number 0974-10783386.) (Application to be reviewed by Clerk.) (Bell, Fiona) (kcm). (Entered: 01/05/2018) |
| 01/05/2018 | 11 | Request to Appear Pro Hac Vice ( Filing fee received: $ 206 receipt number 0974-10783329.) (Application to be reviewed by Clerk.) (Reckers, Robert) (kcm). (Entered: 01/05/2018) |
| 01/04/2018 | 10 | ORDER Setting Briefing Schedule re 8 MOTION to Dismiss : Any opposition shall be filed on or before February 23, 2018. Any reply shall be filed on or before March 9, 2018. A hearing is set on April 6, 2018 at 1:30 p.m. in Courtroom 2D. Signed by Judge Gonzalo P. Curiel on 1/4/18.(dlg) (jao). (Entered: 01/04/2018) |
| 01/02/2018 | 9 | Corporate Disclosure Statement by Cerner Corporation. No Corporate Parents/Interested Parties. (Attachments: # 1 Proof of Service)(Ziska, Brian) (dlg). (Entered: 01/02/2018) |
| 01/02/2018 | 8 | MOTION to Dismiss by Cerner Corporation. (Attachments: # 1 Memo of Points and Authorities, # 2 Declaration, # 3 Exhibit 1, # 4 Exhibit 2, # 5 Exhibit 3, # 6 Exhibit 4, # 7 Exhibit 5, # 8 Exhibit 6, # 9 Exhibit 7, # 10 Exhibit 8, # 11 Exhibit 9, # 12 Exhibit 10, # 13 Request for Judicial Notice, # 14 Proof of Service)(Ziska, Brian)(Attorney Brian Patrick Ziska added to party Cerner Corporation(pty:dft) (dlg). (Entered: 01/02/2018) |
| 12/27/2017 | 7 | NOTICE of Appearance *Miles D. Freeman* by Miles Davenport Freeman on behalf of CliniComp International, Inc. (Freeman, Miles)(Attorney Miles Davenport Freeman added to party CliniComp International, Inc.(pty:pla) (dlg). (Entered: 12/27/2017) |

| 12/26/2017 | 6 | NOTICE of Appearance *for Bruce R. Zisser* by Bruce R Zisser on behalf of CliniComp International, Inc. (Zisser, Bruce)Attorney Bruce R Zisser added to party CliniComp International, Inc.(pty:pla) (dlg). (Entered: 12/26/2017) |
|---|---|---|
| 12/26/2017 | 5 | SUMMONS Returned Executed by CliniComp International, Inc.. Cerner Corporation served. (Thakur, Amardeep) (dlg). (Entered: 12/26/2017) |
| 12/11/2017 | 4 | Corporate Disclosure Statement by CliniComp International, Inc.. No Corporate Parents/Interested Parties. (Thakur, Amardeep) (dlg). (Entered: 12/11/2017) |
| 12/11/2017 | 3 | Summons Issued.<br>**Counsel receiving this notice electronically should print this summons and serve it in accordance with Rule 4, Fed.R.Civ.P and LR 4.1.** (jrm) (Entered: 12/11/2017) |
| 12/11/2017 | 2 | REPORT on the filing or determination of an action regarding patent and/or trademark number(s) *US 6,665,647 Bl* cc:USPTO (jrm) (Entered: 12/11/2017) |
| 12/11/2017 | 1 | COMPLAINT with Jury Demand against Cerner Corporation ( Filing fee $ 400 receipt number 0974-10711240), filed by CliniComp International, Inc.. (Attachments: # 1 Civil Cover Sheet, # 2 Exhibit A - U.S. Patent 6,665,647)<br><br>The new case number is 3:17-cv-2479-GPC-BLM. Judge Gonzalo P. Curiel and Magistrate Judge Barbara Lynn Major are assigned to the case. (Thakur, Amardeep)(jrm) (sjt). (Entered: 12/11/2017) |

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

CLINICOMP INTERNATIONAL, INC.,

Plaintiff,

v.

CERNER CORPORATION,

Defendant.

Case No.:  17-cv-02479-GPC (DEB)

**CLAIM CONSTRUCTION ORDER**

In the present action, Plaintiff CliniComp International, Inc. ("CliniComp") asserts a claim of patent infringement against Defendant Cerner Corporation ("Cerner"), alleging infringement of U.S. Patent No. 6,665,647 ("the '647 Patent").  (Doc. No. 1, Compl.)  On February 14, 2022, the parties filed their joint claim construction hearing statement, chart, and worksheet pursuant to Patent Local Rule 4.2, identifying the disputed claim terms from the '647 Patent.  (Doc. No. 63.)  On March 28, 2022, the parties each filed their opening claim construction briefs.  (Doc. Nos. 70, 71.)  On April 11, 2022, the parties each filed their responsive claim construction briefs.  (Doc. Nos. 72, 73.)  On May 20, 2022, the parties filed an amended joint claim construction chart and worksheet.  (Doc. No. 79.)

The Court held a claim construction hearing on July 22, 2022.[1]  Amardeep Thakur, Bruce Zisser, and Shawn McDonald appeared for Plaintiff CliniComp.  Jared Bobrow and Benjamin Austin appeared for Defendant Cerner.  After considering the parties' briefing and the arguments present at the hearing, the Court issues the following claim construction order.

## I.    BACKGROUND

CliniComp is the owner of the '647 Patent by assignment.  (Doc. No. 1, Compl. ¶ 2.)  In the present action, CliniComp alleges that Cerner directly infringes one or more claims of the '647 Patent, including but not limited to independent claim 1, by making, using, selling, and/or offering to sell within the United States Cerner's hosting and monitoring services, including at least its Remote Hosting Option ("RHO"), its Enterprise Solution Hosting ("eHosting"), and its Enterprise Cloud Services.  (Doc. No. 1, Compl. ¶¶ 15-16.)

The '647 Patent is entitled "Enterprise Healthcare Management System and Method of Using Same."  U.S. Patent No. 6,665,647, at (54) (filed Dec. 16, 2003).  The Federal Circuit described the '647 Patent as follows:

> The '647 patent describes a healthcare management system for healthcare enterprises.  The purpose of the '647 patent is to allow healthcare enterprises to consolidate legacy software applications and new software applications together on one software platform.  Many healthcare enterprises utilize legacy systems for managing data related to a variety of uses, including patient care, accounting, insurance, and administrative functions.  These established systems are often outdated and too inflexible to support healthcare enterprises in the "modern managed care environment."  '647 patent at col. 1 ll. 58–62.  The healthcare management system described in the '647 patent allows healthcare enterprises to preserve existing legacy applications while simultaneously phasing in new or updated applications on the same system.
>
> The enterprise healthcare management system in the '647 patent allows enterprises to "remotely host[] . . . turnkey health care applications" and

---

[1]    Prior to the July 22, 2022 claim construction hearing, the Court provided the parties with a tentative claim construction order.

"provide[s] . . . enterprise users access to the turnkey applications via a public network." Id. at col. 2 ll. 61–65.  Enterprises can upgrade existing capabilities and add functionality not available in their current system without significant capital investments.  Because the applications are hosted on a public network (i.e., the internet), the healthcare enterprise only needs computing resources sufficient to allow secure, quality access to the internet.  The "turnkey" management system adjusts to changes within the enterprise as the system "easily and cost-effectively scales" to respond to an enterprise's needs. Id. at col. 3 ll. 19–23.

The information collected by the enterprise from its applications may be stored in a searchable database.  Specifically, the '647 patent discloses a clinical data repository that stores information from applications within the suite of applications on the system.  The clinical data repository stores "multidisciplinary information on a wide variety of enterprise functions." Id. at col. 6 ll. 31–40.  For example, the clinical data repository stores pharmaceutical, radiology, laboratory, and clinical information data utilized by other applications of the application suite.

The '647 patent discloses that "the clinical data repository is a database that is partitioned" and that "the database portion may be configured as either a logical partition or a physical partition." Id. at col. 9 ll. 60–64.  The healthcare management system is also capable of supporting multiple enterprises, in which case "the information related to each of the separate healthcare enterprises is stored in a separate partition of the database." Id. at col. 10 ll. 6–10.  As such, when multiple enterprises are involved with using the system, the clinical data repository may have multiple partitions, with each partition holding healthcare management information for the respective enterprise.

Among other things, the '647 patent describes the partitioning of data for multiple enterprises so as to allow the storing of "[the] first healthcare data in a first portion of the database associated with the first healthcare enterprise facility" and separately storing "[the] second healthcare data in a second portion of the database associated with the second healthcare enterprise facility." Id. at col. 14 ll. 24–29.  The system allows two (or more) independent healthcare enterprises to share access to certain applications while maintaining sole access to their respective unique healthcare applications.  The databases are effectively "partitioned" or "portioned" in this way.

Cerner Corp. v. Clinicomp Int'l, Inc., 852 F. App'x 532, 532–33 (Fed. Cir. 2021).

///

Independent claim 1 of the '647 Patent, the only independent claim asserted by CliniComp in this action,[2] recites:

> 1.  A method of operating an enterprise healthcare management system for a first healthcare enterprise facility and a second healthcare enterprise facility independent of the first healthcare enterprise facility, comprising:
>
> establishing a first secure communication channel via a public network between an application server and a first end user device in the first enterprise facility and establishing a second secure communication channel via the public network between the application server and a second end user device in the second enterprise facility, the application server remotely hosting a healthcare application and having a database;
>
> receiving first healthcare data from the first end user and second healthcare data from the second end user;
>
> processing the first healthcare data and the second healthcare data with the healthcare application;
>
> storing the processed first healthcare data in a first portion of the database associated with the first healthcare enterprise facility and storing the processed second healthcare data in a second portion of the database associated with the second healthcare enterprise facility;
>
> configuring the database to accept legacy information derived from a legacy application operating at each of the first and second healthcare enterprise facilities, wherein the functions in the healthcare application are not duplicative of the legacy application; and
>
> generating a query to extract information from the database relevant to a respective one of the first and second healthcare enterprise facilities derived from the healthcare data and the legacy information for managing and tracking a performance of the respective one of the first and second healthcare enterprise facilities,
>
> wherein healthcare data in the first portion of the database is only accessible to the first end user device and healthcare data in the second portion of the database is only accessible to the second end user device.

'647 Patent at col. 14 ll. 8-45.

On December 11, 2017, CliniComp filed a complaint for patent infringement against

---

[2]   (See Doc. No. 71-2, Ex. C at C-3.)

Defendant Cerner, alleging infringement of the '647 Patent.  (Doc. No. 1, Compl.)   On May 16, 2018, the Court granted Cerner's motion to dismiss Clinicomp's claims for willful infringement and indirect infringement as well as the relief sought in connection with these claims of injunctive relief, treble damages, and exceptionality damages.  (Doc. No. 18 at 21.)  On June 25, 2018, Cerner filed an answer to CliniComp's complaint.  (Doc. No. 19.)

On March 5, 2019, the Patent Trial and Appeal Board ("PTAB") instituted an *inter partes* review ("IPR") as to claims 1-25 and 50-55 of the '647 Patent.  (Doc. No. 30-1, Ex. A.)  On March 7, 2019, the Court granted a stay of the action pending completion of the IPR proceedings.  (Doc. No. 31.)  On March 26, 2020, the PTAB issued a final written decision, determining that claims 50-55 of the '647 Patent are not patentable in light of the prior art, but that claims 1-25 of the '647 Patent are patentable.[3]  (Doc. No. 32, Ex. A at 93-94.)  On April 20, 2021, the Federal Circuit affirmed the PTAB's determination that claims 1-25 of the '647 Patent are patentable.[4]  (Doc. No. 38-2, Ex. B at 10.)  On June 24, 2021, the Court granted the parties' joint motion to lift the stay of the action.  (Doc. No. 44.)

On July 23, 2021, Cerner filed an amended answer to CliniComp's complaint.  (Doc. No. 52.)  On October 7, 2021, the Court issued a scheduling order in the action.  (Doc. No. 55.)  By the present claim constructions briefs, charts, and worksheets, the parties request that the Court construe six disputed claim terms from the '647 Patent.  (Doc. Nos. 70, 71, 72, 73, 79.)

_____

[3]     Specifically, the PTAB concluded that Cerner had shown by a preponderance of the evidence that: (1) claims 50-52 are not patentable based on Evans; (2) claims 53 and 54 are not patentable based on Evans and Rai; (3) claims 50-53, and 55 are not patentable based on Johnson and Evans; and (4) claim 54 is not patentable based on Johnson, Evans, and Rai.  (Doc. No. 32, Ex. A at 93-94.)  The PTAB further concluded that Cerner had not shown by a preponderance of the evidence: (1) that claims 1-5, 10-13, and 15-25 are unpatentable based on Johnson and Evans; or (2) that claims 6-9, and 14 are unpatentable based on Johnson, Evans, and Rai.  (Id. at 93.)

[4]     On November 15, 2021, the PTO issued an *inter partes* review certificate for the '647 Patent, stating: "Claims 1-25 are found patentable" and "Claims 50-55 are cancelled."  (Doc. No. 71-2, Ex. A at A-20-21.)

# II.    DISCUSSION

## A.    Legal Standards for Claim Construction

Claim construction is an issue of law for the court to decide.  Teva Pharm. USA, Inc. v. Sandoz, Inc., 135 S. Ct. 831, 838 (2015); Markman v. Westview Instr., Inc., 517 U.S. 370, 372 (1996).  Although claim construction is ultimately a question of law, "subsidiary factfinding is sometimes necessary."  Teva, 135 S. Ct. at 838.

"The purpose of claim construction is to 'determin[e] the meaning and scope of the patent claims asserted to be infringed.'"  O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., 521 F.3d 1351, 1360 (Fed. Cir. 2008).  "It is a 'bedrock principle' of patent law that the 'claims of a patent define the invention to which the patentee is entitled the right to exclude.'"  Phillips v. AWH Corp., 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc).

Claim terms "'are generally given their ordinary and customary meaning[,]'" which "is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention."  Id. at 1312–13.  "In some cases, the ordinary meaning of claim language as understood by a [POSITA] may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words."  Id. at 1314.  "However, in many cases, the meaning of a claim term as understood by persons of skill in the art is not readily apparent."  O2 Micro, 521 F.3d at 1360.  If the meaning of the term is not readily apparent, the court must look to "those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean," including intrinsic and extrinsic evidence.  See Phillips, 415 F.3d at 1314.  A court should begin with the intrinsic record, which consists of the language of the claims, the patent specification, and, if in evidence, the prosecution history of the asserted patent.  Id.; see also Vederi, LLC v. Google, Inc., 744 F.3d 1376, 1382 (Fed. Cir. 2014) ("In construing claims, this court relies primarily on the claim language, the specification, and the prosecution history.").

In determining the proper construction of a claim, a court should first look to the language of the claims.  See Vitronics, 90 F.3d at 1582; see also Comark Commc'ns v.

Harris Corp., 156 F.3d 1182, 1186 (Fed. Cir. 1998) ("The appropriate starting point . . . is always with the language of the asserted claim itself.").  The context in which a disputed term is used in the asserted claims may provide substantial guidance as to the meaning of the term.  See Phillips, 415 F.3d at 1314.  In addition, the context in which the disputed term is used in other claims, both asserted and unasserted, may provide guidance because "the usage of a term in one claim can often illuminate the meaning of the same term in other claims."  Id.  Furthermore, a disputed term should be construed "consistently with its appearance in other places in the same claim or in other claims of the same patent."  Rexnord Corp. v. Laitram Corp., 274 F.3d 1336, 1342 (Fed. Cir. 2001); accord Microprocessor Enhancement Corp. v. Texas Instruments Inc., 520 F.3d 1367, 1375 (Fed. Cir. 2008); see also Paragon Sols., LLC v. Timex Corp., 566 F.3d 1075, 1087 (Fed. Cir. 2009) ("We apply a presumption that the same terms appearing in different portions of the claims should be given the same meaning." (internal quotation marks omitted)).  Moreover, "'[a] claim construction that gives meaning to all the terms of the claim is preferred over one that does not do so.'"  Vederi, 744 F.3d 1383.

A court must also read claims "in view of the specification, of which they are a part." Markman, 52 F.3d at 979; see 35 U.S.C. § 112(b) ("The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the inventor or a joint inventor regards as the invention.").  "'Apart from the claim language itself, the specification is the single best guide to the meaning of a claim term.'" Vederi, 744 F.3d at 1382.  For example, "a claim construction that excludes [a] preferred embodiment [described in the specification] 'is rarely, if ever, correct and would require highly persuasive evidentiary support.'"  Adams Respiratory Therapeutics, Inc. v. Perrigo Co., 616 F.3d 1283, 1290 (Fed. Cir. 2010).

But "[t]he written description part of the specification does not delimit the right to exclude.  That is the function and purpose of claims."  Markman v. Westview Instruments, Inc., 52 F.3d 967, 980 (Fed. Cir. 1995) (en banc).  Therefore, "it is improper to read limitations from a preferred embodiment described in the specification—even if it is the

only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited." Dealertrack, Inc. v. Huber, 674 F.3d 1315, 1327 (Fed. Cir. 2012); see also Kara Tech. Inc. v. Stamps.com Inc., 582 F.3d 1341, 1348 (Fed. Cir. 2009) ("The patentee is entitled to the full scope of his claims, and we will not limit him to his preferred embodiment or import a limitation from the specification into the claims.").

In addition to the claim language and the specification, the patent's prosecution history may be considered if it is in evidence. Phillips, 415 F.3d at 1317. The prosecution history "consists of the complete record of the proceedings before the PTO and includes the prior art cited during the examination of the patent." Id. "Like the specification, the prosecution history provides evidence of how the PTO and the inventor understood the patent." Id. "Yet because the prosecution history represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes." Id.

In most situations, analysis of the intrinsic evidence will resolve claim construction disputes. See Vitronics, 90 F.3d at 1583; Teva, 135 S. Ct. at 841. However, "[w]here the intrinsic record is ambiguous, and when necessary," district courts may "rely on extrinsic evidence, which 'consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises.'" Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc., 711 F.3d 1348, 1360 (Fed. Cir. 2013) (quoting Phillips, 415 F.3d at 1317). A court must evaluate all extrinsic evidence in light of the intrinsic evidence. Phillips, 415 F.3d at 1319. "Extrinsic evidence may not be used 'to contradict claim meaning that is unambiguous in light of the intrinsic evidence.'" Summit 6, LLC v. Samsung Elecs. Co., 802 F.3d 1283, 1290 (Fed. Cir. 2015); see also Bell Atl. Network Servs., Inc. v. Covad Commc'ns Grp., Inc., 262 F.3d 1258, 1269 (Fed. Cir. 2001) ("[E]xtrinsic evidence . . . may not be used to vary, contradict, expand, or limit the claim language from how it is defined, even by implication, in the specification or file

history."); <u>Vederi</u>, 744 F.3d at 1382 ("[E]xtrinsic evidence may be less reliable than the intrinsic evidence.").  In cases where subsidiary facts contained in the extrinsic evidence "are in dispute, courts will need to make subsidiary factual findings about that extrinsic evidence." <u>Teva</u>, 135 S. Ct. at 841.

"[D]istrict courts are not (and should not be) required to construe every limitation present in a patent's asserted claims." <u>O2 Micro</u>, 521 F.3d at 1362.  In certain situations, it is appropriate for a court to determine that a claim term needs no construction and its plain and ordinary meaning applies.  <u>See id.</u>; <u>Phillips</u>, 415 F.3d at 1314.  But "[a] determination that a claim term 'needs no construction' or has the 'plain and ordinary meaning' may be inadequate when a term has more than one 'ordinary' meaning or when reliance on a term's 'ordinary' meaning does not resolve the parties' dispute." <u>O2 Micro</u>, 521 F.3d at 1361.  If the parties dispute the scope of a certain claim term, it is the court's duty to resolve the dispute.  <u>Id.</u> at 1362; <u>accord</u> <u>Eon Corp. IP Holdings v. Silver Spring Networks</u>, 815 F.3d 1314, 1318 (Fed. Cir. 2016).

## B.   Disputed Claim Terms[5]

///

---

[5]   As an initial matter, the Court notes that the '647 Patent was involved in another district court action, <u>CliniComp International, Inc. v. athenahealth, Inc.</u>, 1:18-cv-00425-LY (W.D. Tex. 2018).  At times in its claim construction briefing, CliniComp attempts to rely on rulings from the <u>CliniComp. v. athenahealth</u> case to support its claim construction positions in this case.  (<u>See, e.g.</u>, Doc. No. 70 at 1, 11 n.9, 17, 23 n.15; Doc. No. 72 at 9.)  The Court does not find CliniComp's reliance on <u>CliniComp. v. athenahealth</u> persuasive.  Cerner, the defendant in this action, was not a party to that action.  In the <u>CliniComp. v. athenahealth</u> case, the parties entered into a stipulation that all of the disputed claim terms would be given their plain and ordinary meaning.  (Doc. No. 70-2, Ex. A.)  There is no similar stipulation in this case.  And no formal separate claim construction order was ever entered in the <u>CliniComp. v. athenahealth</u> case.

In addition, "a fresh look at a claim construction can hone a prior court's understanding and construction of a patent." <u>Rambus Inc. v. Hynix Semiconductor Inc.</u>, 569 F. Supp. 2d 946, 966 (N.D. Cal. 2008).  "[A]dditional litigation can refine and sharpen the courts' understanding of an invention and . . . a second court should not defer to a prior court's claim construction without questioning its accuracy." <u>Id.</u>; <u>see also</u> <u>Kinetic Concepts, Inc. v. Wake Forest Univ. Health Scis.</u>, No. SA-11-CV-163-XR, 2013 WL 6164592, at *3 (W.D. Tex. Nov. 25, 2013) ("Stare decisis does not preclude this court from an independent analysis of claims that have been construed in other district courts.").

1            1.     "[first/second] portion of the database associated with the [first/second]

2               healthcare enterprise facility"

3       Plaintiff CliniComp argues that the term "[first/second] portion of the database

4 associated with the [first/second] healthcare enterprise facility" should be given its plain

5 and ordinary meaning, with the caveat that the claimed "portion" is not created by merely

6 identifying data or associating subsets of data with common values (i.e., indexing by an

7 identifier), and these portions are created to protect one healthcare enterprise facility's data

8 from access by the other healthcare enterprise facility.  (Doc. No. 79-1 at A2.)  Defendant

9 Cerner proposes that this term be construed as "a specific data structure in the database that

10 separates the data associated with the [first/second] healthcare enterprise facility from data

11 associated with any other healthcare enterprise facility, wherein the claimed [first/second]

12 'portion' is not created by merely identifying data or associating subsets of data with

13 common values (i.e., indexing by an identifier), and the [first/second] portion is created in

14 the database before the claimed 'storing' of 'data' occurs, is a separately-managed and

15 distinct compartment created for the purpose of separating data, and restricts access to data

16 therein to protect data associated with the [first/second] healthcare enterprise facility from

17 access by any other healthcare enterprise facility."  (Doc. No. 79-1 at A2-A3.)

18       Here, the parties dispute with respect to this claim term is multi-part.  As an initial

19 matter, the parties appear to agree that the claimed "portion" is not created by merely

20 identifying data or associating subsets of data with common values (i.e., indexing by an

21 identifier), and these portions are created to protect one healthcare enterprise facility's data

22 from access by the other healthcare enterprise facility.  (See Doc. No. 79-1 at A2-A3; Doc.

23 No. 73 at 2.)  Nevertheless, the parties dispute whether the claimed "portion" is a specific

24 data structure in the database that separates the data associated with the [first/second]

25 healthcare enterprise facility from data associated with any other healthcare enterprise

26 facility.  Additionally, the parties dispute whether the claimed "portion" is created in the

27 database before the claimed "storing" of "data" occurs, and whether the claimed "portion"

28 is a separately-managed and distinct compartment created for the purpose of separating

data.  The Court evaluates each of these disputes in turn below.

The Court begins with the first portion of Cerner's proposed construction: that the claimed "portion" is a specific data structure in the database that separates the data associated with the [first/second] healthcare enterprise facility from data associated with any other healthcare enterprise facility.  To support this specific construction, Cerner does not rely on the claim language or the specification of the '647 Patent.  (See Doc. No. 71 at 5-12; Doc. No. 73 at 1-2.)  Instead, Cerner relies on statements made by CliniComp during the IPR proceedings for the '647 Patent.  (See id.)  Cerner contends that these statements constitute prosecution disclaimers by CliniComp.  (See id.)

"Prosecution disclaimer 'preclud[es] patentees from recapturing through claim interpretation specific meanings disclaimed during prosecution.'"  Aylus Networks, Inc. v. Apple Inc., 856 F.3d 1353, 1359 (Fed. Cir. 2017) (quoting Omega Eng'g, Inc, v. Raytek Corp., 334 F.3d 1314, 1323 (Fed. Cir. 2003)).  "[T]he doctrine of prosecution disclaimer ensures that claims are not 'construed one way in order to obtain their allowance and in a different way against accused infringers.'"  Id. at 1360 (quoting Southwall Techs., Inc. v. Cardinal IG Co., 54 F.3d 1570, 1576 (Fed. Cir. 1995)).

"Such disclaimer can occur through amendment or argument."  Aylus, 856 F.3d at 1359.  But "[f]or a statement during prosecution to qualify as a disavowal of claim scope, it must be 'so clear as to show reasonable clarity and deliberateness,' and 'so unmistakable as to be unambiguous evidence of disclaimer.'"  Genuine Enabling Tech. LLC v. Nintendo Co., 29 F.4th 1365, 1374 (Fed. Cir. 2022); see also Aylus, 856 F.3d at 1361 ("[T]o invoke the doctrine of prosecution disclaimer, any such statements must 'be both clear and unmistakable.'"); Computer Docking Station Corp. v. Dell, Inc., 519 F.3d 1366, 1375 (Fed. Cir. 2008) ("Prosecution disclaimer does not apply to an ambiguous disavowal.").  "Thus, when the patentee unequivocally and unambiguously disavows a certain meaning to obtain a patent, the doctrine of prosecution history disclaimer narrows the meaning of the claim consistent with the scope of the claim surrendered."  Biogen Idec, Inc. v. GlaxoSmithKline LLC, 713 F.3d 1090, 1095 (Fed. Cir. 2013).  "A patentee could do so, for example, by

clearly characterizing the invention in a way to try to overcome rejections based on prior art." Computer Docking Station, 519 F.3d at 1374.

"[S]tatements made by a patent owner during an IPR proceeding can be considered during claim construction and relied upon to support a finding of prosecution disclaimer." Aylus, 856 F.3d at 1361. "'The party seeking to invoke prosecution history disclaimer bears the burden of proving the existence of a clear and unmistakable disclaimer that would have been evident to one skilled in the art.'" Genuine Enabling Tech., 29 F.4th at 1374.

To support its prosecution disclaimer argument, Cerner relies on several statements made by CliniComp during the IPR proceedings. During oral arguments before the PTAB, CliniComp argued with respect to claim 1 of the '647 Patent: "I think we explained that the patent language requires first portion to be created through partitioning. It's throughout the figures. Throughout the specification." (Doc. No. 71-2, Ex. E at E-21; see also id. at E-9 ("partitioning is what's required by the patent").) CliniComp explained: "The purpose of portioning is to partition." (Id. at E-7.) CliniComp further explained with respect to the claim term "portion:"

> So Step 1 is, you go into the database, you partition it so it is associated with an enterprise. And that's what the claim term says "associated".
>
> Once that partition is done, and it's associated with that particular enterprise, only then do you . . . store that data in the portion of the database.
>
> So this partition is an essential element of how it's done to create these portions, and these portions do not have – are not overlapping. And that's why it's done for security purposes.

(Id.; see also id. at E-18 ("The claim is designed for you to have separate health care enterprise data that is created upon a specific partition for a database that they store together."); Ex. K at K8-9.) CliniComp made these arguments to the PTAB in an effort to distinguish claim 1 of the '647 Patent from the Johnson prior art reference. (See Doc. No. 71-2, Ex. E at E-7-23.)

The Court agrees with Cerner that the above statements constitute a clear and unmistakable disclaimer by CliniComp that the claimed "portion[s]" are created through

partitioning.[6]  See MBO Lab'ys, Inc. v. Becton, Dickinson & Co., 474 F.3d 1323, 1330 (Fed. Cir. 2007) ("Prosecution arguments like this one which draw distinctions between the patented invention and the prior art are useful for determining whether the patentee intended to surrender territory, since they indicate in the inventor's own words what the invention is not."); Uship Intell. Properties, LLC v. United States, 714 F.3d 1311, 1315 (Fed. Cir. 2013) ("[A]n applicant's statements to the PTO characterizing its invention may give rise to a prosecution disclaimer."); see also X2Y Attenuators, LLC v. Int'l Trade Comm'n, 757 F.3d 1358, 1362 (Fed. Cir. 2014) ("[L]abeling an embodiment or an element as 'essential' may rise to the level of disavowal.").  Thus, a claim construction reflecting CliniComp's disclaimer as proposed by Cerner is appropriate here.[7]

Cerner further argues that because the word "partition" is a technical term, the Court

---

[6]      Indeed, in its opening claim construction brief, CliniComp explains that a "material benefit of the invention is the partitioning of data in a secure manner to ensure compliance with relevant privacy statutes such as HIPAA."  (Doc. No. 70 at 3.)

[7]      In addition, the Court notes that a construction reflecting CliniComp's disclaimer that the claimed "portion" is created through partitioning is also consistent with the specification of the '647 patent.  The specification of the '647 patent uses the terms "partition" and "portion" interchangeably.  See, e.g., '647 Patent at col. 9 ll. 60–64 ("The clinical data repository is a database that is partitioned to provide a database partition for an individual enterprise as shown in block 211.  The database portion may be configured as either a logical partition or a physical partition, although a logical partition is preferred.").  (See also Doc. No. 71-2, Ex. K at K8-9.)

Indeed, the Federal Circuit noted this in its decision in the IPR proceedings.  The Federal Circuit explained:

If the words of the '647 patent are taken in their plain meaning, the '647 patent makes clear that portions of the database are understood as either: (1) logical partitions; or (2) physical partitions.  The specification describing the database portion supports the Board's understanding that "portions" of the database described in the '647 patent take form as "partitions" and the terms (i.e., "partition" and "portion") are interchangeable in the context of the '647 patent.  '647 patent at col. 9 ll. 60–64.  The Board did not err in determining that a portion is a logical or physical separation of data.

Cerner, 852 F. App'x at 535; see also id. at 533 ("The databases are effectively 'partitioned' or 'portioned' in this way.").  As such, a construction reflecting CliniComp's disclaimer that the claimed "portion" is a partition is also consistent with the Federal Circuit's understanding of the '647 patent.

13

should adopt the PTAB's explanation of that term to aid the jury's understanding of the word "partition." (Doc. No. 71 at 9.)  In its decision during the IPR proceedings, the PTAB explained: "a person of ordinary skill in the art would understand 'partitions,' or the portions of data referenced in the claims, are a specific arrangement of data structures." (Doc. No. 71-2, Ex. D at D85-86.)   The Court agrees with Cerner that the PTAB's explanation of the term "partition" would be helpful to the jury.[8]  As such, the Court will include the PTAB's explanation of the term "partition" in the Court's construction for this claim term.

CliniComp submits that if the Court incorporates the PTAB's explanation into the construction for this claim term, then the Court should modify Cerner's proposed construction.  CliniComp notes that Cerner's proposed construction refers to the claimed partition as being a specific data structure, but the precise language used by the PTAB described partitions as being "a specific arrangement of data structures."  The Court agrees with CliniComp.  The PTAB's order states that "'partitions' . . . are a specific arrangement of data structures."  (Doc. No. 71-2, Ex. D at D86; see also id. Ex. K at K6-9.)  Therefore, the Court will modify Cerner's proposed construction to include the phrase "a specific arrangement of data structures."

CliniComp concedes that it made certain disclaimers during the IPR proceedings, but argues that the disclaimers it made were not as broad as Cerner contends.  (Doc. No. 70 at 7; Doc. No. 72 at 2-4 (citing Cordis Corp. v. Medtronic Ave, Inc., 511 F.3d 1157, 1177 (Fed. Cir. 2008) ("[E]ven in the case of an unequivocal disavowal of claim scope, the court must construe the claim 'congruent with the scope of the surrender.'")).)  CliniComp argues that the only claim scope it disclaimed during the IPR proceedings was that

---

[8]      CliniComp argues that this clarification is unnecessary because the claims use the word "portion" and not "partition." (Doc. No. 72 at 2.)  The Court rejects this argument.  Even though the claims use the word "portion," CliniComp made multiple clear and unmistakeable disavowals to the PTAB explaining that the claimed "portion" is created through partitioning.  Thus, a claim construction reflecting those disclaimers is necessary, and a construction aiding the jury in the meaning of the word "partition" is preferred.

1    "indexing alone is insufficient to create the claimed database portions," as that was all that

2    was needed to distinguish the claimed invention from the prior art before the PTAB.  (Doc.

3    No. 72 at 2; <u>see</u> Doc. No. 71-2 Ex. D at D-85-86.)   The Court rejects CliniComp's

4    argument.  Even assuming CliniComp is correct, and a disclaimer of indexing alone as the

5    mechanism for creating the claimed database portions was sufficient to distinguish the

6    claimed invention from the prior art at issue, CliniComp did not focus its arguments to the

7    PTAB solely on indexing.  Rather, CliniComp also repeatedly and clearly stated that the

8    claimed "portion" is created through partitioning.[9]  (Doc. No. 71-2 at E-7, E-9, E-18, E-

9    21.)  Those statements regarding partitioning might not have been necessary to distinguish

10   the claimed invention from the prior art.  Nevertheless, they were clear and unmistakable

11   and constitute prosecution disclaimers.  <u>See</u> <u>Tech. Props. Ltd. LLC v. Huawei Techs. Co.</u>,

12   849 F.3d 1349, 1358 (Fed. Cir. 2017) ("The patentee's disclaimer may not have been

13   necessary, but its statements made to overcome Magar were clear and unmistakable.");

14   <u>Data Engine Techs. LLC v. Google LLC</u>, 10 F.4th 1375, 1383 (Fed. Cir. 2021) ("[W]e

15   have held patentees to distinguishing statements made during prosecution even if they said

16   more than needed to overcome a prior art rejection.").

17        Turning to the next portion of Cerner's proposed construction, Cerner contends that

18   the Court's construction of this claim term should explain that the claimed "portion" is

19   created in the database before the claimed "storing" of "data" occurs.  To support this

20   portion of its construction, Cerner also relies on statements made by CliniComp during the

21   IPR proceedings.  (Doc. No. 71 at 6; Doc. No. 73 at 2-3.)  During the IPR proceedings, in

22   an effort to distinguish claim 1 from the prior art at issue, CliniComp stated: "Once that

23   partition is done, and it's associated with that particular enterprise, only then do you . . .

24   store that data in that portion of the database."  (Doc. No. 70-2 at E-7.)  CliniComp further

25

26   _____

27   [9]      Indeed, in its decision, the Federal Circuit recognized that CliniComp had made this concession.
     <u>See</u> <u>Cerner</u>, 852 F. App'x at 535 ("[T]he parties and the Board proceeded on the assumption that the terms

28   "partition" as used in the specification and the term 'portion' as used in the claim were interchangeable
     and that they had a common ordinary meaning to one of skill in the art.").

stated in regards to claim 1: "You have to create that compartment for a particular service provider before you can put the data in, before you can do that search." (Id. at E-12.)  In addition, CliniComp distinguished the prior art reference Johnson from claim 1 on the grounds that "[t]here's no partitioning, and there's no identification – association with a particular service provider before the data is stored.  That's not what happens in Johnson." (Id. at E-10.)  The Court agrees with Cerner that these statements are sufficient to constitute a clear and unmistakable disclaimer that the claimed "portion," or partition, of the database must be created and associated with the enterprise prior to storing data in that portion of the database.  See MBO Lab'ys, 474 F.3d at 1330; Uship, 714 F.3d at 1315.  As such, the Court will adopt this part of Cerner's proposed construction for this claim term.

Turning to the next portion of Cerner's proposed construction, Cerner requests that the Court's construction of this claim term should explain that the claimed "portion" is a separately-managed and distinct compartment created for the purpose of separating data. To support this portion of its construction, Cerner relies on additional statements made by CliniComp during the IPR proceedings.  (Doc. No. 73 at 3.)  During the IPR proceedings, CliniComp argued:

> I think . . . the patent owner's expert, Dr. Bergeron, does, I think, a really nice job of explaining what partitions are, and what is expected with a partition.  I think – I have a software engineering degree, so I always think of logical databases as being separate and distinct.  That's the term I was – I grew up learning.
>
> And any – does even a better job of saying, you know, that's what it means separate and distinct and having your own management.

(Doc. No. 70-2 at E-17.)  CliniComp made these statements in an effort to distinguish claim 1 of the '647 Patent from the Johnson prior art reference.  (See id. at E-13-17.)  The Court agrees with Cerner that the above statements constitute a clear and unmistakable disclaimer regarding the meaning of the word "partition."  Nevertheless, it is unclear to the Court why this additional clarification is needed.  The first part of Cerner's proposed construction, which the Court will adopt, already includes the meaning of the word "partition" as defined by the PTAB.  Claim construction "is not an obligatory exercise in redundancy."  U.S.

1    Surgical Corp. v. Ethicon, Inc., 103 F.3d 1554, 1568 (Fed. Cir. 1997).  As such, the Court

2    declines to adopt this part of Cerner's proposed construction.

3        CliniComp criticizes Cerner's proposed construction on the grounds that it appears

4    to potentially require that there be three different "healthcare enterprise facilities" when

5    the preamble of claim 1 makes clear that the claim only requires a minimum of two.  (Doc.

6    No. 70 at 6; Doc. No. 72 at 2-3.)   To the extent Cerner's proposed construction is

7    ambiguous as to the required number of "healthcare enterprise facilities," any such

8    ambiguity is easily resolved by adopting the modifications proposed by Cerner in its

9    responsive claim construction brief and its amended claim construction chart.  (See Doc.

10    No. 73 at 2 n.1; Doc. No. 79-1 at A2-A3.)

11        Finally, CliniComp argues that if the Court adopts Cerner's proposed construction

12    for this claim term, the Court should modify Cerner's proposal to state that the

13    portion/partition is "of the database," not "in the database."   The Court agrees with

14    CliniComp.  The claim language uses the phrase "of the database."  '647 Patent at col. 14

15    ll. 26, 28.  And during the IPR proceedings, CliniComp used the phrase "of the database"

16    to describe the portions/partitions.  (See, e.g., Doc. No. 71-2 Ex. E at E5, E11, E13, E14,

17    E21, E22.)  As such, the Court will modify Cerner's proposed construction to include

18    phrase "of the database."

19        In sum, the Court adopts a slightly modified version of Cerner's proposed

20    construction for this claim term.  The Court construes the term "[first/second] portion of

21    the database associated with the [first/second] healthcare enterprise facility" as "a specific

22    arrangement of data structures of the database that separates the data associated with the

23    [first/second] healthcare enterprise facility from data associated with any other healthcare

24    enterprise facility, wherein the claimed [first/second] 'portion' is not created by merely

25    identifying data or associating subsets of data with common values (i.e., indexing by an

26    identifier), and the [first/second] portion of the database is created before the claimed

27    'storing' of 'data' occurs, and restricts access to data therein to protect data associated with

28    the [first/second] healthcare enterprise facility from access by any other healthcare

1   enterprise facility."

2         2.   "configuring the database to accept legacy information derived from a legacy

3               application"

4         Plaintiff CliniComp argues that the term "configuring the database to accept legacy

5   information derived from a legacy application" should be given its plain and ordinary

6   meaning, and, thus, no construction is necessary for this claim term.  (Doc. No. 70 at 8;

7   Doc. No. 79-1 at A5-A6.)  Defendant Cerner proposes that this claim term be construed as

8   "configuring the database to accept legacy information that has not been converted to

9   match the capabilities of the database."  (Doc. No. 71 at 12; Doc. No. 79-1 at A5-A6.)

10  Here, the parties dispute whether the Court's construction for this claim term should require

11  that the database be able to accept legacy information that has not been converted to match

12  the capabilities of the database.

13        The Court begins its analysis of the parties' dispute by reviewing the claim language.

14  Independent claim 1 of the '647 Patent recites: "configuring the database to accept legacy

15  information derived from a legacy application."  '647 Patent at col. 14 ll. 31-32.  Here, a

16  review of the claim language does not resolve the parties' dispute.  The claim language

17  states that the database is configured to accept legacy information from the legacy

18  application.  But the claim language does not expressly state whether the database must be

19  configured to accept unconverted legacy information.  As such, the Court turns to the '647

20  Patent's specification.

21        To support its position, CliniComp cites to a passage in the specification explaining

22  that the legacy application can "transmit raw or processed information" to the application

23  server for storage.  (Doc. No. 70 at 9.)  See '647 Patent at col. 13 ll. 12-19 ("[T]he installer

24  will enable the legacy application to transmit raw or processed information to the

25  application server so that this information can be collected and retain[ed] for future report

26  processing as shown in block 358.  The database on the application server is configured to

27  accept the information as transmitted from the legacy application as shown in block 359.").

28  This passage actually cuts against CliniComp's claim construction position.  Here, the

specification states that the legacy application can transmit processed information to the server, which will then be accepted by the database.  But it also states that the legacy application can transmit raw information, which will then be accepted by the database.  Thus, to include this embodiment described in the specification within the scope of the claims, claim 1 needs to be interpreted such that the database is configured to accept raw (i.e., unprocessed) information from the legacy application.[10]   A construction to the contrary would improperly exclude a preferred embodiment from the scope of the claims.  See Kaufman v. Microsoft Corp., 34 F.4th 1360, 1372 (Fed. Cir. 2022) ("'A claim construction that excludes a preferred embodiment is rarely, if ever correct and would require highly persuasive evidentiary support.'").  As such, the specification supports Cerner's proposed construction, and it does not support CliniComp's position.

In addition, the prosecution history supports Cerner's proposed construction.  During the IPR proceedings, CliniComp argued that the prior art reference Evans did not disclose or teach the "configuring a database" limitation.[11]   (Doc. No. 71-2, Ex. I at I-3-4.) CliniComp stated:

> Even if such "legacy information" was disclosed in Evans, Evans does not disclose configuring a database to accept such information. . . .  Evans does not teach "configuring **the database** to accept legacy information"

---

[10]   CliniComp appears to misunderstand Cerner's proposed construction.  CliniComp asserts that Cerner's proposed construction is improper because the specification does not require that the legacy information be unconverted.  (Doc. No. 70 at 9.)  But Cerner's proposed construction does not include this requirement.  Cerner's proposed construction does not require that the legacy information must be unconverted.  Rather, Cerner's proposed construction merely requires that the database be configured to accept unconverted legacy information if it is in that form.  Under Cerner's proposed construction, it is permissible for the database to accept processed legacy information as long as it is also capable of accepting raw (or unprocessed) legacy information.

[11]   CliniComp states that Cerner failed to specifically identify these passages from CliniComp's Preliminary Response in Cerner's claim construction disclosures as required by Patent Local Rule 4.2(b). (Doc. No. 70 at 10; Doc. No. 72 at 5.)  Nevertheless, CliniComp does not request that the Court strike Cerner's reliance on these passages from the Preliminary Response.  (See id.)  Further, even if the Court did not consider these passages from the Preliminary Response, Cerner's proposed construction is still supported by the statements in the specification explaining that the database is able to accept raw information from the legacy application.

(Emphasis added.).  Instead, Evans teaches that the *data* must be converted to match the capabilities of the database, not, as required by the claims, that the *database* be configured to accept the legacy data.  . . .

Thus, according to Petitioner's analysis, Data Manager 202 within Patient Data Repository 102 [from Evans], which Petitioner characterizes as the claimed database recited in the claims, is never configured to accept legacy data because it only accepts data that has already be [sic] converted into "the proper format."

(Id. (emphasis in original).)

Here, CliniComp unambiguously states that Evans does not satisfy the "configuring a database" limitation because the claimed database in Evans only accepts data that has already been converted into the proper format.  This is sufficient to constitute a clear and unmistakable disclaimer of any claim interpretation that would permit the "configuring a database" limitation to be satisfied by a database that is only able to accept data that has already been converted into the proper format.  See MBO Lab'ys, 474 F.3d at 1330 ("Prosecution arguments like this one which draw distinctions between the patented invention and the prior art are useful for determining whether the patentee intended to surrender territory, since they indicate in the inventor's own words what the invention is not."); Uship, 714 F.3d at 1315 ("[A]n applicant's statements to the PTO characterizing its invention may give rise to a prosecution disclaimer.").  As such, Cerner's proposed construction is also supported by the disclaimer in the prosecution history.

Nevertheless, the Court agrees with CliniComp's contention that a construction for this claim term explaining that the database is configured so that it can accept both raw or processed information is preferable over Cerner's proposed construction.  A construction for this claim term containing the words "raw" and "processed information" utilizes the precise language contained in the specification describing the "configuring" step.  '647 Patent at col. 13 ll. 14.  As such, the Court construes the term "configuring the database to accept legacy information derived from a legacy application" as "configuring the database to accept both raw and processed legacy information."

///

3.   "wherein the functions in the healthcare application are not duplicative of the legacy application"

Plaintiff CliniComp argues that the term "wherein the functions in the healthcare application are not duplicative of the legacy application" should be given its plain and ordinary meaning, and, thus, no construction is necessary for this claim term.  (Doc. No. 70 at 11; Doc. No. 79-1 at A9-A10.)  Defendant Cerner proposes that this term be construed as "wherein the healthcare application does not perform any of the same functions that the legacy application performs."  (Doc. No. 71 at 15; Doc. No. 79-1 at A9-A10.)

Here, the parties dispute whether the term "not duplicative" requires that the healthcare application not perform any of the same function as the legacy application.  CliniComp argues that there can be some duplicative functions.  (Doc. No. 70 at 11-12.) Cerner argues that there can be no duplicative functions.  (Doc. No. 71 at 15.)

The Court begins its analysis of the parties' dispute by reviewing the claim language. Independent claim 1 of the '647 Patent recites: "configuring the database to accept legacy information derived from a legacy application . . . , wherein the functions in the healthcare application are not duplicative of the legacy application."  '647 Patent at col. 14 ll. 31-35. The Court agrees with CliniComp that, here, the claim language explains that "the functions performed by the healthcare application must not duplicate the functions performed by the legacy application."  (Doc. No. 70 at 11.)  The common meaning of the word "duplicate" is "being the same as another" or "identical."  MERRIAM-WEBSTER ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/duplicative.  Thus, by stating that the "functions" (plural) in the two applications must not be identical to each other, the claim language merely requires that there not be a total overlap of functions between the applications.  The claim language does not forbid any overlap in functions as Cerner contends.  As such, the claim language supports CliniComp's position, and it does not support Cerner's contention.

To support its proposed construction, Cerner relies solely on the prosecution history of the '647 Patent, specifically statements made during the IPR proceedings.  (Doc. No. 71

at 15-16.)  Cerner contends that during the IPR, CliniComp presented certain arguments to the PTAB contending that the prior art reference Evan did not satisfy the "not duplicative" claim limitation.  (Id. (citing Doc. No. 71-2, Ex. H at H-5-6).)  Cerner is incorrect, and its contention is not supported by a review of the record.  In the cited document, CliniComp's sur-reply brief, CliniComp argued that the prior art reference Evans did not satisfy the "healthcare application" claim limitation.  (See Doc. No. 71-2, Ex. H at H-5-6.)  The cited portions of the sur-reply brief make no reference to the "not duplicative" limitation.  (See id.)  Thus, Cerner's reliance on the prosecution history is misplaced, and Cerner has failed to offer any persuasive support for its proposed construction.

In sum, the Court rejects Cerner's proposed construction for this claim term.  The Court gives the claim term "wherein the functions in the healthcare application are not duplicative of the legacy application" its plain and ordinary meaning, and the Court will not construe the claim term.

    4.    "generating a query to extract information from the database . . . derived from the healthcare data and the legacy information for managing and tracking a performance of the respective one of the first and second healthcare enterprise facilities"

Plaintiff CliniComp argues that the term "generating a query to extract information from the database . . . derived from the healthcare data and the legacy information for managing and tracking a performance of the respective one of the first and second healthcare enterprise facilities" should be given its plain and ordinary meaning, and, thus, no construction is necessary for this claim term.  (Doc. No. 70 at 13; Doc. No. 79-1 at A11.)  Defendant Cerner proposes that this term be construed as "generating a query to extract information from the database . . . derived from both the healthcare data and the legacy information, wherein the extracted information is for managing and tracking a performance of the respective one of the first and second health care enterprise facilities and not for tracking or managing the care of individual patients."  (Doc. No. 71 at 16; Doc. No. 79-1 at A11-A12.)

Here, Cerner's proposed construction is three-part.  First, Cerner contends that the extracted information is information derived both from the healthcare data and the legacy information.  Second, Cerner contends that the extracted information is for managing and tracking a performance of the respective one of the first and second health care enterprise facilities.  Third, Cerner seeks to clarify that the extracted information is not for tracking or managing the care of individual patients.  The Court addresses each of these portions of Cerner's proposed construction in turn below.

With respect to the first portion of Cerner's proposed construction, Cerner contends that the extracted information must be derived both from the healthcare data and the legacy information.  (Doc. No. 71 at 16.)  CliniComp argues that Cerner misreads the claim language, and the claimed "generating" step merely requires generating the query and not executing it.  The Court agrees with CliniComp.

Independent claim 1 recites: "generating a query to extract information from the database."  '647 Patent at col. 14 ll. 36-37.  Here, the claim language encompasses "generating" a query to extract information.  It does not require executing the query and actually extracting the information.

Indeed, an analysis of the dependent claims of the '647 Patent shows that independent claim 1 does not even require the presence of legacy information in the database.  Dependent claim 20 of the '647 Patent introduces the limitation of "storing in the database information received from a legacy program."  '647 Patent at col. 15 ll. 24-26.  Thus, under the doctrine of claim differentiation, independent claim 1 does not include the limitation of storing in the database information received from the legacy application/program.  See InterDigital Commc'ns, LLC v. Int'l Trade Comm'n, 690 F.3d 1318, 1324 (Fed. Cir. 2012) ("The doctrine of claim differentiation is at its strongest in this type of case, 'where the limitation that is sought to be 'read into' an independent claim already appears in a dependent claim.'").  The Court acknowledges that "the doctrine of claim differentiation creates only a presumption, which can be overcome by strong contrary evidence."  See id.  But Cerner has not provided the Court with any such strong contrary

evidence.

Cerner contends that CliniComp's claim differentiation argument fails because dependent claim 20 uses the term "a legacy program" rather than using the term "the legacy application." Cerner contends that by not using the specific term "the legacy application," dependent claim 20 does not refer to the "legacy application" claimed in claim 1. The Court does not find Cerner's argument persuasive. Cerner has not adequately explained to the Court what, if any, difference there is between a "a legacy program" and "a legacy application" in terms of the '647 Patent. The Court notes that the specification of the '647 Patent uses the terms "application" and "program" interchangeably. See, e.g., '647 Patent at col. 4 ll. 43-48 ("Of course, a healthcare enterprise may already be successfully using a healthcare management application, for example, such as a financial application. If the healthcare enterprise desires to continue to use such a legacy program, the financial information from the legacy program is simply transmitted to the database and stored therein."). As such, the Court rejects Cerner's argument.

Cerner argues that the claim language requires that the "legacy information" be present in the system. To support this argument, Cerner relies on the following claim language: "generating a query to extract information . . . derived from the healthcare data and the legacy information." '647 Patent at col. 14 ll. 36-39. Cerner argues that one cannot extract information derived from legacy information unless legacy information is present in the system. But, again, Cerner misreads the claim language. The claim language merely requires "generating" the query. It does not require executing the query and extracting the information.

Cerner also argues that independent claim 1's use of the definite article "the" to describe the "legacy information" in the "generating" step also supports its contention that the legacy information must be present in the system. The Court disagrees. By using the word "the" to describe the "legacy information" in the "generating" step, claim 1 merely refers back to its earlier recitation of the term "legacy information" in the "configuring" step. See Wi-Lan, Inc. v. Apple, Inc., 811 F.3d 455, 462 (Fed. Cir. 2016) ("Subsequent

24

use of the definite articles 'the' or 'said' in a claim refers back to the same term recited earlier in the claim."). The "configuring" step merely encompasses "configuring the database to accept legacy information." '647 Patent at col. 14 ll. 31. It does not expressly require accepting the legacy information and then storing it in the database. See id. That claim 1 does not expressly require the storing of legacy information in the database is notable because the claim language does expressly require the "storing" of the "processed [first/second] healthcare data" in the database. '647 Patent at col. 14 ll. 24-29. The "storing" step in claim 1 shows that when the patentee wanted to require that something be stored in the database, it used precise language stating so. The patentee did not use any such language with respect to the claimed "legacy information." As such, the Court rejects Cerner's argument.

Cerner also submits that the specification supports its proposed construction because the specification describes the disclosed system as using legacy information to generate multidisciplinary performance reports. (Doc. No. 71 at 16-17 (citing '647 Patent at col. 4 ll. 48-53, col. 8 ll. 42-44, col. 13 ll. 10-32, fig. 7).) But this language in the specification is insufficient to support Cerner's proposed construction. That the specification describes embodiments of the invention where the legacy information is stored in the database does not change that fact that the limitation of storing the legacy information in the database is not introduced in the claim language until dependent claim 20. As such, the Court rejects the first portion of Cerner's proposed construction for this claim term.

Turning to the second portion of Cerner's proposed construction, CliniComp contends that Cerner's proposed construction improperly shifts the focus of the claim from the generated query to the extracted data. (Doc. No. 70 at 15.) The Court agrees with CliniComp. The grammatical structure of the claim provides that it is the query that is "for managing and tracking a performance" and not the information. See '647 Patent at col. 16 ll. 36-41. As such, the Court rejects the second portion of Cerner's proposed construction.

Turning to the third portion of Cerner's proposed construction, CliniComp argues that Cerner's clarification that the claimed managing and tracking is not for tracking or

managing the care of individual patients is unnecessary.  (Doc. No. 70 at 16; Doc. No. 72 at 7.)  The Court agrees with CliniComp.  Here, the claim language clearly states that what is being managed and tracked is "a performance of the respective one of the first and second healthcare enterprise facilities."  '647 Patent at col. 14 ll. 39-41.  Further, CliniComp does not dispute this.  CliniComp acknowledges that the claim language is "clearly directed to the 'healthcare enterprise facilities' and not to individual patients."  (Doc. No. 70 at 16; Doc. No. 72 at 7-8.)  As there is no ambiguity in the claim language at issue and no dispute between the parties regarding the scope of this portion of the claim, Cerner's proposed clarification is unnecessary.  See Eon Corp. IP Holdings v. Silver Spring Networks, 815 F.3d 1314, 1318–19 (Fed. Cir. 2016) ("'[O]nly those terms need be construed that are in controversy, and only to the extent necessary to resolve the controversy.'"); see also U.S. Surgical, 103 F.3d at 1568 (Claim construction "is not an obligatory exercise in redundancy.").  As such, the Court rejects the third portion of Cerner's proposed construction.

In sum, the Court rejects Cerner's proposed construction for this claim term.  The Court gives the term "generating a query to extract information from the database . . . derived from the healthcare data and the legacy information for managing and tracking a performance of the respective one of the first and second healthcare enterprise facilities" its plain and ordinary meaning, and the Court will not construe the claim term.

5.  "wherein healthcare data in the first portion of the database is only accessible to the first end user device and healthcare data in the second portion of the database is only accessible to the second end user device"

Plaintiff CliniComp proposes that the term "wherein healthcare data in the first portion of the database is only accessible to the first end user device and healthcare data in the second portion of the database is only accessible to the second end user device" be construed as "healthcare data in the first portion of the database is only accessible to the first end users (and their devices) associated with the first healthcare enterprise facility and healthcare data in the second portion of the database is only accessible to the second end

users (and their devices) associated with the second healthcare enterprise facility.  Nothing in this claim precludes others not directly associated with the healthcare enterprise facility, such as those tasked with maintaining or improving the system, assisting users in using the system, or collecting data for reports or research, from having access to the data."  (Doc. No. 70 at 16; Doc. No. 79-1 at A14.)  Defendant Cerner argues that this term should be given its plain and ordinary meaning, and, thus, no construction is necessary for this claim term.  (Doc. No. 71 at 18; Doc. No. 79-1 at A14.)  Cerner proposes, in the alternative, that the term be construed as "wherein the portioning of the database enables restricting access such that healthcare data stored in the first portion of the database cannot be accessed by any device other than the first end user device and healthcare data stored in the second portion of the database cannot be accessed by any device other than the second end user device."  (Doc. No. 71 at 18-19; Doc. No. 79-1 at A14-A15.)

Here, the parties dispute whether this claim term requires that the first portion of the database be accessible to only the first end user device, as Cerner contends, or whether the claim term requires that the first portion of the database be accessible to only the first end user and their devices, as CliniComp contends.  In addition, the parties dispute whether this claim term precludes third parties not directly associated with the healthcare enterprise facilities from accessing the database.

The Court begins its analysis of the parties' dispute by reviewing the claim language. Independent claim 1 recites: "wherein healthcare data in the first portion of the database is only accessible to the first end user device and healthcare data in the second portion of the database is only accessible to the second end user device." '647 Patent at col. 14 ll. 42-45. Here, the claim language expressly states that the healthcare data in the first portion of the database is only accessible to the first end user "device." Thus, the claim language supports Cerner's proposed construction, and it does not support CliniComp's proposal.

CliniComp argues that the claim language supports its proposed construction because the claim language focuses on healthcare enterprise facilities and their interactions, through users and their devices, with the healthcare management system.  (Doc. No. 70 at

18.)   The Court acknowledges that independent claim 1 is directed to "an enterprise healthcare management system for a first healthcare enterprise facility and a second healthcare enterprise facility." '647 Patent at col. 14 ll. 8-10.  Nevertheless, claim 1 further recites "a first end user device in the first enterprise facility" and "a second end user device in the second enterprise facility."  Id. at col. 14 ll. 13-18.  And claim 1 further states that it is these user devices that have sole access to the respective portions of the databases.  Id. at col. 14 ll. 42-45.  If the patentee wanted the access to be limited to the healthcare enterprises' users rather than its devices, then the patentee could have used express language stating so.  The patentee did not.  Thus, the claim language does not support CliniComp's proposed construction, and the Court agrees with Cerner that CliniComp's proposed construction impermissibly seeks to rewrite the claim language.  See Helmsderfer v. Bobrick Washroom Equip., Inc., 527 F.3d 1379, 1383 (Fed. Cir. 2008) ("Courts cannot rewrite claim language.").

CliniComp submits that the specification supports its proposed construction.  To support this contention, CliniComp cites to several passages in the specification, and argues that these passages disclose a system where access to the data is always described as user centric.  (Doc. No. 70 at 19 (citing '647 Patent at col. 4 ll. 15-24, col. 6 ll. 41-44, col. 11 ll. 44-52, col. 11 ll. 53-55).)  But CliniComp's contention is not entirely correct.  For example, in one of the cited portions of the specification, the specification describes a "care giver" obtaining access to the application server.  See '647 Patent at col. 11 ll. 53-55.  The specification explains that the care giver obtains this access via a "computing device," and the information from the "device" is what authorizes the care giver to access the application server.  See id. at col. 11 ll. 44-52 ("The care provider has a computing device connected to the Internet as shown in block 304.  The care provider initiates a communication tunnel to the application server and the care provider[']s computing device as shown in block 305.  The application server has a database of security information stored in the EMPI.  The EMPI information is compared with information received from the caregiver's terminal device to authorize the care giver to access the application server as shown in block 306.");

see also id. at col. 13 ll. 2-5 ("The installer installs the necessary hardware and software at the healthcare enterprise to initiate communication tunnels between the server and an end-user device on the established network as shown in block 355."). Thus, the specification is consistent with the claim language's requirement that the "user device" has sole access to the respective portion of the database. And the specification is consistent with Cerner's proposed construction.

CliniComp contends that Cerner's proposed construction for this claim term is improper because it would exclude a preferred embodiment from the scope of the claims. "'A claim construction that excludes a preferred embodiment is rarely, if ever correct and would require highly persuasive evidentiary support.'" Kaufman, 34 F.4th at 1372. To support this argument, CliniComp notes that the specification describes a preferred embodiment where the system includes the ability to aggregate data across multiple database partitions to enable reporting on the performance of multiple entries. (Doc. No. 70 at 19-21 (citing '647 Patent at fig. 2, fig 4, col. 4 ll. 32-42, col. 7 ll. 10-12, col. 8 ll. 7-13, col. 9 ll. 13-23, col. 10 ll. 6-15, col. 11 ll. 24-35).) CliniComp further notes that dependent claims 21 and 23 specifically claim this feature of enabling aggregation of data across multiple database partitions. (Id. at 21-22.) CliniComp argues that Cerner's proposed construction would exclude this preferred embodiment because if only the user device can access the data, it would be impossible for a third-party entity, not affiliated with either healthcare enterprise or its associated devices, to access and aggregate the relevant data. (Id. at 20-21.) But there are two problems with CliniComp's arguments regarding this preferred embodiment.

First, the specification's disclosure of a preferred embodiment with the specific feature of the ability to aggregate data across multiple database partitions to enable reporting on the performance of multiple entries does not support CliniComp's broad proposed construction. CliniComp's broad construction would permit access to the data by any third party not directly associated with the healthcare enterprise facilities. CliniComp provides no support in the intrinsic record for such a broad grant of access.

29

Second, Cerner does not dispute that the provisions of the "wherein" clause still permit the system itself to access the data in addition to the claimed user device.  Cerner explains that the specification discloses that the database engine itself accesses the data to generate the reports described in the preferred embodiment relied on by CliniComp.  (Doc. No. 71 at 22; Doc. No. 73 at 9)  Cerner is correct.  The specification of the '647 Patent explains that the database engine can be used to extract aggregate information on enterprise performance.  See '647 Patent at col. 11 ll. 9-11("This database may then be queried with a database engine to extract aggregate information on enterprise performance as shown in block 251."), col. 10 ll. 10-12 ("The database engine can then be used to query across multiple database partitions as indicated in block 217."), col. 11 ll. 28-30 ("The database may then query information stored in all partitions as shown in block 271.").  With this clarification, Cerner's proposed construction does not exclude the preferred embodiment of the invention where the database itself accesses data across multiple database partitions to enable reporting on the performance of multiple entries.[12]

Finally, CliniComp argues that Cerner's proposed construction is wrong because Cerner's construction describes an unworkable system where there is only one user device per healthcare enterprise facility.  (Doc. No. 70 at 22.)  It is not clear from the briefing that

_____

[12]    In the tentative claim construction order, the Court stated that it would consider a construction for this claim term clarifying that the "wherein" clause does not prohibit the database itself from accessing the data to aggregate information and generate reports.  At the claim construction hearing, CliniComp requested that the Court adopt such a construction for this claim term.  In response, Cerner argued that such a construction was unnecessary because there was no dispute between the parties regarding whether the database can access the data, and such a construction might unnecessarily confuse the jury.

After considering the parties' arguments, the Court agrees with Cerner.  The parties are in agreement that the "wherein" clause does not prohibit the database itself from accessing the data to aggregate information and generate reports.  As there is no dispute regarding claim scope on this specific issue, it is unnecessary for the Court to adopt a construction clarifying that the "wherein" clause does not prohibit the database itself from accessing the data to aggregate information and generate reports.  See Eon, 815 F.3d at 1318–19 ("'[O]nly those terms need be construed that are in controversy, and only to the extent necessary to resolve the controversy.'"); see also U.S. Surgical, 103 F.3d at 1568 (Claim construction "is not an obligatory exercise in redundancy.").

Cerner does indeed contend that can only be one user device per healthcare facility.  But to the extent Cerner does contend that there can only be a single device, the claim language does not support that contention.

Claim 1 recites a method "comprising," among other things: "a first end user device in the first enterprise facility" and "a second end user device in the second enterprise facility."  Id. at col. 14 ll. 11, col. 14 ll. 13-18.  The Federal Circuit "'has repeatedly emphasized that an indefinite article "a" or "an" in patent parlance carries the meaning of "one or more" in open-ended claims containing the transitional phrase "comprising."'"  That 'a' or 'an' can mean 'one or more' is best described as a rule, rather than merely as a presumption or even a convention.  The exceptions to this rule are extremely limited: a patentee must 'evince[] a clear intent' to limit 'a' or 'an' to 'one.'"  Baldwin Graphic Sys., Inc. v. Siebert, Inc., 512 F.3d 1338, 1342 (Fed. Cir. 2008); accord Convolve, Inc. v. Compaq Computer Corp., 812 F.3d 1313, 1321 (Fed. Cir. 2016).  Further, "[l]ike the words 'a' and 'an,' the word 'the' is afforded the same presumptive meaning of 'one or more' when used with the transitional phrase 'comprising.'"  Free Motion Fitness, Inc. v. Cybex Int'l, Inc., 423 F.3d 1343, 1350–51 (Fed. Cir. 2005).  Thus, by using the words "comprising," "a," and "the" to describe the claimed user device, the claim language provides that there may be "one or more" user devices per healthcare facility.

At the claim construction hearing, Cerner acknowledged that under Federal Circuit precedent, the word "a" means "one or more."  Cerner proposed resolving this issue by construing the term "a [first/second] end user device" as "one or more [first/second] end user device(s)" in addition to adopting its proposed construction for the "wherein" clause.  The Court accepts Cerner's proposal.  See Convolve, 812 F.3d at 1321; Baldwin Graphic, 512 F.3d at 1342.

In sum, the Court adopts a slightly modified Cerner's proposed construction for this claim term, and the Court rejects CliniComp's proposed construction.  The Court construes the term "wherein healthcare data in the first portion of the database is only accessible to the first end user device and healthcare data in the second portion of the database is only

17-cv-02479-GPC (DEB)

accessible to the second end user device" as "wherein the portioning of the database enables restricting access such that healthcare data stored in the first portion of the database cannot be accessed by any device other than the first end user device(s) and healthcare data stored in the second portion of the database cannot be accessed by any device other than the second end user device(s)."  In addition, the Court construes the term "a first end user device" as "one or more first end user device(s)," and the Court construes the term "a second end user device" as "one or more second end user device(s)."

6.    "operating at"

Plaintiff CliniComp proposes that the term "operating at" should be given its plain and ordinary meaning, and, thus, no construction is necessary for this claim term.  (Doc. No. 70 at 23; Doc. No. 79-1 at A8.)  Defendant Cerner responds that this term be construed as "in operation at."  (Doc. No. 71 at 23; Doc. No. 79-1 at A8.)  Here, the parties dispute whether the claimed "legacy application" must be currently operating at the enterprise healthcare facility.  (See Doc. No. 70 at 23-22; Doc. No. 71 art 23.)

The Court begins its analysis of the parties' dispute by reviewing the claim language. Independent claim 1 recites: "configuring the database to accept legacy information derived from a legacy application operating at each of the first and second healthcare enterprise facilities."  '647 Patent at col. 14 ll. 31-33.  Cerner contends that by using the present tense of the verb "operating," the claim language imposes a temporal limitation requiring that the legacy application be currently operating at the facility.  (Doc. No. 71 at 23.)  In response, CliniComp argues that Cerner's position fails to read the term "operating at" in the context of its surrounding words.  The claim language at issue explains that the legacy information is "derived from" (past tense) a legacy application operating at each of the facilities.  '647 Patent at col. 14 ll. 31-33.  CliniComp reasons, therefore, if there is any temporal limitation imposed by the claim language, it is only that the legacy application be operating at the healthcare enterprise facility at the time the legacy information was derived from the legacy application.  (Doc. No. 72 at 10.)  The Court agrees with CliniComp's analysis of the claim language, and the claim language itself is insufficient to support

32

Cerner's proposed construction.

Nevertheless, a disclaimer in the specification supports Cerner's proposed construction. The specification of the '647 Patent states: "In another separate object of the present invention the new healthcare management system should utilize existing legacy applications already established at health care enterprises." '647 Patent at col. 2 ll. 55-58. Here, the specification explains that the present invention utilizes legacy applications that are "existing" applications already established at the enterprises. This strongly supports Cerner's proposed construction.

CliniComp argues that the Court should not import limitations from a preferred embodiment described in the specification into the claims. (Doc. No. 72 at 10.) "'[I]t is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited.'" GE Lighting Sols., LLC v. AgiLight, Inc., 750 F.3d 1304, 1309 (Fed. Cir. 2014). But, here, there is a clear indication that the claims should be so limited. The Federal Circuit has explained that "[w]hen a patentee 'describes the features of the "present invention" as a whole,' he alerts the reader that 'this description limits the scope of the invention.'" Pacing Techs., LLC v. Garmin Int'l, Inc., 778 F.3d 1021, 1025 (Fed. Cir. 2015); accord Regents of Univ. of Minnesota v. AGA Med. Corp., 717 F.3d 929, 936 (Fed. Cir. 2013); Luminara Worldwide, LLC v. Liown Elecs. Co., 814 F.3d 1343, 1353 (Fed. Cir. 2016). In the cited passage, the specification is not merely describing a preferred embodiment. Rather, it is describing the invention as a whole, and the specification explains that it is an object of the invention that it utilizes "existing" legacy applications already established at the enterprises. '647 Patent at col. 2 ll. 55-58.

That this language in the specification constitutes a disclaimer of claim scope is further supported by an additional passage in the specification. In describing the background of the invention, the specification states that it is "desirable that existing legacy applications, computers, and networks cooperate with the new system." '647 Patent at col.

2 ll. 44-46.   Here, the specification describes cooperating with "existing" legacy applications as a desirable feature of the new system.   The Federal Circuit has found disclaimer where the specification describes a feature as an important feature of the invention.   See Pacing Techs., 778 F.3d at 1024–25.   The disclaimer is further supported by the fact that every disclosure in the specification referencing a legacy application describes it as an existing or retained application.[13]   See '647 Patent at col. 3 ll. 12-13, col. 4 ll. 48-51, col. 8 ll. 31-36, col. 13 ll. 6-8, col. 13 ll. 20-23.   In sum, the specification contains a clear disclaimer of claim scope that supports Cerner's proposed construction requiring that the legacy application is currently in operation at the facility.

Indeed, Cerner's proposed construction incorporating this disclaimer is consistent with the Federal Circuit's understanding of the '647 Patent.   In its decision, the Federal Circuit stated: "The healthcare management system described in the '647 patent allows healthcare enterprises to preserve existing legacy applications while simultaneously phasing in new or updated applications on the same system."   Cerner, 852 F. App'x at 532 ("The purpose of the '647 patent is to allow healthcare enterprises to consolidate legacy software applications and new software applications together on one software platform.").   Here, the Federal Circuit describes the invention in the '647 Patent as utilizing "existing legacy applications."   Id.

As a result, the Court adopts Cerner's proposed construction for this claim term.[14] The Court construes the claim term "operating at" as "in operation at."

///

///

_____

[13]   The Court notes that CliniComp has not identified one disclosure in the specification where the legacy application is not an existing or retained application.

[14]   Cerner also argues that the prosecution history, specifically statements made by CliniComp during the IPR proceedings, also supports its proposed construction.  (Doc. No. 71 at 24-25.)  Because Cerner's proposed construction is supported by the clear disclaimer contained in the specification, the Court need not analyze the prosecution history for additional support.

# III.   CONCLUSION

Accordingly, the Court hereby adopts the constructions set forth above.

IT IS SO ORDERED.

Dated:  July 28, 2022

_____
Hon. Gonzalo P. Curiel
United States District Judge

1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLINICOMP INTERNATIONAL, INC.,<br><br>                                    Plaintiff,<br><br>v.<br><br>CERNER CORPORATION,<br><br>                                    Defendant. | Case No.:  17-cv-02479-GPC (DEB)<br><br>**ORDER:**<br><br>**(1) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT; AND**<br><br>**[Dkt. No. 99.]**<br><br>**(2) DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE A SUR-REPLY**<br><br>**[Dkt. No. 112.]** |

On September 19, 2022, Defendant Cerner Corporation ("Cerner") filed a motion for summary judgment of non-infringement. (Dkt. No. 99.) On October 14, 2022, Plaintiff CliniComp International, Inc. ("CliniComp") filed a response in opposition to Cerner's motion for summary judgment. (Dkt. No. 106.) On October 21, 2022, Cerner filed a reply. (Dkt. No. 109.) On October 28, 2022, CliniComp filed a motion for leave to file a sur-

1

reply.  (Dkt. No. 112.)  On November 1, 2022, Cerner filed an opposition to CliniComp's motion for leave to file a sur-reply.  (Dkt. No. 116.)

The Court held a hearing on Cerner's motion for summary judgment on November 8, 2022.  Amardeep Thakur, Bruce Zisser, and Shawn McDonald appeared for Plaintiff CliniComp.  Jared Bobrow and Jason Yu appeared for Defendant Cerner.  For the reasons set forth below, the Court grants Cerner's motion for summary judgment of non-infringement.  In addition, the Court denies CliniComp's motion for leave to file a sur-reply.

# I.    BACKGROUND

CliniComp is the owner of U.S. Patent No. 6,665,647 ("the '647 Patent") by assignment.  (Dkt. No. 1, Compl. ¶ 2.)  In the present action, CliniComp alleges that Cerner directly infringes claims 1, 2, 5, 10-13, 15-18, and 20-23 of the '647 Patent by making, using, selling, and/or offering to sell within the United States Cerner's CommunityWorks, PowerWorks, and Lights on Network services (collectively "the accused services").  (Dkt. 103, Ex. 2 at 21; see also Dkt. No. 1, Compl. ¶¶ 15-16.)

CommunityWorks and PowerWorks are two delivery services for Cerner's primary electronic health records (EHR) platform, Millennium.  (See Dkt. No. 99-1 at 8; Dkt. No. 106 at 2.)  Lights On Network ("LON") is a cloud-based solution that "provides enterprise-level data analytics" for Millennium customers.  (Dkt. No. 108-9, Ex. J; Dkt. No. 103, Ex. 8).)

The '647 Patent is entitled "Enterprise Healthcare Management System and Method of Using Same."  U.S. Patent No. 6,665,647, at [54] (filed Dec. 16, 2003).  The Federal Circuit described the '647 Patent as follows:

> The '647 patent describes a healthcare management system for healthcare enterprises.  The purpose of the '647 patent is to allow healthcare enterprises to consolidate legacy software applications and new software applications together on one software platform.  Many healthcare enterprises utilize legacy systems for managing data related to a variety of uses, including patient care, accounting, insurance, and administrative functions.  These established systems are often outdated and too inflexible to support healthcare

enterprises in the "modern managed care environment." '647 patent at col. 1 ll. 58–62. The healthcare management system described in the '647 patent allows healthcare enterprises to preserve existing legacy applications while simultaneously phasing in new or updated applications on the same system.

The enterprise healthcare management system in the '647 patent allows enterprises to "remotely host[] . . . turnkey health care applications" and "provide[s] . . . enterprise users access to the turnkey applications via a public network." Id. at col. 2 ll. 61–65. Enterprises can upgrade existing capabilities and add functionality not available in their current system without significant capital investments. Because the applications are hosted on a public network (*i.e.*, the internet), the healthcare enterprise only needs computing resources sufficient to allow secure, quality access to the internet. The "turnkey" management system adjusts to changes within the enterprise as the system "easily and cost-effectively scales" to respond to an enterprise's needs. Id. at col. 3 ll. 19–23.

The information collected by the enterprise from its applications may be stored in a searchable database. Specifically, the '647 patent discloses a clinical data repository that stores information from applications within the suite of applications on the system. The clinical data repository stores "multidisciplinary information on a wide variety of enterprise functions." Id. at col. 6 ll. 31–40. For example, the clinical data repository stores pharmaceutical, radiology, laboratory, and clinical information data utilized by other applications of the application suite.

The '647 patent discloses that "the clinical data repository is a database that is partitioned" and that "the database portion may be configured as either a logical partition or a physical partition." Id. at col. 9 ll. 60–64. The healthcare management system is also capable of supporting multiple enterprises, in which case "the information related to each of the separate healthcare enterprises is stored in a separate partition of the database." Id. at col. 10 ll. 6–10. As such, when multiple enterprises are involved with using the system, the clinical data repository may have multiple partitions, with each partition holding healthcare management information for the respective enterprise.

Among other things, the '647 patent describes the partitioning of data for multiple enterprises so as to allow the storing of "[the] first healthcare data in a first portion of the database associated with the first healthcare enterprise facility" and separately storing "[the] second healthcare data in a second portion of the database associated with the second healthcare enterprise facility." Id. at col. 14 ll. 24–29. The system allows two (or more) independent healthcare enterprises to share access to certain applications

while maintaining sole access to their respective unique healthcare applications.  The databases are effectively "partitioned" or "portioned" in this way.

Cerner Corp. v. Clinicomp Int'l, Inc., 852 F. App'x 532, 532–33 (Fed. Cir. 2021).

Independent claim 1 of the '647 Patent, the only independent claim asserted by CliniComp in this action,[1] recites:

1.  A method of operating an enterprise healthcare management system for a first healthcare enterprise facility and a second healthcare enterprise facility independent of the first healthcare enterprise facility, comprising:

establishing a first secure communication channel via a public network between an application server and a first end user device in the first enterprise facility and establishing a second secure communication channel via the public network between the application server and a second end user device in the second enterprise facility, the application server remotely hosting a healthcare application and having a database;

receiving first healthcare data from the first end user and second healthcare data from the second end user;

processing the first healthcare data and the second healthcare data with the healthcare application;

storing the processed first healthcare data in a first portion of the database associated with the first healthcare enterprise facility and storing the processed second healthcare data in a second portion of the database associated with the second healthcare enterprise facility;

configuring the database to accept legacy information derived from a legacy application operating at each of the first and second healthcare enterprise facilities, wherein the functions in the healthcare application are not duplicative of the legacy application; and

generating a query to extract information from the database relevant to a respective one of the first and second healthcare enterprise facilities derived from the healthcare data and the legacy information for managing and tracking a performance of the respective one of the first and second healthcare enterprise facilities,

wherein healthcare data in the first portion of the database is only accessible

_____

[1]   (See Dkt. No. 103, Ex. 2 at 2.)

to the first end user device and healthcare data in the second portion of the database is only accessible to the second end user device.

'647 Patent col. 14 ll. 8-45.

On December 11, 2017, CliniComp filed a complaint for patent infringement against Defendant Cerner, alleging infringement of the '647 Patent.  (Dkt. No. 1, Compl.)  On May 16, 2018, the Court granted Cerner's motion to dismiss Clinicomp's claims for willful infringement and indirect infringement as well as the relief sought in connection with these claims of injunctive relief, treble damages, and exceptionality damages.  (Dkt. No. 18 at 21.)  On June 25, 2018, Cerner filed an answer to CliniComp's complaint.  (Dkt. No. 19.)

On March 5, 2019, the Patent Trial and Appeal Board ("PTAB") instituted an *inter partes* review ("IPR") as to claims 1-25 and 50-55 of the '647 Patent.  (Dkt. No. 30-1, Ex. A.)  On March 7, 2019, the Court granted a stay of the action pending completion of the IPR proceedings.  (Dkt. No. 31.)  On March 26, 2020, the PTAB issued a final written decision, determining that claims 50-55 of the '647 Patent are not patentable in light of the prior art, but that claims 1-25 of the '647 Patent are patentable.[2]  (Dkt. No. 32, Ex. A at 93-94.)  On April 20, 2021, the Federal Circuit affirmed the PTAB's determination that claims 1-25 of the '647 Patent are patentable.[3]  (Dkt. No. 38-2, Ex. B at 10.)  On June 24, 2021, the Court granted the parties' joint motion to lift the stay of the action.  (Dkt. No. 44.)

On July 23, 2021, Cerner filed an amended answer to CliniComp's complaint.  (Dkt.

---

[2]    Specifically, the PTAB concluded that Cerner had shown by a preponderance of the evidence that: (1) claims 50-52 are not patentable based on Evans; (2) claims 53 and 54 are not patentable based on Evans and Rai; (3) claims 50-53, and 55 are not patentable based on Johnson and Evans; and (4) claim 54 is not patentable based on Johnson, Evans, and Rai.  (Dkt. No. 32, Ex. A at 93-94.)  The PTAB further concluded that Cerner had not shown by a preponderance of the evidence: (1) that claims 1-5, 10-13, and 15-25 are unpatentable based on Johnson and Evans; or (2) that claims 6-9, and 14 are unpatentable based on Johnson, Evans, and Rai.  (Id. at 93.)

[3]    On November 15, 2021, the PTO issued an *inter partes* review certificate for the '647 Patent, stating: "Claims 1-25 are found patentable" and "Claims 50-55 are cancelled." (Dkt. No. 71-2, Ex. A at A-20–A-21.)

No. 52.)  On October 7, 2021, the Court issued a scheduling order in the action.  (Dkt. No. 55.)

On July 28, 2022, the Court issued a claim construction order, construing the disputed claim terms from the '647 Patent.  (Dkt. No. 91.)  By the present motion, Cerner moves for summary judgment of non-infringement of the '647 Patent.  (Dkt. No. 99-1 at 25.)

## II.    DISCUSSION

## I.    Legal Standards

### A.    Legal Standards Governing Summary Judgment

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 if the moving party demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Material facts are facts that, under the governing substantive law, may affect the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party.  Id.  "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment."  T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

A party seeking summary judgment always bears the initial burden of demonstrating that there is no genuine dispute as to any material fact.  Celotex, 477 U.S. at 323.  A moving party without the ultimate burden of proof at trial can satisfy its burden in two ways: (1) by presenting "evidence negating an essential element of the nonmoving party's claim or defense;" or (2) by demonstrating "that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial."  Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc., 210 F.3d 1099, 1102 (9th Cir. 2000).  Once the moving party establishes the absence of a genuine dispute as to any material fact, the burden shifts to the nonmoving party to "set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'"  T.W. Elec. Serv.,

809 F.2d at 630 (quoting former Fed. R. Civ. P. 56(e)); accord Horphag Research Ltd. v. Garcia, 475 F.3d 1029, 1035 (9th Cir. 2007).  To carry this burden, the non-moving party "may not rest upon mere allegation or denials of his pleadings."  Anderson, 477 U.S. at 256; see also Behrens v. Pelletier, 516 U.S. 299, 309 (1996) ("On summary judgment, . . . the plaintiff can no longer rest on the pleadings.").  Rather, the nonmoving party "must present affirmative evidence . . . from which a jury might return a verdict in his favor." Anderson, 477 U.S. at 256.

When ruling on a motion for summary judgment, the court must view the facts and draw all reasonable inferences in the light most favorable to the non-moving party.  Scott v. Harris, 550 U.S. 372, 378 (2007).  The court should not weigh the evidence or make credibility determinations.  See Anderson, 477 U.S. at 255.  "The evidence of the non-movant is to be believed."  Id.  Further, the court may consider other materials in the record not cited to by the parties, but it is not required to do so.  See Fed. R. Civ. P. 56(c)(3); see also Simmons v. Navajo Cnty., 609 F.3d 1011, 1017 (9th Cir. 2010) ("[A] district court has no independent duty 'to scour the record in search of a genuine issue of triable fact.'").

B.    Legal Standards Governing Patent Infringement

A patent infringement analysis proceeds in two steps.  Niazi Licensing Corp. v. St. Jude Med. S.C., Inc., 30 F.4th 1339, 1350 (Fed. Cir. 2022); JVW Enterprises, Inc. v. Interact Accessories, Inc., 424 F.3d 1324, 1329 (Fed. Cir. 2005).  In the first step, the court construes the asserted claims as a matter of law.  See Niazi, 30 F.4th at 1351; JVW, 424 F.3d at 1329.  In the second step, the factfinder compares the properly construed claims to the accused method or device.  See id.

"'The patentee bears the burden of proving infringement by a preponderance of the evidence.'"  Creative Compounds, LLC v. Starmark Labs., 651 F.3d 1303, 1314 (Fed. Cir. 2011).  To establish infringement of a method claim, "a patentee must prove that each and every step of the method or process was performed."  Aristocrat Techs. Australia Pty Ltd. v. Int'l Game Tech., 709 F.3d 1348, 1362 (Fed. Cir. 2013); see Akamai Techs., Inc. v. Limelight Networks, Inc., 797 F.3d 1020, 1022 (Fed. Cir. 2015) (en banc) ("Direct

7

infringement under § 271(a) occurs where all steps of a claimed method are performed by or attributable to a single entity."); Star Sci., Inc. v. R.J. Reynolds Tobacco Co., 655 F.3d 1364, 1378 (Fed. Cir. 2011) ("To prove infringement, a plaintiff must prove the presence of each and every claim element or its equivalent in the accused method or device.").

Under the doctrine of equivalents, "a product or process that does not literally infringe . . . the express terms of a patent claim may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention." Warner–Jenkinson Co. v. Hilton Davis Chem. Co., 520 U.S. 17, 21 (1997); accord Eagle Pharms. Inc. v. Slayback Pharma LLC, 958 F.3d 1171, 1175 (Fed. Cir. 2020). The Federal Circuit "applies two articulations of the test for equivalence." Voda v. Cordis Corp., 536 F.3d 1311, 1326 (Fed. Cir. 2008) (citing Warner–Jenkinson, 520 U.S. at 40); see UCB, Inc. v. Watson Lab'ys Inc., 927 F.3d 1272, 1284 (Fed. Cir. 2019). Under the insubstantial differences test, "'[a]n element in the accused device is equivalent to a claim limitation if the only differences between the two are insubstantial.'" UCB, 927 F.3d at 1284 (quoting Voda, 536 F.3d at 1326). "Alternatively, under the function-way-result test, an element in the accused device is equivalent to a claim limitation if it 'performs substantially the same function in substantially the same way to obtain substantially the same result.'" Voda, 536 F.3d at 1326 (quoting Schoell v. Regal Marine Indus., Inc., 247 F.3d 1202, 1209–10 (Fed. Cir. 2001)); see Ajinomoto Co. v. Int'l Trade Comm'n, 932 F.3d 1342, 1356 (Fed. Cir. 2019). "Regardless how the equivalence test is articulated, 'the doctrine of equivalents must be applied to individual limitations of the claim, not to the invention as a whole.'" Mirror Worlds, LLC v. Apple Inc., 692 F.3d 1351, 1357 (Fed. Cir. 2012) (quoting Warner–Jenkinson, 520 U.S. at 29).

"'Infringement, whether literal or under the doctrine of equivalents, is a question of fact.'" Advanced Steel Recovery, LLC v. X-Body Equip., Inc., 808 F.3d 1313, 1317 (Fed. Cir. 2015). "Summary judgment of noninfringement is proper when no reasonable jury could find that every limitation recited in a properly construed claim is found in the accused

8

1    device either literally or under the doctrine of equivalents." Id.

2          C.    Legal Standards Governing Claim Construction

3          Because the first step in an infringement analysis is for the Court to construe the

4    asserted claims as a matter of law, the Court sets forth the following legal standards

5    governing claim construction.  Claim construction is an issue of law for the court to decide.

6    Teva Pharm. USA, Inc. v. Sandoz, Inc., 135 S. Ct. 831, 838 (2015); Markman v. Westview

7    Instr., Inc., 517 U.S. 370, 372 (1996).  Although claim construction is ultimately a question

8    of law, "subsidiary factfinding is sometimes necessary." Teva, 135 S. Ct. at 838.

9          "It is a 'bedrock principle' of patent law that the 'claims of a patent define the

10   invention to which the patentee is entitled the right to exclude.'" Phillips v. AWH Corp.,

11   415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc).  "The purpose of claim construction is to

12   'determin[e] the meaning and scope of the patent claims asserted to be infringed.'" O2

13   Micro Int'l Ltd. v. Beyond Innovation Tech. Co., 521 F.3d 1351, 1360 (Fed. Cir. 2008).

14         Claim terms "'are generally given their ordinary and customary meaning[,]'" which

15   "is the meaning that the term would have to a person of ordinary skill in the art in question

16   at the time of the invention." Phillips, 415 F.3d at 1312–13.  "In some cases, the ordinary

17   meaning of claim language as understood by a [PHOSITA] may be readily apparent even

18   to lay judges, and claim construction in such cases involves little more than the application

19   of the widely accepted meaning of commonly understood words." Id. at 1314.  "However,

20   in many cases, the meaning of a claim term as understood by persons of skill in the art is

21   not readily apparent." O2 Micro, 521 F.3d at 1360.  If the meaning of the term is not

22   readily apparent, the court must look to "'those sources available to the public that show

23   what a person of skill in the art would have understood disputed claim language to mean.'"

24   Phillips, 415 F.3d at 1314 (quoting Innova/Pure Water, Inc. v. Safari Water Filtration Sys.,

25   Inc., 381 F.3d 1111, 1116 (Fed. Cir. 2004)).  "Those sources include 'the words of the

26   claims themselves, the remainder of the specification, the prosecution history, and extrinsic

27   evidence.'" Id. (quoting Innova, 381 F.3d at 1116); see Ericsson, Inc. v. D-Link Sys., Inc.,

28   773 F.3d 1201, 1217–18 (Fed. Cir. 2014).

In determining the proper construction of a claim, a court should first look to the language of the claims.  See Allergan Sales, LLC v. Sandoz, Inc., 935 F.3d 1370, 1373 (Fed. Cir. 2019) ("'[C]laim construction must begin with the words of the claims themselves.'"); Source Vagabond Sys. Ltd. v. Hydrapak, Inc., 753 F.3d 1291, 1299 (Fed. Cir. 2014) ("'a claim construction analysis must begin and remain centered on the claim language itself'").  The context in which a disputed term is used in the asserted claims may provide substantial guidance as to the meaning of the term.  See Phillips, 415 F.3d at 1314.

A court must also read claims "in view of the specification, of which they are a part." Markman, 52 F.3d at 979; see 35 U.S.C. § 112(b) ("The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the inventor or a joint inventor regards as the invention.").  "'Apart from the claim language itself, the specification is the single best guide to the meaning of a claim term.'" Vederi, LLC v. Google, Inc., 744 F.3d 1376, 1382 (Fed. Cir. 2014).

But "[t]he written description part of the specification does not delimit the right to exclude.  That is the function and purpose of claims."  Markman v. Westview Instruments, Inc., 52 F.3d 967, 980 (Fed. Cir. 1995) (en banc); accord Arlington Indus., Inc. v. Bridgeport Fittings, Inc., 632 F.3d 1246, 1256 (Fed. Cir. 2011).  Therefore, "it is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited."  Dealertrack, Inc. v. Huber, 674 F.3d 1315, 1327 (Fed. Cir. 2012); accord Openwave Sys., Inc. v. Apple Inc., 808 F.3d 509, 514 (Fed. Cir. 2015).

In addition to the claim language and the specification, the patent's prosecution history may be considered if it is in evidence.  Phillips, 415 F.3d at 1317.  The prosecution history "consists of the complete record of the proceedings before the PTO and includes the prior art cited during the examination of the patent."  Id.  "Like the specification, the prosecution history provides evidence of how the PTO and the inventor understood the patent."  Id.  "Yet because the prosecution history represents an ongoing negotiation

1   between the PTO and the applicant, rather than the final product of that negotiation, it often

2   lacks the clarity of the specification and thus is less useful for claim construction purposes."

3   Id.

4        In most situations, analysis of the intrinsic evidence will resolve claim construction

5   disputes.  See Vitronics, 90 F.3d at 1583; Teva, 135 S. Ct. at 841; see also Seabed

6   Geosolutions (US) Inc. v. Magseis FF LLC, 8 F.4th 1285, 1287 (Fed. Cir. 2021) ("If the

7   meaning of a claim term is clear from the intrinsic evidence, there is no reason to resort to

8   extrinsic evidence.").  However, "[w]here the intrinsic record is ambiguous, and when

9   necessary," district courts may "rely on extrinsic evidence, which 'consists of all evidence

10  external to the patent and prosecution history, including expert and inventor testimony,

11  dictionaries, and learned treatises.'" Power Integrations, Inc. v. Fairchild Semiconductor

12  Int'l, Inc., 711 F.3d 1348, 1360 (Fed. Cir. 2013) (quoting Phillips, 415 F.3d at 1317).  A

13  court must evaluate all extrinsic evidence in light of the intrinsic evidence.  Phillips, 415

14  F.3d at 1319.  "'[E]xtrinsic evidence is to be used for the court's understanding of the

15  patent, not for the purpose of varying or contradicting the terms of the claims.'" Genuine

16  Enabling Tech. LLC v. Nintendo Co., 29 F.4th 1365, 1373 (Fed. Cir. 2022); see also

17  Summit 6, LLC v. Samsung Elecs. Co., 802 F.3d 1283, 1290 (Fed. Cir. 2015) ("Extrinsic

18  evidence may not be used 'to contradict claim meaning that is unambiguous in light of the

19  intrinsic evidence.'").  In cases where subsidiary facts contained in the extrinsic evidence

20  "are in dispute, courts will need to make subsidiary factual findings about that extrinsic

21  evidence." Teva, 135 S. Ct. at 841.

22        "[D]istrict courts are not (and should not be) required to construe every limitation

23  present in a patent's asserted claims." O2 Micro, 521 F.3d at 1362; see also Eon Corp. IP

24  Holdings v. Silver Spring Networks, 815 F.3d 1314, 1318–19 (Fed. Cir. 2016) ("'[O]nly

25  those terms need be construed that are in controversy, and only to the extent necessary to

26  resolve the controversy.'").  In certain situations, it is appropriate for a court to determine

27  that a claim term needs no construction and its plain and ordinary meaning applies.  See

28  O2 Micro, 521 F.3d at 1360; Phillips, 415 F.3d at 1314.  But "[a] determination that a claim

term 'needs no construction' or has the 'plain and ordinary meaning' may be inadequate when a term has more than one 'ordinary' meaning or when reliance on a term's 'ordinary' meaning does not resolve the parties' dispute." O2 Micro, 521 F.3d at 1361.  When the parties present a dispute regarding the scope of a claim term, it is the court's duty to resolve the dispute. Id. at 1362; Eon, 815 F.3d at 1318.

## II.    Federal Rule of Civil Procedure 56(d)

As an initial matter, CliniComp argues that Cerner's motion for summary judgment should be denied as premature.  (Dkt. No. 106 at 2.)  CliniComp notes that it has not taken Rule 30(b)(6) depositions or received documents in response to several third-party subpoenas, and expert discovery has not even begun.  (Id.)  In response, Cerner argues that its motion is not premature, and the mere fact that the fact-discovery period in this action has not expired is not a basis to deny summary judgment.  (Dkt. No. 109 at 10.)

Federal Rule of Civil Procedure 56(d) provides "a device for litigants to avoid summary judgment when they have not had sufficient time to develop affirmative evidence."  United States v. Kitsap Physicians Serv., 314 F.3d 995, 1000 (9th Cir. 2002) (discussing former Rule 56(f), which is now Rule 56(d)).  Rule 56(d) provides in full: "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order."  Fed. R. Civ. P. 56(d).

To prevail under Rule 56(d), a party requesting a continuance "must identify by affidavit the specific facts that further discovery would reveal, and explain why those facts would preclude summary judgment."  Tatum v. City & Cnty. of San Francisco, 441 F.3d 1090, 1100 (9th Cir. 2006); see also Blough v. Holland Realty, Inc, 574 F.3d 1084, 1091 n.5 (9th Cir. 2009) ("To prevail under this Rule, parties opposing a motion for summary judgment must make '(a) a timely application which (b) specifically identifies (c) relevant information, (d) where there is some basis for believing that the information sought actually exists." (internal quotation marks omitted)).  "Failure to comply with these requirements

'is a proper ground for denying discovery and proceeding to summary judgment.'" <u>Fam. Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.</u>, 525 F.3d 822, 827 (9th Cir. 2008). "The party seeking a Rule 56(d) continuance bears the burden of proffering facts sufficient to satisfy the requirements of 56(d)." <u>Martinez v. Columbia Sportswear USA Corp.</u>, 553 F. App'x 760, 761 (9th Cir. 2014) (citing <u>Nidds v. Schindler Elevator Corp.</u>, 113 F.3d 912, 921 (9th Cir. 1996)).

Here, CliniComp has failed to even attempt to satisfy the requirements of Rule 56(d). Indeed, CliniComp does not even invoke Rule 56(d). (<u>See</u> Dkt. No. 106 at 2.) CliniComp has not presented the Court with an affidavit or declaration identifying any specific facts that further discovery would reveal and explaining why those facts would preclude summary judgment of non-infringement. CliniComp simply notes in its motion that it has not taken Rule 30(b)(6) depositions or received documents in response to several third-party subpoenas, and expert discovery has not begun. (Dkt. No. 106 at 2.) CliniComp does not assert that any of this anticipated discovery would reveal any specific additional facts that are "essential" to its opposition to Cerner's motion for summary judgment of non-infringement. <u>See</u> <u>Sec. & Exch. Comm'n v. Stein</u>, 906 F.3d 823, 833 (9th Cir. 2018) (explaining that "[t]he facts sought must be 'essential' to the party's opposition to summary judgment"). As such, CliniComp has failed to satisfy the requirements of Rule 56(d), and, therefore, the Court rejects CliniComp's argument that Cerner's motion for summary judgment of non-infringement is premature. <u>See</u> <u>Tatum</u>, 441 F.3d at 1100 ("Because [plaintiff] did not satisfy the requirements of Rule 56(f), the district court did not abuse its discretion by denying her request for a continuance."); <u>see also, e.g.</u>, <u>Rosebud LMS Inc. v. Adobe Sys. Inc.</u>, 812 F.3d 1070, 1076 (Fed. Cir. 2016) (rejecting appellant's argument that summary judgment was premature where appellant failed to indicate that "it needed further discovery on issues relevant to the motion").

### III.   Infringement Analysis

Cerner argues that it is entitled to summary judgment of non-infringement because the accused services do not satisfy three limitations contained in independent claim 1 of

the '647 Patent, the only independent claim asserted in this action.  (Dkt. No. 99-1 at 25.)  Specifically, Cerner argues that the accused services do not satisfy the "the only accessible to . . ." limitation; the "storing . . ." limitation; and the "configuring the database . . ." limitation in claim 1.  (Id. at 1-3, 12-24.)   The Court addresses each of these three limitations below.

A.     The "Only Accessible To . . ." Claim Limitation

Cerner argues that it is entitled to summary judgment of non-infringement because the accused services do not satisfy the "only accessible to the [first/second] end user device" "in the [first/second] enterprise facility" limitation in independent claim 1 of the '647 Patent.  (Dkt. No. 99-1 at 12-16; Dkt. No. 109 at 1-4.)  In response, CliniComp argues that Cerner's theory of non-infringement fails because it is based on a claim construction that the Court never entered.  (Dkt. No. 106 at 5-7.)

Independent claim 1 of the '646 Patent recites:

1. A method of operating an enterprise healthcare management system for a first healthcare enterprise facility and a second healthcare enterprise facility independent of the first healthcare enterprise facility, comprising:

establishing a first secure communication channel via a public network between an application server and **a first end user device in the first enterprise facility** and establishing a second secure communication channel via the public network between the application server and **a second end user device in the second enterprise facility**, the application server remotely hosting a healthcare application and having a database;

. . .

**wherein healthcare data in the first portion of the database is only accessible to the first end user device and healthcare data in the second portion of the database is only accessible to the second end user device.**

'647 Patent col. 14 ll. 8-19, 42-45 (emphasis added).  In the claim construction order, the Court construed the claim term "wherein healthcare data in the first portion of the database is only accessible to the first end user device and healthcare data in the second portion of the database is only accessible to the second end user device" as "wherein the portioning of the database enables restricting access such that healthcare data stored in the first portion

of the database cannot be accessed by any device other than the first end user device(s) and healthcare data stored in the second portion of the database cannot be accessed by any device other than the second end user device(s)." (Dkt. No. 91 at 31-32.)

Cerner argues that the claim language in the "wherein" clause of claim 1 combined with the claim language in the "establishing" clause of claim 1 requires that the healthcare data associated with the first enterprise facility can only be accessed by first end user devices in the first enterprise facility. (Dkt. No. 99-1 at 12-13.) And, similarly, it requires that the healthcare data associated with the second enterprise facility can only be accessed by second end user devices in the second enterprise facility. (Id. at 13.) The Court agrees that this is a proper reading of the claim language, and, thus, independent claim 1 includes as a limitation that the healthcare data is "only accessible to the [first/second] end user device" "in the [first/second] enterprise facility." See '647 Patent col. 14 ll. 42-43 ("wherein healthcare data in the first portion of the database is only accessible to the first end user device"), col. 14 ll. 13-14 ("a first end user device in the first enterprise facility"). (See also Dkt. No. 91 at 28 ("[C]laim 1 further recites 'a first end user device in the first enterprise facility' and 'a second end user device in the second enterprise facility.' And claim 1 further states that it is these user devices that have sole access to the respective portions of the databases." (citations omitted))

Cerner argues the accused services do not satisfy this "only accessible to the [first/second] end user device" "in the [first/second] enterprise facility" limitation as a matter of law because it is undisputed that the accused services permit health information to be accessed by any device with an Internet connection at any location. (Dkt. No. 99-1 at 13-16.) In response, CliniComp argues that Cerner's non-infringement argument fails because it is based on a claim construction ruling that the Court never made. (Dkt. No. 106 at 6.) CliniComp notes that during claim construction neither party asked the Court to construe the relevant claim term: "in the [first/second] enterprise facility." (Id.)

In the parties' summary judgment briefing, the parties present a clear dispute as to the proper scope of the claim term "a [first/second] end user device in the [first/second]

enterprise facility" in independent claim 1 of the '647 Patent.  (Compare Dkt. No. 106 at 6-7 with Dkt. No. 109 at 1-3.)  The parties should have presented this claim construction dispute to the Court during the claim construction phase of the case and not at summary judgment.  "Sound practical reasons counsel against construing additional terms based on claim construction arguments raised for the first time in summary judgment briefs." Apple, Inc. v. Samsung Elecs. Co., No. 12-CV-00630-LHK, 2014 WL 252045, at *4 (N.D. Cal. Jan. 21, 2014); see also O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc., 467 F.3d 1355, 1364 (Fed. Cir. 2006) (explaining that patent local rules are designed to "prevent the shifting sands approach to claim construction" (internal quotation marks omitted)).  Indeed, generally, a party waives any argument with respect to the construction of a claim term when they fail to raise that issue during the claim construction phase of the case.  See Finalrod IP, LLC v. John Crane, Inc., No. 7:15-CV-00097-ADA, 2019 WL 4061703, at *2 (W.D. Tex. May 30, 2019) ("The Federal Circuit holds that an accused infringer waives any argument with respect to the construction of a claim term when they fail to raise that issue during the claim construction phase of a patent infringement action."); see, e.g., Cent. Admixture Pharmacy Servs., Inc. v. Advanced Cardiac Sols., P.C., 482 F.3d 1347, 1356 (Fed. Cir. 2007) ("The district court found that ACS waived any argument with respect to th[e] term ["maintaining"] by failing to raise it during the claim construction phase.  We agree."); Apple, 2014 WL 252045, at *3 ("If the parties wanted to tee up summary judgment positions based on particular constructions, they 'could (and should) have sought . . . construction[s] to [those] effect[s].'").

Nevertheless, on this record, the Court declines to find that Cerner waived its arguments with respect to the claim term "a [first/second] end user device in the [first/second] enterprise facility."  As explained below, Cerner's position is supported by the plain and ordinary meaning of the claim language.  See infra.  In addition, in the parties' February 14, 2022 joint claim construction chart, Cerner set forth in an impact statement its contention that the accused services do not satisfy the limitations in independent claim 1 because: (1) the claim language does not permit access by "devices that are not 'in the

16

[first/second] enterprise facility;'" and (2) the accused services allow healthcare data to be accessed "on different devices and . . . by personnel beyond a single enterprise." (Dkt. No. 63-1 at A14–A15.)   Thus, this particular non-infringement contention was raised to CliniComp during the claim construction phase of the case well in advance of the filing of the parties' claim construction briefs.   In light of this, CliniComp, not Cerner, bore the burden of raising this issue to the Court during the claim construction phase of the case. Accordingly, because the parties dispute the scope of the claim term "a [first/second] end user device in the [first/second] enterprise facility," it is the Court's duty to resolve that dispute.   See O2 Micro, 521 F.3d at 1362; Eon, 815 F.3d at 1318.

Here, Cerner contends that this claim term requires that the user device be physically located in the healthcare enterprise's facilities.  (Dkt. No. 109 at 1-3; see also Dkt. No. 99-1 at 13, 15.)   In response, CliniComp argues that the claim term permits "the user and user device [to] be remote from the healthcare enterprise." (Dkt. 106 at 6.)  CliniComp argues that the Court's construction for this claim term should not restrict the user devices to any particular physical location or building.  (Id. at 7.)

The Court begins its analysis of the parties' dispute by reviewing the claim language. Independent claim 1 of the '647 Patent recites: "a [first/second] end user device in the [first/second] enterprise facility."  '647 Patent col. 14 ll. 13-14.  The plain and ordinary meaning of the word "in" in this context is to indicate "location or position within something."   THE BRITANNICA DICTIONARY,  https://www.britannica.com/dictionary/in (defining "in" as "used to indicate location or position within something"); see MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/in (defining "in" as "used as a function word to indicate inclusion, location, or position within limits"); see also Phillips, 415 F.3d at 1314 (explaining that the use of general purposes dictionaries "may be helpful" in cases that involve "little more than the application of the widely accepted meaning of commonly understood words").  And the plain and ordinary meaning of the word "facility" in this context is something (such as a building) that is built for a specific purpose.   See THE BRITANNICA DICTIONARY,  https://www.britannica.com/dictionary/

facility (defining "facility" as "something (such as a building or large piece of equipment) that is built for a specific purpose"); MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/facility (defining "facility" as "something (such as a hospital) that is built, installed, or established to serve a particular purpose"); CAMBRIDGE DICTIONARY, https://dictionary.cambridge.org/us/dictionary/english/facility (defining "facility" as "a place, especially including buildings, where a particular activity happens"). As such, the claim language supports Cerner's contention that the term "device in the [first/second] enterprise facility" requires that the claimed device be physically located within the healthcare enterprise's physical locations (*i.e.*, the healthcare enterprise's hospitals or other buildings).

Turning to the specification, CliniComp argues: "One of the key features of the '647 patent is the fact the user and the user device may be remote from the healthcare enterprise." (Dkt. No. 106 at 6.) CliniComp is mistaken and that contention is not supported by the specification. When the specification uses the word "remote," it does so only to describe the remote hosting of the applications (*i.e.*, that the applications and the application server are remote from the healthcare enterprise and its users). The specification never describes the users or user devices as being remote from the healthcare enterprise. For example, the specification states: "The enterprise healthcare management system and method includes remotely hosting turnkey health care applications and providing enterprise users access to the turnkey applications via a public network such as the Internet." '647 Patent col. 2 ll. 61-65; <u>accord id.</u> at [57] (Abstract); <u>see also id.</u> at col. 3 ll. 2 ("the turnkey applications are remotely hosted"), col. 4 ll. 20-22 ("This turnkey solution operates at a single location remote from the healthcare enterprise."), col. 4 ll. 25-26 ("the enterprise is using the Internet to access the remotely hosted applications"), col. 8 ll. 31 ("remote applications"), col. 12 ll. 61-63 ("That application server remotely hosts turnkey healthcare management application suites."), col. 13 ll. 43-44 ("the application server remotely hosts the suite of health care applications"). In an effort to support its argument, CliniComp notes that in one passage the specification uses the term "remote

user." (Dkt. No. 106 at 6.)  In the cited passage, the specification states:  "Such a redundant system linking to the Internet at a major point of presence provides an extremely high quality of service for any remote user accessing the application server 24."  '647 Patent col. 4 ll. 1-4.  But, here, the specification is again only referring to the application server being "remote" from the user, not that the user is remote from the healthcare enterprise.

Further, the specification always refers to the healthcare enterprises as being comprised of physical healthcare facilities (for example, hospitals and point-of-care facilities). See, e.g., '647 Patent col. 1 ll. 33-36 ("Health care enterprises can be expansive, encompassing hundreds of doctors and many point of care facilities, or can be more modest insize.  Indeed, many health care enterprises consist of only a single facility such as a hospital."), col. 4 ll. 6-7 ("Healthcare enterprises are established in differing physical and administrative configurations."), col. 7 ll. 56-58 ("The single facility enterprise 14 is typically a single stand-alone hospital."), col. 8 ll. 46-49 ("A healthcare enterprise may comprise[] several point of care facilities interconnected with an intranet.  For example, intranet enterprise 16 comprises hospital 102, hospital 103, and hospital 104 connected with the intranet 123.  Although the intranet enterprise 16 is shown having separate hospital facilities, these point of care facilities may also include clinics, laboratories, or pharmacies."), col. 8 ll. 67 to col. 9 ll. 4 ("The widely distributed enterprise 18 has point of care facilities geographically dispersed with no or limited computer interconnection.  For example, widely distributed enterprise 18 shows four point of care hospitals 90-93.").[4]  In addition, the specification always refers to the user or the user device as being physically inside the facilities.  See, e.g., '647 Patent col. 4 ll. 22-24 ("Via the Internet, users at

---

[4]    At the hearing, CliniComp argued that the specification's use of the phrase "point of care facilities" supports its claim construction position because a point of care facility could include a doctor's home office via remote access to the system.  The Court disagrees.  The specification contains no such disclosure.  Rather, as shown in the above passages, when the specification identifies "point of care facilities," it only identifies "hospital[s]," "clinics, laboratories, [and] pharmacies."  See '647 Patent col. 8 ll. 46-49, col. 9 ll. 1-4.

healthcare enterprises interactively access applications in the suite 26 to perform patient, financial, or administrative tasks."), col. 6 ll. 60-61 ("a user at the nurse station device 75 of the single facility enterprise 14"), col. 8 ll. 10 ("a nurse at nurse station device 75"), col. 8 ll. 12-13 ("In a similar manner there may be a bedside device 77."), col. 8 ll. 16-17 ("The single facility enterprise 14 also has automated monitoring devices such as fetal monitor 70.  The fetal monitor device 70 has a fetal monitor 73 attached to a patient."), col. 12 ll. 7-8 ("A caregiver at the point of care facility then collects updated patient specific information . . . ."), col. 13 ll. 24-27 ("[U]sers at the healthcare enterprise can interactively use applications hosted on the application server for performing day-to-day patient and administrative functions for the healthcare enterprise.").  As such, the specification does not support and indeed contradicts CliniComp's contention that a key feature of the '647 Patent is that the user and the user device may be remote from the healthcare enterprise.  Rather, the specification – consistent with the plain and ordinary meaning of the claim language – supports Cerner's position that the user device must be physically located within a healthcare enterprise facility.[5]

In sum, Cerner's claim construction position is well supported by the plain and ordinary meaning of the claim language and the specification of the '647 Patent.  As such, the Court adopts Cerner's claim construction position, and the Court rejects CliniComp's claim construction position.  The Court construes that claim term "a [first/second] end user device in the [first/second] enterprise facility" as "the [first/second] end device is physically located within a [first/second] healthcare enterprise facility."

With that claim construction issue resolved, it is clear that the accused services do

---

[5]     The Court is mindful of its obligation not to import limitations from preferred embodiments described in the specification into the claims.  See Dealertrack, 674 F.3d at 1327; Openwave, 808 F.3d at 514.  But that is not what the Court is doing here.  Rather, the Court is simply noting that the specification is consistent with the plain and ordinary meaning of that relevant claim language, and the specification contradicts CliniComp's claim construction position, which deviates from that plain and ordinary meaning.

not satisfy the "only accessible to the [first/second] end user device" "in the [first/second] enterprise facility" limitation under a literal infringement analysis as a matter of law.  The plain language of claim 1 states that the claimed "healthcare data" is "only accessible to the [first/second] end user device" "in the [first/second] enterprise facility."  See '647 Patent col. 14 ll. 14-18, 42-45.  Under the Court's construction of the relevant claim terms,[6] that limitation requires that an enterprise's healthcare data is only accessible to user devices physically located inside that healthcare enterprise's facilities.

Cerner has presented the Court with evidence showing that the accused services allow for healthcare data to be accessed by any device with an internet connection at any location.  (See Dkt. No. 103 at 1-4; Dkt No. 103, Ex. 4 at 119 ("It's all running remotely through Citrix so they can log in from anywhere.  I could be at a hospital in Oklahoma, you know, and I would log in the same way as if I was visiting Hawaii."); Ex. 6 at 138 ("Any device that has an internet application would be able to access Lights On, so laptop, phone, tablet, just as long as you can get to an internet site, and you have, of course, a Cerner Care account, you'd be able to get into Lights On.").)  CliniComp does not dispute this evidence.  Indeed, at the hearing, CliniComp conceded that the digital workspace utilized by the accused services is not restricted to any particular location.[7]  In addition, CliniComp's own expert, Mr. Davis, states that the CommunityWorks and PowerWorks accused services

---

[6]     The claim term "wherein healthcare data in the first portion of the database is only accessible to the first end user device and healthcare data in the second portion of the database is only accessible to the second end user device" and the claim term "a [first/second] end user device in the [first/second] enterprise facility."

[7]     In its Statement of Disputed Material Facts in Response to Cerner's Separate Statement of Undisputed Material Facts, CliniComp notes that when users access the accused services, "they experience the same digital workspace regardless of their physical location."  (Dkt. No. 108 at 1, 5.)  But even assuming that is true, that is insufficient to satisfy the relevant claim language under the Court's claim constructions, which requires that the claimed device be physically located within the relevant healthcare enterprise's facilities.

utilize Citrix Workspace, which "delivers secure and unified access to apps, desktops, and content (resources) *from anywhere, on any device*."  (Dkt. No. 108-16, Davis Decl. ¶¶ 13-14 (emphasis added).)  Mr. Davis also states that the Lights On accused services "is a web application [and] is available via https://lightson.cerner.com."  (Id. ¶ 27.)  As such, it is undisputed that the accused services permit devices to access a healthcare enterprise's healthcare information from locations physically outside the enterprise's facilities.  Under those undisputed facts, no reasonable jury could conclude that the accused services literally satisfy the "only accessible to the [first/second] end user device" "in the [first/second] enterprise facility" claim limitation.  As such, Cerner has demonstrated by undisputed facts that the accused services do not literally infringe claim 1 of the '647 Patent.  See Aristocrat, 709 F.3d at 1362 (explaining that to establish infringement of a method claim, "a patentee must prove that each and every step of the method or process was performed").

In a footnote, CliniComp contends that a reasonable jury could find the "only accessible to . . ." claim limitation to be present in the accused services under the doctrine of equivalents.  (Dkt. No. 106 at 9 n.6.)  In response, Cerner argues that CliniComp cannot rely on the doctrine of equivalents because CliniComp never asserted doctrine of equivalents theories in its infringement contentions.  (Dkt. No. 99-1 at 24-25; Dkt. No. 109 at 4.)

"The Court's Patent Local Rules 'are designed to require parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed.'"  Wi-LAN Inc. v. LG Elecs., Inc., No. 18-CV-01577-H-BGS, 2019 WL 5790999, at *2 (S.D. Cal. Sept. 18, 2019) (quoting Nova Measuring Instruments Ltd. v. Nanometrics, Inc., 417 F. Supp. 2d 1121, 1123 (N.D. Cal. 2006)); accord O2 Micro, 467 F.3d at 1366 n.12; see MyGo, LLC v. Mission Beach Indus., LLC, No. 16-CV-2350-GPC-RBB, 2018 WL 3438650, at *5 (S.D. Cal. July 17, 2018) (explaining that "the general policy rationale of the Local Patent Rules" requires "that plaintiffs crystallize their patent infringement theories in the early stages of litigation").  The Patent Local Rules accomplish this "by requiring both the plaintiff and the defendant in patent cases to provide early notice

of their infringement and invalidity contentions, and to proceed with diligence in amending those contentions when new information comes to light in the course of discovery.  The rules thus seek to balance the right to develop new information in discovery with the need for certainty as to the legal theories."  O2 Micro, 467 F.3d at 1365–66.

"A district court has wide discretion in enforcing the Patent Local Rules." LookSmart Grp., Inc. v. Microsoft Corp., No. 17-CV-04709-JST, 2019 WL 7753444, at *2 (N.D. Cal. Oct. 17, 2019); accord Nichia Corp. v. Feit Elec. Co., Inc., No. CV 20-359-GW-EX, 2022 WL 4613591, at *3 (C.D. Cal. Feb. 15, 2022); see Howmedica Osteonics Corp. v. Zimmer, Inc., 822 F.3d 1312, 1320 (Fed. Cir. 2016) (reviewing "a district court's application of its local rules for abuse of discretion").  The Federal Circuit will "affirm decisions in which [a] district court enforced its own local rules, unless it is 'clearly unreasonable, arbitrary, or fanciful; based on erroneous conclusions of law; clearly erroneous; or unsupported by any evidence.'"  Howmedica Osteonics, 822 F.3d at 1324; see also Mortg. Grader, Inc. v. First Choice Loan Servs. Inc., 811 F.3d 1314, 1321 (Fed. Cir. 2016) ("'[T]his court defers to the district court when interpreting and enforcing local rules so as not to frustrate local attempts to manage patent cases according to prescribed guidelines.'").

Patent Local Rule 3.1(e) provides that a party's "Disclosure of Asserted Claims and Infringement Contentions" must contain the following information, among other things: "[w]hether each element of each asserted claim is claimed to be literally present and/or present under the doctrine of equivalents in the Accused Instrumentality."  S.D. Cal. Pat. L.R. 3.1(e).  Patent Local Rule 3.6(a) further provides that after the filing of the parties' Joint Claim Construction Chart, a party asserting a claim of patent infringement may only amend its infringement contentions "absent undue prejudice to the opposing party" and:

1. If, not later than thirty (30) days after service of the Court's Claim Construction Ruling, the party asserting infringement believes in good faith that amendment is necessitated by a claim construction that differs from that proposed by such party; or

2. Upon a timely motion showing good cause.

S.D. Cal. Pat. L.R. 3.6(a); see also Regents of Univ. of California v. Affymetrix, Inc., No. 17-CV-01394-H-NLS, 2018 WL 4053318, at *2 (S.D. Cal. Aug. 24, 2018) ("In contrast to the more liberal policy for amending pleadings, the philosophy behind amending contentions under the Patent Local Rules is decidedly conservative, and designed to prevent the 'shifting sands' approach to claim construction." (quoting Verinata Health, Inc. v. Ariosa Diagnostics, Inc., 236 F. Supp. 3d 1110, 1113 (N.D. Cal. 2017)).

"'In a lawsuit for patent infringement in the Southern District of California, a patentee is limited to the infringement theories it sets forth in its infringement contentions.'" Wi-LAN, 2019 WL 5790999, at *2; accord Multimedia Pat. Tr. v. Apple Inc., No. 10-CV-2618-H KSC, 2012 WL 6863471, at *14 (S.D. Cal. Nov. 9, 2012); see also LookSmart, 2019 WL 7753444, at *2 ("Once served, the infringement contentions constitute the universe of infringement theories."). Indeed, the Federal Circuit has held that a party asserting a claim of infringement waives its right to raise infringement under the doctrine of equivalents by failing to timely disclose it in its infringement contentions. See, e.g., Teashot LLC v. Green Mountain Coffee Roasters, Inc., 595 F. App'x 983, 987-88 (Fed. Cir. 2015) (affirming district court's holding that plaintiff waived its right to raise infringement under the doctrine of equivalents by failing to timely disclose it as an infringement theory its infringement contentions); see also Droplets, Inc. v. E*TRADE Fin. Corp., No. 12 CIV. 2326, 2015 WL 1062670, at *3 (S.D.N.Y. Mar. 9, 2015) ("[I]nfringement by equivalents is waived if not included in infringement contentions."); PersonalWeb Techs. LLC v. Int'l Bus. Machines Corp., No. 16-CV-01266-EJD, 2017 WL 2180980, at *16 (N.D. Cal. May 18, 2017) ("Courts in this district have cited deficient infringement contentions as additional bases for granting summary judgment of noninfringement with respect to doctrine of equivalents.").

Following the Court's issuance of the claim construction order on July 28, 2022, CliniComp served its amended infringement contentions on Cerner on August 29, 2022. (Dkt. No. 103, Ex. 2.) In its amended infringement contentions, CliniComp does not specifically identify any claim limitations as being present in the accused services under

the doctrine of equivalents.  (See generally id. at 7-35.)  In the August 29, 2022 amended infringement contentions, CliniComp merely states: "To the extent that any element is found to be not literally present, CliniComp reserves the right to assert that each such claim element is present in the Accused Instrumentalities under the doctrine of equivalents." (Id. at 3.)  A general reservation of the right to assert infringement under the doctrine of equivalents does "does not satisfy [a plaintiff]'s obligation to disclose its infringement analysis as required by the rules of this District Court."  Sonix Tech. Co. v. Yoshida, No. 12CV380-CAB (DHB), 2014 WL 11899474, at *3 (S.D. Cal. Dec. 12, 2014); see, e.g., PersonalWeb, 2017 WL 2180980, at *15 ("Blanket reservations of rights are not sufficient."); see also Finjan, Inc. v. Proofpoint, Inc., No. 13-CV-05808-HSG, 2015 WL 9460295, at *1 (N.D. Cal. Dec. 23, 2015) ("Such a general disclaimer would be contrary to the local rule's requirement that parties crystallize their theories early in the litigation.").  Rather, in order to properly assert an infringement theory under the doctrine of equivalents in compliance with the Court's Patent Local Rules, a patentee must provide "a limitation-by-limitation" analysis as to why and how there is infringement under the doctrine of equivalents.  See Ameranth, Inc. v. Pizza Hut, Inc., No. 12CV1627 JLS NLS, 2013 WL 3894880, at *5 (S.D. Cal. July 26, 2013); Finjan, Inc. v. Sophos, Inc., No. 14-CV-01197-WHO, 2015 WL 5012679, at *4 (N.D. Cal. Aug. 24, 2015); see also Mirror Worlds, 692 F.3d at 1357 ("'[T]he doctrine of equivalents must be applied to individual limitations of the claim, not to the invention as a whole.'").  CliniComp did not provide any such limitation-by-limitation doctrine of equivalents analysis in its infringement contentions. (See generally Dkt. No. 103, Ex. 2 at 7-35.)  As such, CliniComp waived its right to raise doctrine of equivalents by failing to properly disclose that theory of infringement in its infringement contentions.[8]  See, e.g., Teashot, 595 F. App'x at 987-88; Sonix, 2014 WL

---

[8]    CliniComp argues that the doctrine of equivalents should remain available to it on this issue because Cerner only first disclosed its reliance on the "in" the enterprise facility claim language as a basis for non-infringement in a September 2, 2022 supplemental

1  11899474, at *3; <u>Droplets</u>, 2015 WL 1062670, at *3.

2  　　　Further, even if the Court were to assume that CliniComp did not waive doctrine of

3  equivalents, CliniComp's single footnote is insufficient to raise a genuine dispute of fact

4  as to infringement under the doctrine of equivalents as to the "only accessible to . . ." claim

5  limitation.   In the footnote, CliniComp simply argues in a conclusory manner that a

6  reasonable jury could find the presence of this claim limitation under the doctrine of

7  equivalents.  (Dkt. No. 106 at 9 n.6.)  CliniComp does not even attempt to analyze any of

8  the evidence in the record under either the insubstantial differences test or the function-

9  way-results test.  Cf. <u>Akzo Nobel Coatings, Inc. v. Dow Chem. Co.</u>, 811 F.3d 1334, 1342

10  (Fed. Cir. 2016) ("A patentee must establish 'equivalency on a limitation-by-limitation

11  basis' by 'particularized testimony and linking argument' as to the insubstantiality of the

12  differences between the claimed invention and the accused device or process.").   And

13  CliniComp does not address Cerner's claim vitiation argument.  (<u>See</u> Dkt. No. 99-1 at 24.)

14  <u>See</u> <u>UCB</u>, 927 F.3d at 1282 ("'Under the doctrine of equivalents, an infringement theory .

15  . . fails if it renders a claim limitation inconsequential or ineffective.'" (quoting <u>Akzo Nobel</u>

16  <u>Coatings</u>, 811 F.3d at 1342)); <u>Duncan Parking Techs., Inc. v. IPS Grp., Inc.</u>, 914 F.3d 1347,

17  1362 (Fed. Cir. 2019) ("the doctrine of equivalents cannot be used to effectively read out

18

19  _____

20  interrogatory response, which was after CliniComp served its amended infringement
21  contentions on August 29, 2022. (Dkt. No. 106 at 9 n.6.)  CliniComp's contention is not
   supported by the record.  In the parties' February 14, 2022 joint claim construction chart,
22  Cerner set forth in an impact statement its contention that the accused services do not
23  satisfy the limitations in independent claim 1 because: (1) the claim language does not
   permit access by "devices that are not 'in the [first/second] enterprise facility;'" and (2) the
24  accused services allow healthcare data to be accessed "on different devices and . . . by
25  personnel beyond a single enterprise." (Dkt. No. 63-1 at A-14–A-15; <u>see also</u> Dkt. No. 71
   at 21 ("[T]he '647 Patent never describes computing devices (apart from the server) being
26  located anywhere but the healthcare enterprise facilities."); Dkt. No. 72 at 9 ("Cerner's
27  emphasis on the location of the user device is also misplaced.").)  Thus, this particular non-
   infringement contention was first raised to CliniComp more than six months prior to the
28  service of its August 29, 2022 amended infringement contentions.

1   a claim limitation").

2       In sum, Cerner has demonstrated that the accused services do not satisfy the "only

3   accessible to the [first/second] end user device" "in the [first/second] enterprise facility"

4   limitation in independent claim 1 of the '647 Patent as a matter of law.  As such, Cerner

5   has demonstrated that it is entitled to summary judgment of non-infringement as to

6   independent claim 1 of the '647 Patent.  See Advanced Steel Recovery, 808 F.3d at 1317

7   (explaining "[s]ummary judgment of noninfringement is proper when no reasonable jury

8   could find that every limitation recited in a properly construed claim is found in the accused

9   device either literally or under the doctrine of equivalents.").

10          B.      The "Storing . . ." Claim Limitation

11      Cerner argues that it is entitled to summary judgment of non-infringement because

12  the accused services do not satisfy the "storing the processed [first/second] healthcare data

13  in a [first/second] portion of the database associated with the [first/second] healthcare

14  enterprise facility" limitation in independent claim 1 of the '647 Patent.  (Dkt. No. 99-1 at

15  12-16.)  In response, CliniComp argues that Cerner's non-infringement argument relies on

16  an overly narrow reading of the Court's claim construction for the claim term "portion[s],"

17  and that the processes used by the accused services satisfy each element of the Court's

18  construction for that claim term.  (Dkt. No. 106 at 11-13.)

19      Independent claim 1 of the '646 Patent recites:

20      1. A method of operating an enterprise healthcare management system for a
21      first healthcare enterprise facility and a second healthcare enterprise facility
        independent of the first healthcare enterprise facility, comprising:
22
        . . .
23
24      **storing the processed first healthcare data in a first portion of the
        database associated with the first healthcare enterprise facility and
25      storing the processed second healthcare data in a second portion of the
        database associated with the second healthcare enterprise facility**;
26  '647 Patent col. 14 ll. 8-11, 25-30 (emphasis added).  In the claim construction order, the

27  Court construed the claim term "[first/second] portion of the database associated with the

28  [first/second] healthcare enterprise facility" as "a specific arrangement of data structures

of the database that separates the data associated with the [first/second] healthcare enterprise facility from data associated with any other healthcare enterprise facility, wherein the claimed [first/second] 'portion' is not created by merely identifying data or associating subsets of data with common values (*i.e.*, indexing by an identifier), and the [first/second] portion of the database is created before the claimed 'storing' of 'data' occurs, and restricts access to data therein to protect data associated with the [first/second] healthcare enterprise facility from access by any other healthcare enterprise facility."[9] (Dkt. No. 91 at 17-18.)

In order to satisfy the "storing . . ." limitation, the accused services must utilize a database with "portion[s]."  <u>See</u> '647 Patent col. 14 ll. 25, 28.  And under the Court's claim construction and the other claim language in the "storing . . ." limitation, in order for something within the accused services to be the claimed "portion," it must meet the following five requirements:

1.     The "portion" stores processed healthcare data, <u>see</u> '647 Patent col. 14 ll. 25

---

[9]     The Court's construction of this claim term was primarily based on several clear and unmistakable prosecution disclaimers that CliniComp made during the IPR proceedings as to the '647 Patent.  (<u>See</u> Dkt. No. 91 at 12-16.)  <u>See</u> <u>Aylus Networks, Inc. v. Apple Inc.</u>, 856 F.3d 1353, 1361 (Fed. Cir. 2017) (explaining that "statements made by a patent owner during an IPR proceeding" can constitute prosecution disclaimer so long as the statements are "'both clear and unmistakable'").  Notably, during the oral hearing before the PTAB in the relevant IPR proceedings, CliniComp made several clear and detailed arguments regarding the proper scope of the "storing . . ." limitation in an effort to distinguish claim 1 of the '647 Patent from the prior art reference Johnson.  (<u>See generally</u> Dkt. No. 71-2, Ex. E.)  <u>See</u> <u>MBO Lab'ys, Inc. v. Becton, Dickinson & Co.</u>, 474 F.3d 1323, 1330 (Fed. Cir. 2007) ("Prosecution arguments like this one which draw distinctions between the patented invention and the prior art are useful for determining whether the patentee intended to surrender territory, since they indicate in the inventor's own words what the invention is not."); <u>see also</u> <u>Computer Docking Station Corp. v. Dell, Inc.</u>, 519 F.3d 1366, 1374 (Fed. Cir. 2008) (explaining that a patentee may limit the scope of a claim term "by clearly characterizing the invention in a way to try to overcome rejections based on prior art").

("storing the processed first healthcare data in a first portion");[10]

2.    The "portion" is "a specific arrangement of data structures of the database that separates the data associated with the [first/second] healthcare enterprise facility from data associated with any other healthcare enterprise facility" (Dkt. No. 91 at 17);

3.    The "portion" "is not created by merely identifying data or associating subsets of data with common values (*i.e.*, indexing by an identifier)" (id.);

4.    The "portion" "is created before the claimed 'storing' of 'data' occurs" (id.); and

5.    The "portion" "restricts access to data therein to protect data associated with the [first/second] healthcare enterprise facility from access by any other healthcare enterprise facility" (id. at 17-18).[11]

The parties agree that the Community Works and PowerWorks accused services are "multi-tenant" solutions in which multiple clients share and store their data in a single instance or "domain" of the Millennium database.  (See Dkt. No. 99-1 at 8-9; Dkt. No. 103, Ex. 2 at 10-11, 22; Dkt. No. 108-16, Davis Decl. ¶ 12.)  In an effort to demonstrate that the accused services satisfy the "storing . . ." limitation, CliniComp identifies the following process utilized by the accused services:

> In [CommunityWorks, PowerWorks, and LON], when a user requests information from the DBMS, programming in the database compiles the

---

[10]    During the IPR proceedings, CliniComp's counsel explained: "You store the Scripps Health data in the first portion of the database that is associated with Scripps Health.  And you store the Sharp Medical Hospital data in the portion of the database that is associated with Sharp Medical."  (Dkt. No. 71-2, Ex. E at E-5.)

[11]    In the claim construction order, the Court also held that CliniComp made clear and unmistakable disclaimers during the IPR proceedings requiring that the claimed "portion" also be "'separate and distinct and having [its] own management.'"  (Dkt. No. 91 at 16 (quoting Dkt. No. 71-2, Ex. E at E-17).)  The Court declined to include this additional requirement into the Court's claim construction because, at the time, it was unclear as to why it was needed.  (See id. at 16-17.)

1
2
3
4

> request as a query or calls a database view, inserting the client ID, *i.e.*, logical domain ID or CDR_ID, to ensure that only data for the requesting client is retrieved.  The retrieved data is collected as a structured data object, or data blob, which is stored in memory as it passed back to the requesting user device, where the information is extracted from the data blob for display.

5
6
7
8
9
10
11

(Dkt. No. 106 at 12 (citing Dkt. No 108-1, Davis Decl. ¶¶ 7-8).)  CliniComp refers to this process as the "'data blob' scheme."  (Id. at 4.)  But even accepting this description of the process utilized by the accused services as correct, CliniComp has failed to demonstrate that this is sufficient to satisfy the Court's construction for the claim term "[first/second] portion of the database associated with the [first/second] healthcare enterprise facility." CliniComp has not identified anything within the accused services that satisfies the above five requirements for the claimed "portion[s]."

12
13
14
15
16
17
18
19
20
21
22
23
24

The Court begins its analysis of this issue by noting that CliniComp's briefing is vague and inconsistent as to how precisely the data blob scheme satisfies the Court's claim construction for the claim term "[first/second] portion of the database associated with the [first/second] healthcare enterprise facility."[12]  For example, the Court's claim construction requires that the claimed "portion" be "a specific arrangement of data structures of the database that separates the data associated with the [first/second] healthcare enterprise facility from data associated with any other healthcare enterprise facility." (Dkt. No. 91 at 17.)  In its opposition brief, CliniComp never identifies what precisely it considers to be "a specific arrangement of data structures of the database that separates the data."  (See generally Dkt. No. 106 at 11-13.)  CliniComp simply repeats this part of the Court's claim construction without identifying anything from the accused services or providing any analysis.  (See id. at 12.)  As such, CliniComp has entirely failed to explain how this requirement in the Court's claim construction is satisfied by the accused services.[13]

25
26
27
28

---

[12]  At the hearing, CliniComp's counsel even described its own briefing as "inarticulate."

[13]  The Court notes that in his declaration, CliniComp's expert Mr. Hendryx states:

Further, CliniComp is inconsistent as to what precisely within the data blob scheme it considers to be the claimed "portion[s]."  At times, in its opposition brief, CliniComp appears to contend that the data blobs are the claimed "portion[s]."  For example, under the Court's construction for the claim term, the claimed "portion of the database . . . restricts access to data therein to protect data associated with the [first/second] healthcare enterprise facility from access by any other healthcare enterprise facility."  (Dkt. No. 91 at 17-18.)  In an effort to demonstrate that this requirement is met, CliniComp states: "*the data blob* 'restricts access to the data therein' from access 'by any other healthcare facility.'"  (Dkt. No. 106 at 13 (emphasis added); see also id. at 4 ("This *data blob* is an arrangement of data structures of the database . . . ." (emphasis added)), at 13 (""Cerner's use of *data blobs* is not merely 'indexing by an identifier.'" (emphasis added)); Dkt. No. 108 at 8 ("extract data into structured *portions* of the database, referred to as *data blobs*" (emphasis added)), at 11 ("extract data into specific arrangements of data structures, referred to as *data blobs*" (emphasis added)).)  However, despite these numerous statements, in a subsequent filing, CliniComp states that it does not contend that the data blobs are the claimed "portion[s]."  (Dkt. No. 112 at 2 ("Cerner's reply brief, by contrast, wrongly asserts that CliniComp identified data blobs as the claimed 'portions.'"), at 1 ("Cerner's Reply falsely asserts CliniComp has identified the data blobs created by the accused Cerner systems as the claimed 'portions.'").)  Indeed, at the hearing on Cerner's motion, CliniComp conceded

---

"The data blob partitions described by Mr. Davis are each a separate arrangement of data structures of the database as required by the Court's claim construction."  Dkt. No. 106-20, Hendryx Decl. ¶ 12; see also id. ¶¶ 10-11 ("These database query restrictions create logical database partitions to separate data[.] . . . These data blobs are the logical partitions discussed above.").  But in its opposition, CliniComp does not identify or rely on this statement.  Indeed, CliniComp never even cites to paragraph 12 of Mr. Hendryx's declaration in its opposition.  (See generally Dkt. No. 106 at 11-13.)  Further, at the hearing, CliniComp conceded that the data blobs do not satisfy the Court's claim construction for the claim term "[first/second] portion of the database associated with the [first/second] healthcare enterprise facility."

that the data blobs do not satisfy the Court's claim construction for the claim term "[first/second] portion of the database associated with the [first/second] healthcare enterprise facility."[14]

_____

[14]    Cerner correctly argues that the identified "data blobs" cannot satisfy the Court's claim construction because a data blob is created after the healthcare data has already been stored in the database, not before.  (Dkt. No. 109 at 5-6.)  Under the Court's claim construction, the claimed "portion of the database is created before the claimed 'storing' of 'data' occurs."  (Dkt. No. 91 at 17.)  This part of the Court's construction was based on CliniComp's repeated clear and unmistakable disclaimers to the PTAB that the claimed "portion" is created in the database before the "storing" of the relevant "data" in the database occurs.  (See id. at 15-16; see, e.g., Dkt. No. 70-2 at E-11-12 ("JUDGE GROSSMAN: . . . And you're saying that in Claim 1, you put the information from the different sources in separate compartments, and you search only each – you have to search each compartment individually.  [CliniComp's Counsel]: I'm saying one step further.  You have to create that compartment for a particular service provider before you can put the data in, before you can do that search."), at E-7, E-10, E-11.)

Under CliniComp's own explanation of how the accused services work, the data blobs are created after the relevant data has already been stored in the database.  (See Dkt. No. 106 at 13 ("The data blob is created by executing a query or running a view *against the database storage*" and "impos[ing] the proper database query restrictions to only *extract data* for the intended client." (emphasis added)), at 12 ("*The retrieved data is collected* as a structured data object, or data blob." (emphasis added)).  In these passages, CliniComp explains that a data blob is created by performing a query on data that is already stored in database storage and then extracting/retrieving that data from database storage into a data blob.  Thus, a data blob is created after the relevant data has already been stored in the database, and, therefore, it cannot satisfy the Court's claim construction.

Cerner also correctly argues that the data blobs cannot constitute the claimed "portion[s]" because CliniComp's theory of infringement would then be invalid when the "portion of the database" limitation is considered in light of the entirely separate "query" limitation. (Dkt. No. 109 at 6.)  Independent claim 1 recites a method including a "storing" step and a "generating a query" step.  See '647 Patent col. 14 ll. 25-30, col. 14 ll. 36-41.  During the IPR proceedings, in an effort to distinguish the Johnson reference from claim 1 of the '647 Patent, CliniComp clearly and unmistakably stated that the "storing" step is separate from and occurs prior to the "query" step "[b]ecause when you get to the querying process, you have to query that portion of the database."  (Dkt. No. 71-2 at E22; see also id. at E-6–E-7, E-12.)  See Aylus, 856 F.3d at 1361; MBO, 474 F.3d at 1330.  In light of this disclaimer by CliniComp, the data blobs cannot constitute the claimed "portions."

At other times in its opposition, CliniComp appears to contend that the code for imposing the proper database query restrictions is the claimed "portion."  For example, under the Court's claim construction, the claimed "portion of the database is created before the claimed 'storing' of 'data' occurs."  (Dkt. No. 91 at 17.)  In an effort to demonstrate that this requirement is met, CliniComp states: "Cerner's portions are created before the claimed 'storing' occurs because all of the structures used to create data blobs are built into Cerner's system architecture." (Dkt. No. 106 at 13.)  CliniComp explains that the creation of the data blobs "requires developing the code for generating the query, or creating the views and associated reports to ensure that they impose the proper database query restrictions to only extract data for the intended client."  (Id.)

The problem with this contention is that if the code for imposing the proper database query restrictions constitutes the claimed "portion," then the accused services do not infringe the "storing . . ." limitation.  The method recited in claim 1 of the '647 Patent requires that the processed healthcare data is stored in the first/second portion of the database.  See '647 Patent col. 14 ll. 25-26 ("storing the processed first healthcare data in a first portion of the database").  CliniComp has not identified any evidence in the record showing that the code for the database query restrictions stores any processed healthcare data.  In its opposition brief, CliniComp only identifies the database storage and the data blobs as storing processed healthcare data.  (See generally Dkt. No. 106 at 3-4, 11-13.)  Indeed, at the hearing, CliniComp presented the Court with a demonstrative (Slide 13) showing that the "client data" (i.e., the processed healthcare data) is stored in "persistent database storage" and not in the software containing the programmed database query

---

Under CliniComp's own explanation, the data blobs are created by generating and executing a query against the database storage.  (Dkt. No. 106 at 13; see Dkt. No. 108-16, Davis Decl. ¶ 8.)  This means that if the data blobs are the claimed "portion," then the "generating a query" step cannot be satisfied because the data blobs are created subsequent to the generation and execution of query, not before the query is generated.

33

restrictions.  As such, identification of the code for imposing the database query restrictions as the claimed "portion" is insufficient to raise a genuine dispute of fact as to the "storing" limitation.  See Anderson, 477 U.S. at 256 (explaining that in order to raise a genuine dispute of fact the party must "present affirmative evidence"); see also Icon Health & Fitness, Inc. v. Strava, Inc., 849 F.3d 1034, 1043 (Fed. Cir. 2017) ("Attorney argument is not evidence.").

In addition, the identified code is also insufficient to raise a genuine dispute of fact as to the "storing . . ." limitation, because CliniComp does not identify any evidence in the record demonstrating the code at issue constitutes a specific arrangement of data structures of the database.  The Court's claim construction requires that the claimed "portion" be "a specific arrangement of data structures of the database." (Dkt. No. 91 at 17.)  The only evidence regarding this part of the Court's claim construction is a statement from CliniComp's technical expert, Mr. Hendryx, stating: "Mr. Davis describes this process as creating data blobs . . . .  These data blobs are the logical partitions . . . .  The data blob partitions . . . are each a separate arrangement of data structures of the database." (Dkt. No. 106-20, Hendryx Decl. ¶¶ 11-12.)  Mr. Hendryx says nothing about the code for imposing the proper database query restrictions being an arrangement of data structures of the database in his expert declaration.  (See generally id.)  As such, CliniComp has no evidence showing that the code at issue satisfies that part of the Court's claim construction. See Anderson, 477 U.S. at 256; Icon Health & Fitness, 849 F.3d at 1043.

Moreover, regardless of whether the data blobs or the code for database query restrictions are the claimed "portion[s]," the data blob scheme identified by CliniComp does not satisfy the Court's construction for the claim term "[first/second] portion of the database associated with the [first/second] healthcare enterprise facility" because under the process described by CliniComp, the relevant healthcare data for a particular enterprise is separated from data associated with other enterprises merely through indexing by an identifier.  The Court's claim construction requires that "the claimed [first/second] 'portion' is not created by merely identifying data or associating subsets of data with

common values (*i.e.*, indexing by an identifier)." (Dkt. No. 91 at 17.) This portion of the Court's claim construction was based on CliniComp's concession in its claim construction briefing that it disclaimed during the IPR proceedings that "indexing alone is insufficient to create the claimed database portions." (Dkt. No. 72 at 2; see Dkt. No. 91 at 14-15; Dkt. No. 63-1 at A2; see also Dkt. No. 71-2 at E-8–E-12; Dkt. No. 71-2, Ex. D at D-85–D-86.)

CliniComp explains that, under the data blob scheme, when a user requests information from the database, programming in the database compiles the request as a query and this query contains "database query restrictions," meaning that the query is modified to include the Logical Domain ID of the relevant healthcare enterprise. (Id. at 4, 12; see Dkt. No. 108 at 8, 11.) This insertion of the "the [relevant] Client ID, *i.e.*, a logical domain ID" into the query ensures "that only data for the requesting client is retrieved." (Dkt. No. 106 at 12; see also id. at 13; Dkt. No. 106-20, Hendryx Decl. ¶ 10.) CliniComp explains that the query is then executed against the database storage and the relevant data is extracted into data blobs, and the data blob is then passed back through the system to the user. (Dkt. No. 106 at 4, 13.) CliniComp's expert Mr. Davis provides additional details as to this process, explaining:

> f. Crmrtl.dll communicates the request to the Millennium platform. **Before** the request is transmitted crmrtl.dll obtains the user[']s Logical Domain and includes that value as metadata within the request sent to Millennium.

> g. The millennium platform receives the request to execute program 250072. It loads that program and sends it through ccllib, which complies the program into a SQL query. At this point the library uses the user's logical domain value which was included by crmrtl.dll as additional selection criteria are added wherever a table needs to be filtered by Logical Domain.

> h. The compiled CCL query is sent to the database driver, in this example ccloracle, which will execute the query, read the results into memory as a structured object, and then returns that object. This object will include details about the fields returned as well as the data itself.

> i. The Millennium platform returns the above structured data blob to the original customer.

(Dkt. No. 108-16, Davis Decl. ¶ 8 (emphasis in original).)

This process is precisely what CliniComp described to the PTAB as constituting indexing under a given unique provider ID and as being insufficient to satisfy the "storing" limitation in claim 1. CliniComp describes a logical domain ID as a client identifier ("client ID") for a particular healthcare enterprise. (See Dkt. No. 106 at 1, 4, 12.) Thus, it is a unique provider ID. Further, during the IPR proceedings, CliniComp used the following analogy to describe indexing:

> The best analogy I can give you is, I had my Outlook calendar and Outlook contacts. I've got hundreds of contacts.
>
> If I want to do a search and find my colleagues or friends at Kirkland & Ellis, because I happen to need them, I can type that in, and all of a sudden, that whole database from Outlook is queried, and low and behold, my four or five contacts from Kirkland show up.
>
> That is what is being disclosed here. That's what indexing does. You still search the full database.

(Dkt. No. 71-2, Ex. E at E-11; see also id. at E22 ("All they've shown you is the ability to identify that service provider data using an indexing technology. It's the same as saying I can go to Outlook, I can find my Kirkland friends, I have that subset of database.").) CliniComp's description of the accused services' use of logical domain IDs to create data blobs aligns with this analogy. Just as in CliniComp's example Outlook utilizes an identifier for the law firm Kirkland & Ellis as a selection criteria when searching the database in order to return only a subset of data associated with that particular law firm, the accused services utilize the logical domain ID as a selection criteria when querying the database storage in order to return only a subset of data associated with that particular client (healthcare enterprise). (See Dkt. No. 108-16, Davis Decl. ¶ 8 (describing the user's logical domain value "as additional selection criteria" used to "filter[] by Logical Domain").) As such, CliniComp's identification of the data blob scheme utilized by the accused services does not satisfy the Court's claim construction for this additional reason.

In addition, Cerner argues that CliniComp's reliance on the data blob scheme cannot raise a genuine dispute of fact as to the "storing . . ." limitation because it contradicts representations CliniComp made to the PTAB during the IPR proceedings regarding what

CliniComp described as "replication." (Dkt. No. 109 at 6-7.) The Court agrees with Cerner. During the IPR proceedings, in an effort to distinguish claim 1 of the '647 patent from the prior art reference Johnson, CliniComp argued that Johnson merely disclosed "replication," which is insufficient to satisfy the "storing" limitation in claim 1. (Dkt. No. 71-2 at E-13E-15, E-23.) CliniComp explained:

> Just from common sense logic, you take this big database, you take a small copy of it, and you make a copy and put it somewhere else, you haven't changed the database.

> The claim limitation says, "Storing the limitation in a first portion." When you take a subcomponent of it and copy it elsewhere, you haven't changed the database at all, and that cannot possibly be a basis for meeting this claim limitation.

(Id. at E-23.) See Aylus, 856 F.3d at 1361; MBO, 474 F.3d at 1330. CliniComp describes the data blob scheme utilized by the accused services as executing a query with database query restrictions against database storage to extract a subcomponent of data into a structured data object, a data blob, (i.e., taking a "small copy of" the data) and then storing the data blob in memory as it is passed back to the requesting user device (i.e., and "put[ting] it somewhere else"). (See Dkt. No. 106 at 12-13.) CliniComp stated during the IPR proceedings that this "cannot possibly be a basis for meeting" the "storing" limitation in claim 1 because "you haven't changed the database at all." (Dkt. No. 71-2, Ex. E at E-23.) The Court is entitled to take CliniComp "at its word" with respect to these statements regarding the proper scope of the "storing" limitation. Microsoft Corp. v. Multi-Tech Sys., Inc., 357 F.3d 1340, 1350 (Fed. Cir. 2004) ("We take the patentee at its word and will not construe the scope of the [patent-in-suit]'s claims more broadly than the patentee itself clearly envisioned."); see also Aylus, 856 F.3d at 1360 ("[T]he doctrine of prosecution disclaimer ensures that claims are not 'construed one way in order to obtain their allowance and in a different way against accused infringers.'").

Finally, CliniComp notes that in certain materials, Cerner has stated that the accused services utilize "logical entity partitions." (Dkt. No. 106 at 10-11 (citing Dkt. No. 108-7, Ex. H at 6, 9; Dkt. No. 108-8, Ex. I at 6).) But this evidence is insufficient to create a

genuine dispute of fact as to the "storing . . ." limitation.  An infringement analysis requires that the factfinder compare the accused services to the properly construed claims.  <u>See Niazi</u>, 30 F.4th at 1350; <u>JVW</u>, 424 F.3d at 1329.  The Court's construction of the claim term "[first/second] portion of the database associated with the [first/second] healthcare enterprise facility" does not reference "logical entity partitions."  (<u>See</u> Dkt. No. 91 at 17-18.)  As such, utilization of logical entity partitions, by itself, is insufficient to demonstrate that the accused services satisfy the Court's claim construction for this limitation.[15]

In sum, CliniComp has failed to present evidence demonstrating a genuine dispute of fact as to whether the accused services satisfy the "storing . . ." limitation.  Even viewing the evidence in the light most favorable to CliniComp and even accepting CliniComp's explanation in its opposition of how the accused services work, no reasonable juror could conclude from CliniComp's evidence that the accused services satisfy the Court's construction for the claim term "[first/second] portion of the database associated with the [first/second] healthcare enterprise facility."  As such, Cerner is entitled to summary judgment of non-infringement as to independent claim 1 of the '647 Patent on this additional basis.  <u>See Advanced Steel Recovery</u>, 808 F.3d at 1317 (explaining "[s]ummary judgment of noninfringement is proper when no reasonable jury could find that every

---

[15]     The Court notes that during the IPR proceedings, CliniComp argued that what Cerner referred to as "logical partitions" in the Johnson reference (indexing associated with a unique provider ID) was not "partitioning" and was insufficient to satisfy the "storing" limitation in claim 1.  (<u>See</u> Dkt. No. 71-2, Ex. E at E-8–E-12.)  In addition, during those proceedings, CliniComp's expert Dr. Bergeron explained in a declaration that "partitioning is when a database is 'split into disjoint parts and stored [separately].'"  (Dkt. No. 71-2, Ex. D at D-85.)  In its written decision, the PTAB agreed with CliniComp's argument and cited favorably to Dr. Bergeron's explanation of partitioning.  (<u>See</u> Dkt. No. 71-2, Ex. D at D-85–D-86.)  Further, that winning argument before the PTAB formed the basis for the Court's inclusion of the requirement that "the claimed [first/second] 'portion' is not created by merely identifying data or associating subsets of data with common values (i.e., indexing by an identifier)" in its claim construction for this claim term.  (<u>See</u> Dkt. No. 91 at 14-15.)

limitation recited in a properly construed claim is found in the accused device either literally or under the doctrine of equivalents.").

### C.    CliniComp's Motion for Leave to File a Sur-Reply

CliniComp moves for leave to file a sur-reply brief.  (Dkt. No. 112.)  In its motion for leave, CliniComp contends that it needs to file a sur-reply to "correct Cerner's assertion that CliniComp is contending that data blobs themselves are the claimed 'portions/partitions'" and to respond to certain arguments made by Cerner based on that purportedly incorrect assertion.  (Dkt. No. 112 at 2-3.)  In response, Cerner argues that CliniComp's motion for leave should be denied because its reply brief properly responded to the data blob arguments that CliniComp explicitly raised for the first time in its opposition brief and expert declaration.  (Dkt. No. 116 at 1, 3-4.)

"Courts generally view motions for leave to file a sur-reply with disfavor." Whitewater W. Indus., Ltd. v. Pac. Surf Designs, Inc., No. 317CV01118BENBLM, 2018 WL 3198800, at *1 (S.D. Cal. June 26, 2018); accord Nat'l Cas. Co. v. Nat'l Strength & Conditioning Ass'n, No. 18-CV-1292 JLS (KSC), 2020 WL 2991508, at *1 (S.D. Cal. June 4, 2020).  "Neither the federal rules nor the local rules permit a sur-reply as a matter of course." Whitewater W. Indus., 2018 WL 3198800, at *1.  Nevertheless, "'permitting the filing of a sur-reply is within the discretion of the district court,' but 'only where a valid reason for such additional briefing exists.'" Nat'l Cas., 2020 WL 2991508, at *1 (quoting Whitewater W. Indus., 2018 WL 3198800, at *1).

Here, CliniComp contends that it needs to file a sur-reply to clarify that it is not asserting that the data blobs are the claimed "portion[s]." (Dkt. No. 112 at 2.)  But to the extent CliniComp contends this clarification is needed, CliniComp makes that clarification itself in its motion for leave.  (See id. at 1-2.)  CliniComp also provided that clarification at the hearing on Cerner's motion.  And the Court has acknowledged that clarification and included it in its analysis of the "storing . . ." limitation above.  See supra Section III.B.  As such, no further clarification via a separate sur-reply brief is needed.

Further, the Court rejects CliniComp's contention that Cerner's reply brief

1   improperly contains new arguments.  (See Dkt No. 112 at 2-3.)  Cerner's motion for

2   summary judgment was based in part on its contention that the accused services do not

3   satisfy the "storing . . ." limitation in independent claim 1 of the '647 Patent.  (See Dkt.

4   No. 99-1 at 2, 16-20.)  In response to that contention, CliniComp identified the accused

5   services' use of the data blob scheme and argued that the process used by Cerner satisfied

6   the Court's claim construction for the relevant claim term.  (See Dkt. No. 106 at 4, 11-13.)

7   Cerner's reply simply responded to CliniComp's arguments regarding the data blob

8   scheme, and it did not contain any inappropriate new non-infringement arguments.  (See

9   Dkt. No. 109 at 5-7.)   See also Viasat, Inc. v. Acacia Commc'ns, Inc., No.

10  316CV00463BENJMA, 2018 WL 3198798, at *1 (S.D. Cal. June 26, 2018) (denying

11  motion for leave to file a sur-reply and explaining "[i]n the Court's view, Acacia's reply

12  simply responds to the arguments ViaSat raises in its opposition, which is in keeping with

13  the nature and purpose of a reply").

14          Finally, and importantly, the proposed sur-reply is improper and must be rejected

15  because it contains a brand new never-before-disclosed theory of infringement.  A sur-

16  reply may not be used to introduce new legal arguments for the first time.  See Tounget v.

17  Valley-Wide Recreation & Park Dist., No. EDCV 16-88 JGB (KKX), 2020 WL 8410456,

18  at *3 (C.D. Cal. Feb. 20, 2020) ("[D]efendant's attempt to introduce [in a sur-reply] new

19  legal arguments and the declaration of an undisclosed expert is clearly improper."); Chris-

20  Leef Gen. Agency, Inc. v. Rising Star Ins. Inc., No. 11-CV-2409-JAR, 2011 WL 5039141,

21  at *1 (D. Kan. Oct. 24, 2011) ("defendants cannot use a surreply to add additional

22  arguments to supplement the incomplete research of their response"); see also Appalachian

23  Railcar Servs., Inc. v. Boatright Enters., Inc., 602 F. Supp. 2d 829, 872 n.24 (W.D. Mich.

24  2008) ("Ordinarily, this court will not consider arguments raised for the first time in a reply

25  or surreply brief.").

26          In the proposed sur-reply, CliniComp argues that "the database schema and the

27  programmed database query restrictions" within the accused services satisfy the Court's

28  construction for the claim term "[first/second] portion of the database associated with the

40

[first/second] healthcare enterprise facility."[16]  (See Dkt. No. 112 at 2.)  This is a brand-new theory of infringement.  CliniComp has never previously identified the "database schema" as satisfying the Court's construction for the claim term "[first/second] portion of the database associated with the [first/second] healthcare enterprise facility."  Indeed, CliniComp's opposition brief never references the "database schema" anywhere, and its opposition brief does not even contain the word "schema."[17]  (See generally Dkt. No. 106.)  Further, "database schema" is never mentioned in CliniComp's August 29, 2022 amended infringement contentions in regards to the "storing . . ." limitation.[18]  (See generally Dkt. No. 103, Ex. 2 at 10-12, 21-23, 31.)  As such, CliniComp's proposed sur-reply is improper because it attempts to assert a last-minute brand-new theory of infringement.  See Tounget, 2020 WL 8410456, at *3; Chris-Leef Gen. Agency, 2011 WL 5039141, at *1; see also Wi-LAN, 2019 WL 5790999, at *2 ("'In a lawsuit for patent infringement in the Southern District of California, a patentee is limited to the infringement theories it sets forth in its infringement contentions.'").  Accordingly, the Court denies CliniComp's motion for leave to file a sur-reply brief, and the Court strikes the CliniComp's proposed sur-reply and Cerner's proposed response to the sur-reply.

---

[16]    CliniComp's expert, Mr. Hendryx, explains that "the *database schema*" is the "organization plan" of the database.  (Dkt. No. 106-20, Hendryx Decl. ¶ 9 (emphasis in original).)  In its opposition, Cerner describes the database schema as "the columns in the table."  (Dkt. No. 116 at 5.)

[17]    In addition, CliniComp's Statement of Disputed Material Facts and the declaration from CliniComp's expert Mr. Davis also do not contain the word "schema."  (See generally Dkt. Nos. 108, 108-16.)  The Court acknowledges that in paragraphs 9 and 13 of his declaration, CliniComp's expert Mr. Hendryx refers to "database schema."  (Dkt. No. 106-20, Hendryx Decl. ¶¶ 9, 13.)  But CliniComp never cites to or otherwise relies on paragraph 9 or 13 of Mr. Hendryx's declaration anywhere in its opposition brief.  (See generally Dkt. No. 106.)

[18]    The Court notes that CliniComp's August 29, 2022 amended infringement contentions also never reference "data blobs."  (See generally Dkt. No. 103, Ex. 2 at 10-12, 21-23, 31.)

Further, at the hearing on Cerner's motion, CliniComp attempted to introduce a third new theory infringement as to the "storing . . ." limitation based on the database schema, the programmed database query restrictions, and a "Logical_Domain table." This was entirely improper. Similar to "database schema," the term "Logical_Domain table" is never referenced in CliniComp's opposition brief, its Statement of Disputed Material Facts, or even its motion for leave to file a sur-reply. (See generally Dkt. Nos. 106, 108, 112.) Therefore, it was improper for CliniComp to attempt to introduce this new previously undisclosed theory of infringement at the hearing, and this new theory of infringement is untimely and waived.[19]  See, e.g., ABS Glob., Inc. v. Cytonome/ST, LLC, 984 F.3d 1017,

---

[19]  The Court notes that even if it allowed CliniComp to raise this new theory of infringement (the Court does not), summary judgment of non-infringement based on the "storing . . ." limitation would still be appropriate. The method recited in claim 1 of the '647 Patent requires that the processed healthcare data is stored in the claimed "portion[s]" of the database. See '647 Patent col. 14 ll. 25-26 ("storing the processed first healthcare data in a first portion of the database"). CliniComp has not identified any evidence in the record showing that "the database schema," "the programmed database query restrictions," or the "Logical_Domain table" store any processed healthcare data. See Anderson, 477 U.S. at 256 (explaining that in order to raise a genuine dispute of fact the party must "present affirmative evidence"); see also Icon Health & Fitness, 849 F.3d at 1043 ("Attorney argument is not evidence."). Indeed, at the hearing, CliniComp conceded that the database schema does not store any healthcare data. Further, at the hearing, CliniComp presented the Court with a demonstrative (Slide 13), showing that the "client data" (i.e., the processed healthcare data) is stored in "persistent database storage," and not in any of the items identified by CliniComp.

Further, CliniComp has not identified any evidence in the record demonstrating that the identified items constitute "a specific arrangement of data structures of the database" as required by the Court's claim construction. (Dkt. No. 91 at 17; see generally ECF No. 106-20, Hendryx Decl.; ECF No. 108-16, Davis Decl.) Finally, the process identified by CliniComp is still insufficient as a matter of law to satisfy the "storing . . ." limitation because the process merely segregates healthcare data between clients via indexing by an identifier and what CliniComp described as "replication" to the PTAB. See supra Section III.B. As such, the new theory of infringement is still insufficient to raise a genuine dispute of fact as the "storing . . ." claim limitation.

1027 (Fed. Cir. 2021) (finding argument waived because it was "raised for the first time during oral argument"); In re LexinFintech Holdings Ltd. Sec. Litig., No. 3:20-CV-1562-SI, 2021 WL 5530949, at *15 (D. Or. Nov. 24, 2021) ("Plaintiffs raised these arguments for the first time at oral argument, and thus they are untimely and waived."); see also Fresenius USA, Inc. v. Baxter Int'l, Inc., 582 F.3d 1288, 1296 (Fed. Cir. 2009) ("If a party fails to raise an argument before the trial court, or presents only a skeletal or undeveloped argument to the trial court, we may deem that argument waived on appeal, and we do so here."); Wi-LAN, 2019 WL 5790999, at *2 ("'In a lawsuit for patent infringement in the Southern District of California, a patentee is limited to the infringement theories it sets forth in its infringement contentions.'").

D.     The "Configuring the Database . . ." Claim Limitation

Cerner also argues that it is entitled to summary judgment of non-infringement because the accused services do not satisfy the "configuring the database to accept legacy information derived from a legacy application" limitation in independent claim 1 of the '647 Patent.  (Dkt. No. 99-1 at 20-24; Dkt. No. 109 at 7-10.)  Because the Court has already concluded that Cerner has established that the accused services do not infringe claim 1 of the '647 Patent as a matter of law based on the absence of two other claim limitations, the Court declines to address this additional basis for summary judgment of non-infringement.

E.     Dependent Claims 2, 5, 10-13, 15-18, and 20-23

Independent claim 1 of the '647 Patent is the only independent claim asserted in this action.  (See Dkt. No. 103, Ex. 2 at 2 (listing as the asserted claims as claims 1, 2, 5, 10-13, 15-18, and 20-23 of the '647 Patent).)  All the other asserted claims depend from asserted claim 1.  See '647 Patent col. 14 ll. 46 to col. 15 ll. 39.

"One who does not infringe an independent claim cannot infringe a claim dependent (and thus containing all the limitations of) that claim."  Wahpeton Canvas Co. v. Frontier, Inc., 870 F.2d 1546, 1552 n. 9 (Fed. Cir. 1989).  Accordingly, because the accused services do not infringe independent claim 1 as a matter of law, the accused services also do not infringe asserted dependent claims 2, 5, 10-13, 15-18, and 20-23 of the '647 Patent as a

matter of law.  See, e.g., Ferring B.V. v. Watson Lab'ys, Inc.-Fla., 764 F.3d 1401, 1411 (Fed. Cir. 2014) ("Because we hold that the asserted independent claims of Ferring's patents are not infringed, the asserted dependent claims are likewise not infringed.").

### III.    CONCLUSION

In sum, Defendant Cerner has demonstrated that the accused services do not infringe the asserted claims of the '647 Patent as a matter of law.  As such, the Court grants Cerner's motion for summary judgment of non-infringement.   In addition, the Court denies CliniComp's motion for leave to file a sur-reply, and the Court strikes CliniComp's proposed sur-reply and Cerner's proposed response to the sur-reply.  The Clerk of Court is directed to strike the sur-reply (Dkt. No. 112-1) and the response to the sur-reply (Dkt. No. 116-1) from the docket and to enter judgment in favor of Defendant Cerner and against Plaintiff CliniComp and close the case.

IT IS SO ORDERED.

Dated:  November 15, 2022

Hon. Gonzalo P. Curiel
United States District Judge



# United States District Court

## SOUTHERN DISTRICT OF CALIFORNIA

CliniComp International, Inc.

|  |  |
|---|---|
| | Civil Action No. 17-cv-02479-GPC-DEB |
| **Plaintiff,** | |
| **V.** | |
| Cerner Corporation | **JUDGMENT IN A CIVIL CASE** |
| **Defendant.** | |

**Decision by Court.**  This action came to trial or hearing before the Court.  The issues have been tried or heard and a decision has been rendered.

IT IS HEREBY ORDERED AND ADJUDGED:

the Court grants Cerner's motion for summary judgment of non-infringement. Judgment in favor of Defendant Cerner and against Plaintiff CliniComp.  The case is hereby closed.

**Date:** _____11/16/22_____

**CLERK OF COURT**
**JOHN MORRILL, Clerk of Court**
By:  s/  J. Olsen
_____
J. Olsen, Deputy