1
2
3
4
5
6
7
8        UNITED STATES DISTRICT COURT
9        SOUTHERN DISTRICT OF CALIFORNIA
10

| | |
|---|---|
| 11  CLINICOMP INTERNATIONAL, INC., | Case No.:  17-cv-02479-GPC (DEB) |
| 12                        Plaintiff, | **ORDER GRANTING DEFENDANT'S** |
| 13  v. | **MOTION FOR ATTORNEY'S FEES** |
| 14  CERNER CORPORATION, | **PURSUANT TO 35 U.S.C. § 285** |
| 15                        Defendant. | **[Dkt. No. 124.]** |

16

17        On November 30, 2022, Defendant Cerner Corporation ("Cerner") filed a motion
18 for attorney's fees pursuant to 35 U.S.C. § 285.  (Dkt. No. 124.)  On December 16, 2022,
19 Plaintiff CliniComp International, Inc. ("CliniComp") filed a response in opposition to
20 Cerner's motion for attorney's fees.  (Dkt. No. 127.)  On December 30, 2022, Cerner filed
21 a reply.  (Dkt. No. 130.)  On February 2, 2023, the Court took the motion under submission.
22 (Dkt. No. 132.)  For the reasons set forth below, the Court grants Cerner's motion for
23 attorney's fees.

24                        **I.      BACKGROUND**
25        CliniComp is the owner of U.S. Patent No. 6,665,647 ("the '647 Patent") by
26 assignment.  (Dkt. No. 1, Compl. ¶ 2.)  In the present action, CliniComp alleged that Cerner
27 directly infringes claims 1, 2, 5, 10-13, 15-18, and 20-23 of the '647 Patent by making,
28 using, selling, and/or offering to sell within the United States Cerner's CommunityWorks,

PowerWorks, and Lights on Network services (collectively "the accused services").  (Dkt. No. 103, Ex. 2 at 21; <u>see also</u> Dkt. No. 1, Compl. ¶¶ 15-16.)

The '647 Patent is entitled "Enterprise Healthcare Management System and Method of Using Same."  U.S. Patent No. 6,665,647, at [54] (filed Dec. 16, 2003).  The Federal Circuit described the '647 Patent as follows:

> The '647 patent describes a healthcare management system for healthcare enterprises.  The purpose of the '647 patent is to allow healthcare enterprises to consolidate legacy software applications and new software applications together on one software platform.  Many healthcare enterprises utilize legacy systems for managing data related to a variety of uses, including patient care, accounting, insurance, and administrative functions.  These established systems are often outdated and too inflexible to support healthcare enterprises in the "modern managed care environment."  '647 patent at col. 1 ll. 58–62.  The healthcare management system described in the '647 patent allows healthcare enterprises to preserve existing legacy applications while simultaneously phasing in new or updated applications on the same system.

> The enterprise healthcare management system in the '647 patent allows enterprises to "remotely host[] . . . turnkey health care applications" and "provide[s] . . . enterprise users access to the turnkey applications via a public network."  <u>Id.</u> at col. 2 ll. 61–65.  Enterprises can upgrade existing capabilities and add functionality not available in their current system without significant capital investments.  Because the applications are hosted on a public network (<i>i.e.</i>, the internet), the healthcare enterprise only needs computing resources sufficient to allow secure, quality access to the internet.  The "turnkey" management system adjusts to changes within the enterprise as the system "easily and cost-effectively scales" to respond to an enterprise's needs.  <u>Id.</u> at col. 3 ll. 19–23.

> The information collected by the enterprise from its applications may be stored in a searchable database.  Specifically, the '647 patent discloses a clinical data repository that stores information from applications within the suite of applications on the system.  The clinical data repository stores "multidisciplinary information on a wide variety of enterprise functions."  <u>Id.</u> at col. 6 ll. 31–40.  For example, the clinical data repository stores pharmaceutical, radiology, laboratory, and clinical information data utilized by other applications of the application suite.

> The '647 patent discloses that "the clinical data repository is a database that is partitioned" and that "the database portion may be configured as either a logical partition or a physical partition."  <u>Id.</u> at col. 9 ll. 60–64.  The

healthcare management system is also capable of supporting multiple enterprises, in which case "the information related to each of the separate healthcare enterprises is stored in a separate partition of the database." Id. at col. 10 ll. 6–10. As such, when multiple enterprises are involved with using the system, the clinical data repository may have multiple partitions, with each partition holding healthcare management information for the respective enterprise.

Among other things, the '647 patent describes the partitioning of data for multiple enterprises so as to allow the storing of "[the] first healthcare data in a first portion of the database associated with the first healthcare enterprise facility" and separately storing "[the] second healthcare data in a second portion of the database associated with the second healthcare enterprise facility." Id. at col. 14 ll. 24–29. The system allows two (or more) independent healthcare enterprises to share access to certain applications while maintaining sole access to their respective unique healthcare applications. The databases are effectively "partitioned" or "portioned" in this way.

Cerner Corp. v. Clinicomp Int'l, Inc., 852 F. App'x 532, 532–33 (Fed. Cir. 2021).

Independent claim 1 of the '647 Patent, the only independent claim asserted by CliniComp in this action,[1] recites:

1. A method of operating an enterprise healthcare management system for a first healthcare enterprise facility and a second healthcare enterprise facility independent of the first healthcare enterprise facility, comprising:

establishing a first secure communication channel via a public network between an application server and a first end user device in the first enterprise facility and establishing a second secure communication channel via the public network between the application server and a second end user device in the second enterprise facility, the application server remotely hosting a healthcare application and having a database;

receiving first healthcare data from the first end user and second healthcare data from the second end user;

processing the first healthcare data and the second healthcare data with the healthcare application;

storing the processed first healthcare data in a first portion of the database

---

[1]    (See Dkt. No. 103, Ex. 2 at 2.)

associated with the first healthcare enterprise facility and storing the processed second healthcare data in a second portion of the database associated with the second healthcare enterprise facility;

configuring the database to accept legacy information derived from a legacy application operating at each of the first and second healthcare enterprise facilities, wherein the functions in the healthcare application are not duplicative of the legacy application; and

generating a query to extract information from the database relevant to a respective one of the first and second healthcare enterprise facilities derived from the healthcare data and the legacy information for managing and tracking a performance of the respective one of the first and second healthcare enterprise facilities,

wherein healthcare data in the first portion of the database is only accessible to the first end user device and healthcare data in the second portion of the database is only accessible to the second end user device.

'647 Patent col. 14 ll. 8-45.

On December 11, 2017, CliniComp filed a complaint for patent infringement against Cerner, alleging infringement of the '647 Patent. (Dkt. No. 1, Compl.) On May 16, 2018, the Court granted Cerner's motion to dismiss CliniComp's claims for willful infringement and indirect infringement as well as the relief sought in connection with these claims of injunctive relief, treble damages, and exceptionality damages. (Dkt. No. 18 at 21.) On June 25, 2018, Cerner filed an answer to CliniComp's complaint. (Dkt. No. 19.)

On March 5, 2019, the Patent Trial and Appeal Board ("PTAB") instituted an *inter partes* review ("IPR") as to claims 1-25 and 50-55 of the '647 Patent. (Dkt. No. 30-1, Ex. A.) On March 7, 2019, the Court granted a stay of the action pending completion of the IPR proceedings. (Dkt. No. 31.) On March 26, 2020, the PTAB issued a final written decision, determining that claims 50-55 of the '647 Patent are not patentable in light of the prior art, but that claims 1-25 of the '647 Patent are patentable.[2] (Dkt. No. 32, Ex. A at 93-

---

[2] Specifically, the PTAB concluded that Cerner had shown by a preponderance of the evidence that: (1) claims 50-52 are not patentable based on Evans; (2) claims 53 and 54 are not patentable based on Evans and Rai; (3) claims 50-53, and 55 are not patentable based

94.)  On April 20, 2021, the Federal Circuit affirmed the PTAB's determination that claims 1-25 of the '647 Patent are patentable.[3]  (Dkt. No. 38-2, Ex. B at 10.)  On June 24, 2021, the Court granted the parties' joint motion to lift the stay of the action.  (Dkt. No. 44.)

On July 23, 2021, Cerner filed an amended answer to CliniComp's complaint.  (Dkt. No. 52.)  On October 7, 2021, the Court issued a scheduling order for the action.  (Dkt. No. 55.)

On July 28, 2022, the Court issued a claim construction order, construing the disputed claim terms from the '647 Patent.  (Dkt. No. 91.)  On November 15, 2022, the Court granted Cerner's motion for summary judgment of non-infringement. (Dkt. No. 120.) Specifically, the Court held that Cerner had demonstrated that the accused services do not infringe the asserted claims of the '647 Patent as a matter of law.  (Id. at 44.)  On November 16, 2022, the Court entered a judgment in the action in favor of Defendant Cerner and against Plaintiff CliniComp. (Dkt. No. 121.)  On December 30, 2022, the Clerk of Court taxed costs in favor of Cerner in the amount of $8,265.80.  (Dkt. No. 131 at 3.)

By the present motion, Cerner moves for attorney's fees pursuant to 35 U.S.C. § 285.  (Dkt. No. 124-1.)  Specifically, Cerner requests that the Court award Cerner its attorneys' fees incurred since July 28, 2022 – the date the Court issued its claim construction order.[4]  (Id. at 1, 17.)

_____

on Johnson and Evans; and (4) claim 54 is not patentable based on Johnson, Evans, and Rai.  (Dkt. No. 32, Ex. A at 93-94.)  The PTAB further concluded that Cerner had not shown by a preponderance of the evidence: (1) that claims 1-5, 10-13, and 15-25 are unpatentable based on Johnson and Evans; or (2) that claims 6-9, and 14 are unpatentable based on Johnson, Evans, and Rai.  (Id. at 93.)

[3]      On November 15, 2021, the PTO issued an *inter partes* review certificate for the '647 Patent, stating: "Claims 1-25 are found patentable" and "Claims 50-55 are cancelled." (Dkt. No. 71-2, Ex. A at A-20–A-21.)

[4]      Pursuant to Federal Rule of Civil Procedure 54(d)(2)(B)(iii), Cerner estimates that the amount of fees sought by its motion for attorney's fees is "approximately $925,000."

1

## II.   DISCUSSION

2

**I.   Legal Standards**

3

    A.   Legal Standards Governing Attorney's Fees Under 35 U.S.C. § 285

4

        "Section 285 of the Patent Act authorizes a district court to award attorney's fees in

5

patent litigation." Octane Fitness, LLC v. ICON Health & Fitness, Inc., 572 U.S. 545, 548

6

(2014).  Section 285 provides: "The court in exceptional cases may award reasonable

7

attorney fees to the prevailing party." 35 U.S.C. § 285.

8

        The Supreme Court has held that "an 'exceptional' case is simply one that stands out

9

from others with respect to the substantive strength of a party's litigating position

10

(considering both the governing law and the facts of the case) or the unreasonable manner

11

in which the case was litigated." Octane Fitness, 572 U.S. at 554; accord Energy Heating,

12

LLC v. Heat On-The-Fly, LLC, 15 F.4th 1378, 1382 (Fed. Cir. 2021).  "[A] case presenting

13

either subjective bad faith or exceptionally meritless claims may sufficiently set itself apart

14

from mine-run cases to warrant a fee award." Octane Fitness, 572 U.S. at 555.  But "fee

15

awards are not to be used 'as a penalty for failure to win a patent infringement suit.'"

16

Checkpoint Sys., Inc. v. All-Tag Sec. S.A., 858 F.3d 1371, 1376 (Fed. Cir. 2017) (quoting

17

Octane Fitness, 572 U.S. at 548); see Universal Stabilization Techs., Inc. v. Advanced

18

Bionutrition Corp., No. 17CV87-GPC(MDD), 2018 WL 6181479, at *4 (S.D. Cal. Nov.

19

27, 2018) ("Failure to win on summary judgment is not a basis for an attorney's fee award

20

under § 285."); see also FireBlok IP Holdings, LLC v. Hilti, Inc., 855 F. App'x 735, 739

21

(Fed. Cir. 2021) ("The strength of a party's litigation position is what is relevant to an

22

exceptional case determination, not the correctness or success of that position." (citing SFA

23

Sys., LLC v. Newegg Inc., 793 F.3d 1344, 1348 (Fed. Cir. 2015))).

24

        "[A] district court makes the exceptional-case determination on a case-by-case basis

25

considering the totality of the circumstances." Energy Heating, 15 F.4th at 1382 (citing

26

———————————

27

28

(Dkt. No. 124-1 at 17.)  See Fed. R. Civ. P. 54(d)(2)(B)(iii) (stating that a motion for attorney's fees must "state the amount sought or provide a fair estimate of it").

<u>Octane Fitness</u>, 572 U.S. at 554); <u>see</u> <u>Intell. Ventures I LLC v. Trend Micro Inc.</u>, 944 F.3d 1380, 1384 (Fed. Cir. 2019) (explaining that a district court must determine whether "the case overall was exceptional").  In determining whether to award fees, district courts may consider a nonexclusive list of factors, including "'frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'" <u>Octane Fitness</u>, 572 U.S. at 554 n.6 (quoting <u>Fogerty v. Fantasy, Inc.</u>, 510 U.S. 517, 534 n.19 (1994)).  There is no precise rule or formula for determining whether to award attorney's fees, but instead equitable discretion should be exercised in light of the above considerations.  <u>Id.</u> at 554 (quoting <u>Fogerty</u>, 510 U.S. at 534); <u>see</u> <u>Blackbird Tech LLC v. Health In Motion LLC</u>, 944 F.3d 910, 914 (Fed. Cir. 2019).

The determination of whether a case is "exceptional" under § 285 is committed "to the discretion of the district court." <u>Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.</u>, 572 U.S. 559, 563 (2014); <u>see</u> <u>Thermolife Int'l LLC v. GNC Corp.</u>, 922 F.3d 1347, 1356 (Fed. Cir. 2019) ("We generally 'give great deference to the district court's exercise of discretion in awarding fees.'" (quoting <u>Energy Heating</u>, 889 F.3d at 1307)); <u>Spineology</u>, 910 F.3d at 1229 ("We review all aspects of a district court's § 285 determination for abuse of discretion, keeping in mind that the district court is better positioned to decide whether a case is exceptional, because it lives with the case over a prolonged period of time." (quoting <u>Highmark</u>, 572 U.S. at 560, 564)). "A district court must 'provide a concise but clear explanation of its reasons for the fee award.'"  <u>Thermolife</u>, 922 F.3d at 1356 (quoting <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 437 (1983)).  The party seeking fees must prove that the case is exceptional by a preponderance of the evidence.  <u>Energy Heating</u>, 15 F.4th at 1382; <u>see</u> <u>Octane Fitness</u>, 572 U.S. at 557–58.

    B.   <u>Legal Standards Governing Patent Infringement</u>

Because the exceptionality determination in this case involves an assessment of the strength of CliniComp's claim for patent infringement, the Court sets forth the relevant legal standards governing patent infringement claims.  <u>See</u> <u>Octane Fitness</u>, 572 U.S. at 554

(explaining that an exceptionality determination requires an examination of the substantive strength of a party's litigating position under "the governing law").  A patent infringement analysis proceeds in two steps.  Niazi Licensing Corp. v. St. Jude Med. S.C., Inc., 30 F.4th 1339, 1350 (Fed. Cir. 2022); JVW Enterprises, Inc. v. Interact Accessories, Inc., 424 F.3d 1324, 1329 (Fed. Cir. 2005).  In the first step, the court construes the asserted claims as a matter of law.  See Niazi, 30 F.4th at 1351; JVW, 424 F.3d at 1329.  In the second step, the factfinder compares the properly construed claims to the accused method or device.  See id.

"'The patentee bears the burden of proving infringement by a preponderance of the evidence.'"  Creative Compounds, LLC v. Starmark Labs., 651 F.3d 1303, 1314 (Fed. Cir. 2011).  To establish infringement of a method claim, "a patentee must prove that each and every step of the method or process was performed."  Aristocrat Techs. Australia Pty Ltd. v. Int'l Game Tech., 709 F.3d 1348, 1362 (Fed. Cir. 2013); see Akamai Techs., Inc. v. Limelight Networks, Inc., 797 F.3d 1020, 1022 (Fed. Cir. 2015) (en banc) ("Direct infringement under § 271(a) occurs where all steps of a claimed method are performed by or attributable to a single entity."); Star Sci., Inc. v. R.J. Reynolds Tobacco Co., 655 F.3d 1364, 1378 (Fed. Cir. 2011) ("To prove infringement, a plaintiff must prove the presence of each and every claim element or its equivalent in the accused method or device.").

## II.   Analysis

Cerner argues that it is entitled to its reasonable attorney's fees under 35 U.S.C. § 285 because this case stands out as an exceptional one.  (Dkt. No. 124-1 at 1-3.)  The Court agrees with Cerner.  The Federal Circuit has "frequently held that a case is exceptional when a party continues to litigate claims that have become baseless in view of a district court's claim construction opinion."  Innovation Scis., LLC v. Amazon.com, Inc., 842 F. App'x 555, 557 (Fed. Cir. 2021) (citing AdjustaCam, LLC v. Newegg, Inc., 861 F.3d 1353, 1360 (Fed. Cir. 2017); Taurus IP, LLC v. DaimlerChrysler Corp., 726 F.3d 1306, 1326–29 (Fed. Cir. 2013)); see also Taurus IP, 726 F.3d at 1328 ("[A] party cannot assert baseless infringement claims and must continually assess the soundness of pending infringement

claims, especially after an adverse claim construction.").  That is precisely what happened in the present action.

Independent claim 1 of the '646 Patent recites the following "storing . . ." claim limitation:

> storing the processed first healthcare data in a first portion of the database associated with the first healthcare enterprise facility and storing the processed second healthcare data in a second portion of the database associated with the second healthcare enterprise facility;

'647 Patent col. 14 ll. 25-30.

During the IPR proceedings as to the '647 Patent, CliniComp made several clear and detailed arguments to the PTAB regarding the scope of this "storing . . ." limitation in claim 1 of the '647 Patent.  Specifically, in an effort to distinguish the claimed invention from one of the prior art references at issue, the Johnson reference, during the oral hearing before the PTAB on December 3, 2019, CliniComp argued to the PTAB that the "storing . . ." limitation requires a very specific type of partitioning.  (See, e.g., Dkt. No. 71-2, Ex. E at E-7 ("So Step 1 is, you go into the database, you partition it so it is associated with an enterprise.  And that's what the claim term says 'associated'.  Once that partition is done, and it's associated with that particular enterprise, only then do you . . . store that data in the portion of the database.  So this partition is an essential element of how it's done to create these portions . . . ."), E-11-12 ("JUDGE GROSSMAN: . . . And you're saying that in Claim 1, you put the information from the different sources in separate compartments, and you search only each – you have to search each compartment individually.  [CliniComp's Counsel]: I'm saying one step further.  You have to create that compartment for a particular service provider before you can put the data in, before you can do that search."), E-17 ("[Partitions] means separate and distinct and having your own management."), E-21 ("I think we explained that the patent language requires first portion to be created through partitioning."), E-23 ("The claim limitation says, 'Storing the limitation in a first portion.' When you take a subcomponent of [the database] and copy it elsewhere, you haven't changed the database at all, and that cannot possibly be a basis for meeting this claim

limitation."); <u>see also</u> Dkt. No. 71-2, Ex. K at K-9 ("[T]he term 'portion' as used in claim 1 requires a specific arrangement of data structures and is not satisfied by indexing."); Dkt. No. 71-2 Ex. F at F-32 ("A POSITA would understand that Johnson's disclosure of indexing is not a disclosure of partitioning the database.").) These clear and unmistakable statements to the PTAB during the IPR proceedings constitute prosecution disclaimers. (<u>See</u> Dkt. No. 91 at 12-16 (holding CliniComp's statements to the PTAB constitute prosecution disclaimers); Dkt. No. 120 at 36-37 (holding additional statements made by CliniComp to the PTAB constitute prosecution disclaimers).) See <u>Aylus Networks, Inc. v. Apple Inc.</u>, 856 F.3d 1353, 1361 (Fed. Cir. 2017) (explaining that "statements made by a patent owner during an IPR proceeding" can constitute prosecution disclaimer so long as the statements are "'both clear and unmistakable'"); <u>MBO Lab'ys, Inc. v. Becton, Dickinson & Co.</u>, 474 F.3d 1323, 1330 (Fed. Cir. 2007) ("Prosecution arguments like this one which draw distinctions between the patented invention and the prior art are useful for determining whether the patentee intended to surrender territory, since they indicate in the inventor's own words what the invention is not."); <u>Purdue Pharma L.P. v. Endo Pharms. Inc.</u>, 438 F.3d 1123, 1136 (Fed. Cir. 2006) (explaining that prosecution disclaimer "may occur, for example, when the patentee explicitly characterizes an aspect of his invention in a specific manner to overcome prior art"); <u>Computer Docking Station Corp. v. Dell, Inc.</u>, 519 F.3d 1366, 1374 (Fed. Cir. 2008) (explaining that a patentee may limit the scope of a claim term "by clearly characterizing the invention in a way to try to overcome rejections based on prior art"). At the conclusion of the IPR proceedings, the PTAB – relying on CliniComp's arguments regarding the scope of the term "portion" in the "storing . . ." limitation – upheld the patentability of claims 1-25 of the '647 Patent, and the Federal Circuit affirmed that decision. (<u>See</u> Dkt. No. 71-2, Ex. D at D-81–D-87, D-94–D-95 ("[W]e agree with [CliniComp] and its supporting testimony of Dr. Bergeron that merely identifying data or associating subsets of data with common values (i.e., indexing by provider ID) does not constitute partitioning.").) See <u>Cerner</u>, 852 F. App'x at 536 ("The Board carefully considered the expert testimony of both parties when reaching [its]

conclusion and expressly credited Patent Owner's expert that Johnson fails to disclose storing the data associated with *two healthcare facilities* in *separate portions* of a database. . . . Though the provider IDs may keep track of who accesses which application on the database for that single facility, it does not partition the database, either logically or physically." (emphasis in original)).

At the claim construction phase of the case, the parties disputed the scope of the claim term "[first/second] portion of the database associated with the [first/second] healthcare enterprise facility" in the "storing . . ." limitation of claim 1. (See Dkt. No. 63-1 at A2; Dkt. No. 70 at 5-8; Dkt. No. 71 at 4-12.) CliniComp asserted that the claim term "[first/second] portion of the database associated with the [first/second] healthcare enterprise facility" should be given its plain and ordinary meaning and no construction was necessary for that claim term. (Dkt. No. 63-1 at A2; Dkt. No. 70 at 5, 7.) Notably, CliniComp asserted that the claim term should be given its plain and ordinary meaning despite the numerous statements it made to the PTAB regarding the scope of the term "portion" and the "storing . . ." limitation as noted above in the preceding paragraph. And, notably, CliniComp asserted that the claim term should be given its plain and ordinary meaning even though in its own claim construction briefing, CliniComp conceded that it made certain prosecution disclaimers to the PTAB during the IPR proceedings.[5] (See Dkt. No. 70 at 7 ("CliniComp recognizes that by making certain arguments during the IPR, it limited, to a degree, the scope of the claim language at issue."); Dkt. No. 71 at 4 ("CliniComp might have disclaimed indexing alone as the mechanism for creating the

---

[5]     CliniComp contends that in its proposed construction for the claim term, it expressly acknowledged that independent claim 1 excludes merely indexing. (Dkt. No. 127 at 6.) The Court acknowledges that at claim construction, CliniComp conceded that claim 1 excludes merely indexing. (See Dkt. No. 63-1 at A2). Nevertheless, despite that concession, CliniComp still contended that the claim term "[first/second] portion of the database associated with the [first/second] healthcare enterprise facility" should simply be given its plain and ordinary meaning and no construction was necessary. (See id.)

database portions, but it did not disclaim . . . ."); <u>see also</u> Dkt. No. 63-1 at A2 (stating "CliniComp does not dispute that the claimed 'portions' do not include data groupings created exclusively by indexing – the process disclosed in Johnson").)

On July 28, 2022, the Court issued its claim construction order for this case.  (Dkt. No. 91.)  In the claim construction order, the Court construed the claim term "[first/second] portion of the database associated with the [first/second] healthcare enterprise facility" as "a specific arrangement of data structures of the database that separates the data associated with the [first/second] healthcare enterprise facility from data associated with any other healthcare enterprise facility, wherein the claimed [first/second] 'portion' is not created by merely identifying data or associating subsets of data with common values (*i.e.*, indexing by an identifier), and the [first/second] portion of the database is created before the claimed 'storing' of 'data' occurs, and restricts access to data therein to protect data associated with the [first/second] healthcare enterprise facility from access by any other healthcare enterprise facility."  (<u>Id.</u> at 17-18.)  The Court's construction for this claim term was primarily based on the multiple clear and unmistakable prosecution disclaimers that CliniComp made during the IPR proceedings as to the '647 Patent.[6]  (<u>See id.</u> at 12-16

---

[6]    The Court notes that even though the Court's construction for the claim term "[first/second] portion of the database associated with the [first/second] healthcare enterprise facility" included several prosecution disclaimers made by CliniComp during the IPR proceedings, the Court's construction for the claim term could have properly included additional prosecution disclaimers made by CliniComp.  For example, in the claim construction order, the Court also held that CliniComp made clear and unmistakable disclaimers during the IPR proceedings requiring that the claimed "portion" be "'separate and distinct and having [its] own management.'"  (Dkt. No. 91 at 16 (quoting Dkt. No. 71-2, Ex. E at E-17).)  The Court declined to include this additional requirement into the Court's claim construction because, at the time, it was unclear as to why it was needed.  (<u>See</u> <u>id.</u> at 16-17.)  In addition, in the summary judgment order, the Court held that CliniComp also made clear and unmistakable disclaimers during the IPR proceedings distinguishing the "storing . . ." limitation in claim 1 from what CliniComp referred to as "replication."  (<u>See</u> Dkt. No. 120 at 36-37.)

(detailing the prosecution disclaimers made by CliniComp during the PTAB proceedings).)

During the claim construction phase of the case, CliniComp also took discovery on how the accused services operate. Cerner started producing technical documents in December 2021 and substantially completed production of them in June 2022. (Dkt. No. 99-3, Yu Decl. ¶ 2.) CliniComp's technical expert reviewed Cerner's source code multiple times in March 2022. (Dkt. No. 124-4, Ex. 2.) And, by July 8, 2022, CliniComp had deposed three of Cerner's technical witnesses regarding the operation of the accused services. (See, e.g., Dkt. No. 103, Exs. 3-5.)

Following the Court's issuance of the claim construction order, CliniComp served Cerner with its amended final infringement contentions on August 29, 2022, asserting that Cerner infringed the '647 Patent under the Court's claim constructions. (See Dkt. No. 103, Ex. 2.) In those contentions, CliniComp asserted that the Cerner's accused services satisfy the "storing . . ." limitation in claim 1 because:

> Cerner's "Active Data Security" and "Reference Data Security" "allow Cerner to partition data into private groups." More specifically, Cerner created partitions for each client of [the accused services] before storing any client data in the database by programing database query restrictions that use each client's logical domain ID to create a specific arrangement of data structures for each client. These partitions were used to separate each client's data from the other clients' data and restrict access to that data to prevent other clients from having access to a client's data.

(Id. at 11-12, 22 (citations omitted); see also id. at 31.) Here, CliniComp asserted that the accused services satisfy the "storing . . ." limitation through their use of programed database query restrictions and logical domain IDs. (See id.)

After receiving CliniComp's amended infringement contentions, Cerner filed a motion for summary judgment of non-infringement on September 19, 2022. (Dkt. No. 99.) Shortly after filing its motion for summary judgment, on September 28, 2022, Cerner served CliniComp with "an Octane Fitness letter." (Dkt. No. 124-5, Ex. 3.) In the letter, Cerner stated:

> [CliniComp's] claims, as spelled out in CliniComp's Final Infringement

Contentions, are objectively meritless and inconsistent with the Court's claim construction rulings.  If CliniComp does not immediately dismiss this action, Cerner will seek to recover the fees it has incurred and will incur in defending this baseless lawsuit.  See Octane Fitness, LLC v. ICON Health & Fitness, Inc., 572 U.S. 545, 554 (2014); 35 U.S.C. § 285.

. . .

. . . To the extent CliniComp does dismiss its claims with prejudice by October 7, 2022, Cerner is prepared to waive its claim for attorneys' fees incurred to date.

(Id. at 1.)  CliniComp never responded to Cerner's September 28, 2022 letter.[7]  (See Dkt. No. 124-1 at 2, 9; Dkt. No. 130 at 4.)

   CliniComp contends that in response to Cerner's motion for summary judgment that

_____

[7]   CliniComp contends that Cerner improper delayed sending its Octane Fitness letter by waiting until nine weeks after the Court's claim construction order and more than a week after filing its motion for summary judgment to send the letter.  (Dkt. No. 127 at 1, 3-4.)  CliniComp contends that Cerner's delay in sending its Octane Fitness letter is alone a sufficient reason to deny Cerner's motion for attorney's fees, citing Stone Basket Innovations, LLC v. Cook Med. LLC, 892 F.3d 1175, 1181 (Fed. Cir. 2018).  (Dkt. No. 127 at 4-5.)  In Stone Basket, the Federal Circuit affirmed a district court's denial of attorney's fees under § 285 and held that the district court did not abuse its discretion in determining that the case was not exceptional.  See 892 F.3d at 1183.  In so doing, the Federal Circuit held that the district court "was well within its discretion to factor in [the accused infringer]'s litigation conduct" under the totality of the circumstances, including the accused infringer's failure to provide notice of its belief that the case was exceptional. Id. at 1181.  In Stone Basket, the Federal Circuit explained that an accused infringer's failure to send or delay in sending an Octane Fitness letter is a "factor" that a district court may consider under the totality of the circumstances in making an exceptionality determination.  See id.; see also Thermolife, 922 F.3d at 1358 ("We have held that the lack of the early notice described in Stone Basket can support a denial of attorney's fees, and that the presence of such notice, followed by continuation of litigation, can be a factor in justifying an award of attorney's fees.  But we have not held that such notice is rigidly required." (citations omitted)).  As such, in accordance with Stone Basket and Thermolife, the Court factors in the presence and timing of Cerner's Octane Fitness letter to CliniComp under the totality of the circumstances as part of its exceptionality determination in this case.  In addition, the Court factors in CliniComp's decision to not respond to the letter and to proceed with the litigation.

it "made a reasonable and good faith attempt to show that Cerner's use of data blobs distinguished the accused products from mere 'indexing' and satisfied the other requirements of the Court's claim construction Order." (Dkt. No. 127 at 7.)  The Court disagrees.

As an initial matter, the Court notes that CliniComp's August 29, 2022 amended final infringement contention made no reference at all to "data blobs."  (See generally Dkt. No. 103, Ex. 2.)  Indeed, the term "data blobs" or even the word "blob" is not contained anywhere in those infringement contentions.  (See id.)  Thus, CliniComp's theory of infringement based on Cerner's purported use of "data blobs" was improper from the start because CliniComp did not disclose that specific theory of infringement in its amended final infringement contentions.  See S.D. Cal. Pat. L.R. 3-1; Wi-LAN Inc. v. LG Elecs., Inc., No. 18-CV-01577-H-BGS, 2019 WL 5790999, at *2 (S.D. Cal. Sept. 18, 2019) ("'In a lawsuit for patent infringement in the Southern District of California, a patentee is limited to the infringement theories it sets forth in its infringement contentions.'"); LookSmart Grp., Inc. v. Microsoft Corp., No. 17-CV-04709-JST, 2019 WL 7753444, at *2 (N.D. Cal. Oct. 17, 2019) ("Once served, the infringement contentions constitute the universe of infringement theories.").  Further, a review of CliniComp's arguments at summary judgment – both in its briefing and at the hearing – demonstrate that CliniComp did not have reasonable and good faith theory of infringement based on Cerner's purported use of data blobs.

On October 14, 2022, CliniComp filed a response in opposition to Cerner's motion for summary judgment.  (Dkt. No. 106.)  CliniComp's opposition was vague and inconsistent as to how precisely the accused services satisfy the Court's claim construction for the claim term "[first/second] portion of the database associated with the [first/second]

healthcare enterprise facility."[8]  For example, the Court's claim construction requires that the claimed "portion" be "a specific arrangement of data structures of the database that separates the data associated with the [first/second] healthcare enterprise facility from data associated with any other healthcare enterprise facility."  (Dkt. No. 91 at 17.)   In its opposition brief, CliniComp never identified what precisely it considered to be "a specific arrangement of data structures of the database that separates the data."  (See generally Dkt. No. 106 at 11-13.)  CliniComp simply repeated this part of the Court's claim construction without identifying anything from the accused services or providing any analysis.[9]  (See id. at 12.)  Further, CliniComp's opposition brief failed to present a consistent and coherent theory of infringement that satisfied the Court's claim construction and the relevant claim language.  At times, CliniComp appeared to contend that the data blobs were the claimed "portion[s]," and, at other times, CliniComp appeared to contend that the code for imposing the proper database query restrictions were the claimed "portion."  (See id. at 12-13; see also Dkt. No. 120 at 31-34.)   Further, although CliniComp's opposition brief clearly asserted that the data blobs satisfied at least two of the requirements set forth in the Court's construction of the relevant claim term, (see Dkt. No. 106 at 13), and despite CliniComp's current assertion that it had a reasonable and good faith theory of infringement based on the data blobs, at the hearing on Cerner's motion for summary judgment, CliniComp abandoned that theory of infringement and conceded that the data blobs do not satisfy the Court's claim construction for the claim term "[first/second] portion of the database associated with the [first/second] healthcare enterprise facility." (See Dkt. No. 128 at 16.)

---

[8]    Indeed, at the hearing on Cerner's motion for summary judgment, CliniComp's own counsel described CliniComp's opposition brief as "inartful." (Dkt. No. 128 at 23, 24.)

[9]    In light of this complete failure by CliniComp to identify the purported "specific arrangement of data structures" in its opposition brief, the Court rejects CliniComp's contention that its arguments at summary judgment "tracked the Court's claim construction order." (Doc. No. 127 at 2.)

On October 28, 2022, CliniComp filed a motion for leave to file a sur-reply.  (Dkt. No. 112.)  CliniComp's proposed sur-reply was improper for several reasons, but most importantly, it was improper because it contained a brand new never-before-disclosed theory of infringement.  (See Dkt. No. 120 at 39-41.)  In the proposed sur-reply, CliniComp abandoned its "data blobs" theory of infringement and, instead, argued that "*the database schema* and the programmed database query restrictions" within the accused services satisfy the Court's construction for the claim term "[first/second] portion of the database associated with the [first/second] healthcare enterprise facility."  (See Dkt. No. 112 at 2 (emphasis added).)  This was a brand-new theory of infringement because CliniComp had never previously identified the "database schema" as satisfying the Court's construction for the claim term "[first/second] portion of the database associated with the [first/second] healthcare enterprise facility."  Indeed, CliniComp's opposition to Cerner's motion for summary judgment never referenced "database schema" anywhere, and the opposition brief did not even contain the word "schema."[10]  (See generally Dkt. No. 106.)  Further, "database schema" was never mentioned in CliniComp's August 29, 2022 amended final infringement contentions in regards to the "storing . . ." limitation.  (See generally Dkt. No. 103, Ex. 2 at 10-12, 21-23, 31.)  As such, CliniComp's attempt to assert a brand-new theory of infringement in its proposed sur-reply was entirely improper.[11]  See Tounget v. Valley-

---

[10]   In addition, CliniComp's Statement of Disputed Material Facts and the supporting declaration from CliniComp's expert Mr. Davis also did not contain the word "schema." (See generally Dkt. Nos. 108, 108-16.)  The Court acknowledges that paragraphs 9 and 13 of the supporting declaration from CliniComp's other expert Mr. Hendryx referred to "database schema."  (Dkt. No. 106-20, Hendryx Decl. ¶¶ 9, 13.)  But CliniComp never cited to or otherwise relied on paragraph 9 or 13 of Mr. Hendryx's declaration anywhere in its opposition brief to Cerner's motion for summary judgment.  (See generally Dkt. No. 106.)

[11]   The Court notes that CliniComp's motion for leave to file the proposed sur-reply also contained the following bold assertion: "Cerner's Reply falsely asserts CliniComp has identified the data blobs created by the accused Cerner systems as the claimed 'portions.'" (Dkt. No. 112 at 1.)  Here, CliniComp accused Cerner of making a false representation to

17

1  Wide Recreation & Park Dist., No. EDCV 16-88 JGB (KKX), 2020 WL 8410456, at *3

2  (C.D. Cal. Feb. 20, 2020) ("[D]efendant's attempt to introduce [in a sur-reply] new legal

3  arguments and the declaration of an undisclosed expert is clearly improper."); Chris-Leef

4  Gen. Agency, Inc. v. Rising Star Ins. Inc., No. 11-CV-2409-JAR, 2011 WL 5039141, at

5  *1 (D. Kan. Oct. 24, 2011); Wi-LAN, 2019 WL 5790999, at *2 ("'In a lawsuit for patent

6  infringement in the Southern District of California, a patentee is limited to the infringement

7  theories it sets forth in its infringement contentions.'").

8       The Court held a hearing on Cerner's motion for summary judgment on November

9  8, 2022.  At the hearing on Cerner's motion, CliniComp attempted to introduce a third new

10  theory of infringement as to the "storing . . ." limitation based on the database schema, the

11  programmed database query restrictions, and a "Logical Domain table."  (See Dkt. No. 128

12  at 20, 25, 32.)  This also was entirely improper.  Similar to "database schema," the term

13  "Logical Domain table" was never referenced in CliniComp's opposition brief, its

14  Statement of Disputed Material Facts, or even its motion for leave to file a sur-reply.  (See

15

16  _____

17  the Court even though CliniComp's opposition brief contained several statements
18  contending that the data blobs were the claimed "portion[s]."  For example, under the
    Court's construction for the relevant claim term, the claimed "portion of the database . . .
19  restricts access to data therein to protect data associated with the [first/second] healthcare
    enterprise facility from access by any other healthcare enterprise facility."  (Dkt. No. 91 at
20  17-18.)  In an effort to demonstrate that the accused services satisfied that requirement,
21  CliniComp stated: "the data blob 'restricts access to the data therein' from access 'by any
    other healthcare facility.'"  (Dkt. No. 106 at 13; see also id. at 4 ("This data blob is an
22  arrangement of data structures of the database . . . ."), at 13 ("'Cerner's use of data blobs
    is not merely 'indexing by an identifier.'"); Dkt. No. 108 at 8 ("extract data into structured
23  portions of the database, referred to as data blobs"), at 11 ("extract data into specific
24  arrangements of data structures, referred to as data blobs").)  And CliniComp made that
    accusation even though at the summary judgment hearing CliniComp described its own
25  opposition brief as "inartful."  (Dkt. No. 128 at 23, 24.)  In addition, CliniComp made that
26  accusation even though it now attempts to rely on Cerner's purported use of data blobs in
    an effort to demonstrate that it had a reasonable and good faith theory of infringement.
27  (See Dkt. No. 127 at 7.)
28

18

1  generally Dkt. Nos. 106, 108, 112.)  The term "Logical Domain table" was mentioned in

2  CliniComp's August 29, 2022 amended infringement contentions, but, again, the term

3  "database scheme" was not.  (See generally Dkt. No. 103, Ex. 2 at 10-12, 21-23, 31.)

4  Therefore, CliniComp still failed to properly disclose this particular theory of infringement

5  in its August 29, 2022 amended final infringement contentions, and it was improper for

6  CliniComp to attempt to introduce this new previously undisclosed theory of infringement

7  at the summary judgment hearing.  See ABS Glob., Inc. v. Cytonome/ST, LLC, 984 F.3d

8  1017, 1027 (Fed. Cir. 2021) (finding argument waived because it was "raised for the first

9  time during oral argument"); In re LexinFintech Holdings Ltd. Sec. Litig., No. 3:20-CV-

10  1562-SI, 2021 WL 5530949, at *15 (D. Or. Nov. 24, 2021); Wi-LAN, 2019 WL 5790999,

11  at *2 ("'In a lawsuit for patent infringement in the Southern District of California, a

12  patentee is limited to the infringement theories it sets forth in its infringement

13  contentions.'").

14     As detailed above, in response to Cerner's motion for summary judgment,

15  CliniComp repeatedly shifted its theory of infringement as to the "storing . . ." limitation.

16  In total, CliniComp presented four different theories of infringement (three of which were

17  not properly presented in CliniComp's amended final infringement contentions and two of

18  which were not included anywhere in CliniComp's opposition brief to Cerner's motion for

19  summary judgment).  And all four of those theories failed, and failed for multiple reasons.

20  (See Dkt. No. 120 at 30-37, 42 n.19.)  For example, CliniComp's final theory of

21  infringement – the one it presented at the hearing on Cerner's motion for summary

22  judgment based on the database schema, the programmed database query restrictions, and

23  the Logical Domain table – still failed to satisfy the "storing . . ." limitation for four separate

24  reasons.  (See id. at 42 n.19.)  Indeed, at the hearing, CliniComp's own demonstrative

25  (Slide 13), showed that the accused services did not satisfy the "storing . . ." limitation

26  because the accused services store the processed healthcare data in persistent storage, and

27  not in any of the items identified by CliniComp at the summary judgment hearing.  The

28  weakness of these various theories of infringement is demonstrated not only by the analysis

19

17-cv-02479-GPC (DEB)

1    in the Court's November 15, 2022 order granting Cerner's motion for summary judgment

2    but also by CliniComp's own actions.  It was clear that CliniComp engaged in this pattern

3    of ever-changing theories of infringement as to the "storing . . ." limitation unsupported by

4    its own infringement contentions because CliniComp itself recognized that it did not have

5    meritorious theory of infringement as to that claim limitation.

6        Considering the totality of the circumstances, the Court concludes that this case is

7    "one that stands out from the others" with respect to the objective unreasonableness and

8    substantive weakness of CliniComp's litigating position following the conclusion of the

9    IPR proceedings and the issuance of the Court's claim construction order.[12]  In this case,

10   CliniComp pursued a claim for patent infringement that became objectively baseless

11   following the Court's issuance of the claim construction order in this action – a claim

12   construction order that was based on CliniComp's own clear and repeated representations

13   to the PTAB regarding the scope of its claimed invention.  As such, the Court determines

14   that the case overall is "exceptional," therefore, an award of attorney's fees pursuant to 35

15   U.S.C. § 285 is appropriate.  See Innovation Scis., 842 F. App'x at 557 ("We have . . .

16   frequently held that a case is exceptional when a party continues to litigate claims that have

17   become baseless in view of a district court's claim construction opinion."); see, e.g.,

18

19

---

20   [12]     In its opposition to Cerner's motion for attorney's fees, CliniComp contends that it

21   has litigated this case in an exceptionally reasonable manner and notes certain actions that

22   it has taken in this case, such as the manner in which it conducted discovery in this case.

23   (Dkt. No. 127 at 2, 10-11.)  The Court acknowledges these actions by CliniComp and
   considers them under the totality of the circumstances.  Nevertheless, the Court concludes
   that this case is "exceptional" under § 285.

24       CliniComp asserts that Cerner does not and cannot allege any bad faith conduct on

25   the part of CliniComp or its counsel.  (Dkt. No. 127 at 2, 10.)  But a finding of subjective

26   bad faith is not necessary for a determination that a case is exceptional under § 285.  See
   Nat'l Oilwell Varco, L.P. v. Omron Oilfield & Marine, Inc., 676 F. App'x 967, 973 (Fed.

27   Cir. 2017) ("Bad faith is not necessary because 'a case presenting either subjective bad
   faith or exceptionally meritless claims may sufficiently set itself apart from mine-run cases

28   to warrant a fee award.'" (emphasis added) (quoting Octane Fitness, 572 U.S. at 555)).

Princeton Digital Image Corp. v. Ubisoft Ent. SA, No. CV 13-335-LPS-CJB, 2021 WL 4033220, at *3–5 (D. Del. Sept. 3, 2021) (Stark, J.) (finding case "exceptional" where patentee continued to pursue an infringement claim that became objectively baseless following the district court's issuance of a claim construction order that found the patentee made prosecution disclaimers during IPR proceedings); Straight Path IP Grp., Inc. v. Cisco Sys., Inc., 411 F. Supp. 3d 1026, 1031–35 (N.D. Cal. 2019) (finding case "exceptional" where patentee "pursued an objectively baseless infringement theory against defendants by attempting to renege on explicit representations made [during IPR proceedings] — representations made repeatedly in order to preserve validity"); Upaid Sys., Ltd. v. Card Concepts, Inc., No. 17 C 8150, 2022 WL 4482762, at *2–4 (N.D. Ill. Sept. 27, 2022) (finding case "exceptional" where patentee continued to pursue infringement claims that became baseless after the district court's claim construction order); IPS Grp., Inc. v. Duncan Sols., Inc., No. 15-CV-1526-CAB (MDD), 2018 WL 2215418, at *2 (S.D. Cal. May 14, 2018) (finding claim "exceptional" where the patentee's "opposition to the summary judgment advanced an argument it had not presented in its infringement contentions or could reasonably be supported by the patent"); Intex Recreation Corp. v. Team Worldwide Corp., 77 F. Supp. 3d 212, 217 (D.D.C. 2015) (finding case "exceptional" where the district court's claim construction foreclosed any reasonable infringement argument and, in response to a motion for summary judgment, the patentee only "advanced flawed, nonsensical, and baseless arguments, which lacked factual support"); see also, e.g., Finjan, Inc. v. Juniper Network, Inc., No. C 17-05659 WHA, 2021 WL 75735, at *2 (N.D. Cal. Jan. 9, 2021), aff'd No. 2021-2253, 2022 WL 17576350, at *1 (Fed. Cir. Dec. 12, 2022) (finding case "exceptional" where patentee "flip flopped and came up with a new infringement theory" on the eve of trial).[13]

─────────────────

[13]   The Court rejects CliniComp's reliance on the Federal Circuit's decision in Biax Corp. v. Nvidia Corp., 626 F. App'x 968 (Fed. Cir. 2015).  (See Dkt. No. 127 at 5-6.)  In Biax, the Federal Circuit reversed a district court's grant of attorney's fees under § 285

1    In its motion for attorney's fees, Cerner specifically requests that the Court award

2    Cerner its attorney's fees from July 28, 2022 – the date the Court issued its claim

3    construction order in this action.  (Dkt. No. 124-1 at 1, 17.)  "[C]ourts frequently award

4    attorney fees under § 285 in an amount related to particular conduct and circumstances that

5    stood out and made a case exceptional, even when the entirety of the conduct in the case

6    was not exceptional from start to finish."  Intell. Ventures I, 944 F.3d at 1384.  In light of

7    the specific conduct and circumstances in this case that stood out and made it

8    "exceptional," the Court finds it appropriate to limit Cerner's attorney's fees award to the

9    reasonable attorney's fees it incurred from August 29, 2022 – the date CliniComp served

10   Cerner with its amended final infringement contentions.  By that point in time, CliniComp

11   had ample time to assess the strength (or lack thereof) of its claim for patent infringement

12   in light of the Court's claim constructions and the relevant discovery.  And at the point in

---

where the district court found the case "exceptional" on the grounds that the patentee had
no reasonable theory of infringement after claim construction.  See 626 F. App'x at 971–
73.  But in reversing the district court, the Federal Circuit held that "the district court
misread [plaintiff's] expert's testimony," id. at 972, and that the district court's claim
construction contained an "uncertainty" that was not resolved until summary judgment
despite the patentee's attempt to resolve that uncertainty earlier through a motion for
clarification, see id. at 972–73.  CliniComp does not identify any similar misreading of
expert testimony by this Court or any similar uncertainty or ambiguity in the Court's claim
construction for the term "[first/second] portion of the database associated with the
[first/second] healthcare enterprise facility."  As such, Biax is easily distinguishable from
the circumstances in this case.

    In its opposition, CliniComp also contends: "At least one court has cast doubt on
whether a patentee who 'loses' on claim construction should ever be sanctioned for
opposing summary judgment, given that Markman orders are interlocutory and cannot be
appealed absent final judgment."  (Dkt. No. 127 at 5 n.2 (citing Kaneka Corp. v. Zhejiang
Med. Co., No. 2:11-CV-02389-MRP-SS, 2014 WL 12573845, at *3–4 (C.D. Cal. May 23,
2014)).)  Kaneka is a non-binding district court decision.  The Court reiterates that the
Federal Circuit – whose decisions are binding on this Court – has "frequently held that a
case is exceptional when a party continues to litigate claims that have become baseless in
view of a district court's claim construction opinion."  Innovation Scis., 842 F. App'x at
557 (citing AdjustaCam, 861 F.3d at 1360; Taurus IP, 726 F.3d at 1326–29).

time, CliniComp chose to continue with the litigation and assert what became a string of baseless and ever-changing theories of infringement.  As such, an award of fees incurred since August 29, 2022 is appropriate in this action and "reflects the unnecessary effort [Cerner] had to expend to continue defending claims that became baseless after claim construction." <u>Princeton Digital</u>, 2021 WL 4033220, at *5.

### III.   CONCLUSION

For the reasons above, the Court grants Defendant Cerner's motion for attorney's fees pursuant to 35 U.S.C. § 285; the Court find this case to be "exceptional;" and the Court awards Cerner its reasonable attorneys' fees incurred since August 29, 2022.  Cerner must file a request for its fees and expenses incurred since August 29, 2022 by **February 24, 2023**.  CliniComp must file its opposition to the amount of fees requested by **March 10, 2023**, and Cerner must file its reply by **March 17, 2023**.  The Court will then issue an order as to the amount of the award in due course.

IT IS SO ORDERED.

Dated:  February 3, 2023

Hon. Gonzalo P. Curiel
United States District Judge

17-cv-02479-GPC (DEB)